**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
02/08/2017

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| MEMORIAL PRODUCTION PARTNERS, L.P., *et al.*[1] | ) | |
| | ) | Case No. 17-30262 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 507,
BANKRUPTCY RULES 2002, 4001, 6003, 6004, AND 9014 AND BANKRUPTCY LOCAL
RULE 4001-1, INTER ALIA, (I) AUTHORIZING DEBTORS' LIMITED USE OF CASH
COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION
SECURED PARTIES, AND (III) MODIFYING THE AUTOMATIC STAY**

Upon the motion (the "Motion"), dated January 16, 2017 (the "Petition Date"), of

Memorial Production Partners LP ("MEMP") and its debtor affiliates, as debtors and debtors in

possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively,

these "Cases"), pursuant to sections 105, 361, 362, 363 and 507 of title 11 of the United States

Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 4001-1 of the Bankruptcy Local Rules for

the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex

Chapter 11 Bankruptcy Cases (the "Complex Case Procedures") promulgated by the United

---

[1]     The Debtors in these Cases, along with the last four digits of each Debtor's federal tax identification number, are: Memorial Production Partners LP (6667); Memorial Production Partners GP LLC; MEMP Services LLC (1887); Memorial Production Operating LLC; Memorial Production Finance Corporation (3356); WHT Energy Partners LLC; WHT Carthage LLC; Memorial Midstream LLC; Beta Operating Company, LLC; Columbus Energy LLC; Rise Energy Operating LLC; Rise Energy Minerals LLC; Rise Energy Beta, LLC; San Pedro Bay Pipeline Company (1234); and Memorial Energy Services LLC. The Debtors' mailing address is 500 Dallas Street, Suite 1600, Houston, Texas 77002.

States Bankruptcy Court for the Southern District of Texas (the "Court"), seeking, among other

things:

(a)     authorization for the Debtors, pursuant to Bankruptcy Code sections 105, 361, 362, 363 and 507 to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), and all other Prepetition Collateral (as defined herein), solely in accordance with the terms of the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 and Bankruptcy Local Rule 4001-1, Inter Alia, (I) Authorizing Debtors' Limited Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* [Docket No. 52] (the "Interim Order") and this final order (this "Final Order"), and (ii) provide adequate protection to Wells Fargo Bank, National Association, as Administrative Agent (the "Prepetition Agent") under the Prepetition Credit Agreement (as defined herein) and the other Prepetition Secured Parties (as defined herein);

(b)     subject to entry of this Final Order, authorization to grant adequate protection liens on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under Bankruptcy Code sections 544, 545, 547, 548, 549 and 550 or any other similar state or federal law (collectively, the "Avoidance Actions");

(c)     modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and this Final Order;

(d)     subject to entry of this Final Order, except to the extent of the Carve Out (as defined herein), the waiver of all rights to surcharge any Prepetition Collateral or Collateral (as defined herein) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(e)     that this Court hold an interim hearing (the "Interim Hearing") to consider the relief sought in the Motion and entry of the Interim Order;

(f)     that this Court schedule a final hearing (the "Final Hearing") to consider entry of this Final Order granting the relief requested in the Motion on a final basis; and

(g)     waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order or this Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h));

and pursuant to Bankruptcy Rule 4001, Bankruptcy Local Rule 4001-1, and the Complex Case

Procedures, notice of the Motion and the relief sought at the Interim Hearing and the Final

Hearing having been given by the Debtors to the Prepetition Agent, counsel to the Prepetition Agent, the other Prepetition Secured Parties, the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis), counsel to the Ad Hoc Group (as defined herein), the indenture trustee under the Debtors' 7.625% senior notes due 2021 (the "7.625% Senior Notes Trustee"), counsel to the 7.625% Senior Notes Trustee, the indenture trustee under the Debtors' 6.875% senior notes due 2022 (the "6.875% Senior Notes Trustee," and together with the 7.625% Senior Notes Trustee, the "Senior Notes Trustees"), counsel to the 6.875% Senior Notes Trustee, the United States Trustee for the Southern District of Texas (the "United States Trustee"), the United States Securities and Exchange Commission, the United States Internal Revenue Service, and otherwise as set forth in the Motion; and the Court having held the Interim Hearing on January 17, 2017; and the Court having considered the Budget (as defined herein), the *Declaration of Robert L. Stillwell, Jr. in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "Stillwell Declaration") filed on the Petition Date, and the record of the Interim Hearing and the Final Hearing; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and the Court having found and determined that the relief sought in the Motion on the terms and conditions contained herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003; and due deliberation and good cause having been shown to grant the relief sought in the Motion,

## IT IS HEREBY FOUND AND DETERMINED THAT:

A.     **Petition Date**.  On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.  The Debtors

continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases. No official committee of unsecured creditors (the "Committee") has been appointed in these Cases.

        B.        **Prepetition Credit Agreement**. Prior to the Petition Date, the Prepetition Secured Parties made certain loans and other financial accommodations pursuant to and in accordance with the terms and conditions of that certain Credit Agreement, dated as of December 14, 2011 (as heretofore amended, restated, or otherwise modified from time to time, the "Prepetition Credit Agreement," and, together with all other documentation executed in connection therewith, including the Guaranty Agreement, the Prepetition Collateral Documents (as such terms are defined herein) and the other Loan Documents (as such term is defined in the Prepetition Credit Agreement), the "Prepetition Loan Documents"), among, *inter alia*, Memorial Production Operating LLC (the "Borrower"), as borrower, MEMP, as parent guarantor, the Prepetition Agent, and the lenders from time to time party thereto (such lenders, the "Prepetition Secured Lenders," and, together with the Prepetition Agent, the "Issuing Bank", and each "Bank Products Provider", "Secured Swap Provider" and "Indemnified Party" (as such terms are defined in the Prepetition Credit Agreement), collectively, the "Prepetition Secured Parties"). Pursuant to that certain Guaranty Agreement, dated as of December 14, 2011 (as amended, modified (by joinder thereto or otherwise) or otherwise supplemented from time to time, the "Guaranty Agreement"), the Debtors, other than the Borrower, guaranteed the Indebtedness (as such term is defined in the Prepetition Credit Agreement), including the obligations of the Borrower under the Prepetition Credit Agreement and the other Prepetition Loan Documents.

C.     **Debtors' Admissions and Stipulations With Respect to the Prepetition Indebtedness**.   Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described herein in paragraph 17), the Debtors admit, stipulate and agree that:

i.     As of the Petition Date, the Debtors were justly and lawfully indebted and liable, without defense, counterclaim, or offset of any kind, to the (w) Prepetition Secured Lenders in the aggregate principal amount of $454,798,614 in respect of loans and other financial accommodations made and in the aggregate face amount of $2,375,000 in respect of letters of credit issued by the Issuing Bank pursuant to, and in accordance with, the Prepetition Loan Documents, (x) Secured Swap Providers in amounts yet to be determined, (y) Bank Products Providers in amounts yet to be determined, and (z) Indemnified Parties in amounts yet to be determined, plus accrued and unpaid interest, fees, costs, and expenses including, without limitation, attorney's fees, agent's fees, other professional fees and disbursements and other obligations owing under the Prepetition Loan Documents (collectively, the "Prepetition Indebtedness").   Each of the Prepetition Loan Documents is valid, binding, and subject to applicable bankruptcy law, enforceable against the Debtors in accordance with its terms.

ii.     The Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Debtors, enforceable, subject to applicable bankruptcy law, in accordance with their terms, and no portion of the Prepetition Indebtedness or any amounts paid to the Prepetition Secured Parties or applied to the obligations owing under the Prepetition Loan Documents prior to the Petition Date is subject to avoidance, subordination (whether equitable or otherwise), recharacterization, recovery, attack, offset, contest, objection, recoupment, reclassification, reduction, disallowance, counterclaim, defense, challenge or Claim (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and the Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights related to the Prepetition Indebtedness, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, on or prior to the date hereof, against the Prepetition Agent, any of the other Prepetition Secured Parties, or their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors.

D.     **Debtors' Admissions and Stipulations With Respect to Prepetition Collateral and Liens**.  Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described herein in paragraph 17), the Debtors admit, stipulate and agree that:

        i.      Pursuant to (a) that certain Pledge and Security Agreement, dated as of December 14, 2011 (as heretofore amended, restated, or otherwise modified (including by joinder thereto) from time to time) by the Borrower and the Guarantors (as defined in the Prepetition Loan Documents) in favor of the Prepetition Agent, and (b) certain mortgages, deeds of trust, assignment of as-extracted collateral, security agreements, uncertificated control agreements, fixture filing and financing statements, deposit account control agreements and similar security documents entered into by any Loan Party (as defined in the Prepetition Credit Agreement) in respect of substantially all of the real and personal property owned by such Loan Party (each of (a) and (b) as heretofore amended, restated or otherwise modified from time to time, and, collectively with any and all other agreements, instruments, certificates, fixture filings, transmitting utility filings, financing statements, consents, assignments or other similar documents, the "Prepetition Collateral Documents"), subject only to specific permitted exceptions in the Prepetition Credit Agreement and the other Prepetition Loan Documents, the Debtors granted, and the Prepetition Agent, for the benefit of the Prepetition Secured Parties, possesses, valid, binding, perfected and enforceable first priority liens upon, and security interests in, substantially all of the real and personal property of the Borrower and the other Loan Parties, all as more fully described in the Prepetition Collateral Documents, including, without limitation, all accounts, chattel paper, cash or cash equivalents, deposit accounts, securities accounts, commodity accounts, and other investment accounts, documents, equipment, farm products, fixtures, general intangibles (including, without limitation, rights in and under any contracts, including interest rate hedging agreements, commodity hedging agreements and similar agreements), patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, goods, instruments, inventory, investment property, letters of credit, letter of credit rights and supporting obligations, accounts receivable, other rights to payment, payment intangibles, oil, gas, and other hydrocarbons, as-extracted collateral and products and substances derived therefrom (including all raw materials and work-in-process, finished goods,

and materials used or consumed in the manufacture or production thereof), owned real estate, real property leaseholds, oil and gas leases, claims and causes of action and any other real or personal property of the Debtors, and, in each case, the cash and noncash proceeds, products, offspring, rents, profits, insurance proceeds, and other rights arising therefrom (collectively, including the Cash Collateral and the setoff rights described in the Prepetition Loan Documents, the Swap Agreements (as defined in the Prepetition Credit Agreement), or arising by operation of law, collectively, the "Prepetition Collateral") to secure the Prepetition Indebtedness. As of the Petition Date, there were no security interests in or liens on the Prepetition Collateral other than as permitted by the Prepetition Loan Documents, and there were certain unmortgaged oil and gas leases.

ii.   The Prepetition Agent's first priority liens upon, and security interests in, the Prepetition Collateral, for the ratable benefit of the Prepetition Secured Parties, are not subject to avoidance, subordination (whether equitable or otherwise), recharacterization, recovery, attack, offset, contest, objection, recoupment, reclassification, reduction, disallowance, counterclaim, defense, challenge or Claim (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

iii.   As of the Petition Date, the aggregate value of the Prepetition Collateral exceeds the aggregate amount of the Prepetition Indebtedness.

E.   **Debtors' Admissions and Stipulations With Respect to Cash Collateral**.   Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described herein in paragraph 17), the Debtors admit, stipulate and agree that, to the extent of the Prepetition Secured Parties' respective security interests in such Prepetition Collateral, all cash, including all cash proceeds, products, offspring, rents and profits of the Prepetition Collateral held in any of the Debtors' banking, checking or other deposit accounts with financial institutions (in each case, other than trust, escrow and custodial funds held as of the Petition Date in properly established trust, escrow and custodial accounts) as of the Petition Date or deposited into the Debtors' banking, checking or other deposit accounts with financial

- 7 -

institutions after the Petition Date (including deposits into accounts opened before or after the Petition Date), are Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code. The Prepetition Secured Parties are entitled, pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral, including the Cash Collateral, for any Collateral Diminution (as defined herein).

    F. **Releases**. Without prejudice to the rights of any other party (but subject to the limitations thereon described herein in paragraph 17), each of the Debtors and the Debtors' estates, on its own behalf and on behalf of its past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby, to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully, forever waives and releases the Prepetition Agent and each of the other Prepetition Secured Parties, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accounts, attorneys, affiliates, and predecessors in interest of any and all Claims (as defined in section 101(5) of the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights that exist on the date hereof relating to any of the Prepetition Collateral and any of the Prepetition Loan Documents or the transactions contemplated under such documents, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, arising at law or in equity, including, without limitation, any so-called "lender liability," recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law and any and all claims and causes of action regarding the validity, priority,

perfection or avoidability of the liens or the claims of the Prepetition Agent and the other Prepetition Secured Parties. Subject to paragraph 17 hereof, the Debtors' acknowledgements, stipulations, and releases shall be binding on the Debtors and their respective representatives, successors and assigns, and, on each of the Debtors' estates, all creditors thereof and each of the respective representatives, successors and assigns, including, without limitation, any trustee or other representative appointed in these Cases, whether any such trustee or representative is appointed in chapter 7 or chapter 11 of the Bankruptcy Code.

G.      **Need to Use Cash Collateral**.  The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2), 6003, and 6004, Bankruptcy Local Rule 4001-1, and the Complex Case Procedures and have a critical need to use the Cash Collateral (in the amount and in the manner set forth in the Budget (as defined herein) for working capital purposes, other general corporate purposes of the Debtors, and the satisfaction of costs and expenses of administering these Cases) to, among other things, preserve and maintain the value of their assets and businesses and maximize value for the benefit of all parties in interest in these Cases. The terms of the use of the Prepetition Collateral pursuant to this Final Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment and constitute reasonably equivalent value and fair consideration. The ability of the Debtors to obtain liquidity through the use of the Cash Collateral is vital to the Debtors and their efforts to maximize the value of their assets.

H.      **Notice**.  Notice of the requested relief sought at the Final Hearing was provided by the Debtors to: (1) the Prepetition Agent, (2) counsel to the Prepetition Agent, (3) the other Prepetition Secured Parties, (4) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis), (5) Davis Polk & Wardwell LLP, as counsel to that certain ad hoc group of

unsecured noteholders in these Cases (the "Ad Hoc Group"), (6) the 7.625% Senior Notes Trustee, (7) Stroock & Stroock & Lavan LLP, as counsel to the 7.625% Senior Notes Trustee, (8) the 6.875% Senior Notes Trustee, (9) Stroock & Stroock & Lavan LLP, as counsel to the 6.875% Senior Notes Trustee, (10) the United States Trustee, (11) the United States Securities and Exchange Commission, (12) the United States Internal Revenue Service, and (13) otherwise as set forth in the Motion. The foregoing notice of the Final Hearing constitutes appropriate, due and sufficient notice and complies with Bankruptcy Rules 2002, 4001(b) and (d) and 9014, Bankruptcy Local Rule 4001-1, the Complex Case Rules, and section 102(1) of the Bankruptcy Code as required by sections 361 and 363 of the Bankruptcy Code. No further notice of, or hearing on, the relief sought at the Final Hearing and the relief granted herein is necessary or required.

I.    **Consent by Prepetition Agent**. The Prepetition Agent consents to the Debtors' use of Cash Collateral in accordance with and subject to the terms and conditions provided for in this Final Order.

J.    **Jurisdiction and Venue**. Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Venue for these Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

K.    **Relief Essential; Best Interest**. The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2), Bankruptcy Local Rule 4001-1, and the Complex Case Procedures. The relief requested in the Motion (and as provided in this Final Order) is necessary, essential and appropriate for the continued operation of the Debtors'

businesses and the management and preservation of the Debtors' assets and the property of their estates. It is in the best interest of the Debtors' estates that the Debtors be allowed to use the Cash Collateral under the terms hereof. The Debtors have demonstrated good and sufficient cause for the relief granted herein.

          L.     **Arm's-Length, Good-Faith Negotiations**. The terms of this Final Order were negotiated in good-faith and at arm's-length between the Debtors and the Prepetition Secured Parties. Pursuant to sections 105, 361, and 363 of the Bankruptcy Code, the Prepetition Secured Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Final Order, and each is entitled to the protection provided under section 363(m) of the Bankruptcy Code.

          **NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS HERETOFORE HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION, THE EVIDENCE ADDUCED AT THE INTERIM HEARING AND THE FINAL HEARING, AND THE STATEMENTS OF COUNSEL THEREAT, IT IS HEREBY ORDERED THAT:**

          1.     **Motion Granted**. The Motion is granted in accordance with the terms of this Final Order. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled and all reservations of rights included therein, are hereby denied and overruled.

          2.     **Authorization to Use Cash Collateral**. Subject to the terms and conditions of the Interim Order and this Final Order, the Court hereby authorizes the Debtors to use the Cash Collateral during the period beginning with the Petition Date and ending on the Termination Date (as defined herein) (such period, the "<u>Budget Period</u>"), in accordance with the

13-week cash disbursements and receipts budget (which budget shall include a 13-week forecast of transaction costs and capital expenditures) attached as **Exhibit A** hereto (as such budget may be modified from time to time by the Debtors with the prior written consent of the Prepetition Agent as set forth in this paragraph and in paragraph 3(f)(v) of this Final Order, the "Budget"), and for no other purposes.  Notwithstanding the Budget, so long as the Termination Date has not occurred, the Debtors are authorized to use Cash Collateral in accordance with this Final Order in an amount that would not cause the Debtors to use Cash Collateral for (x) disbursements and capital expenditures on line items 4-8 of the Budget (the "Total Disbursements"), taken together, in an aggregate amount not to exceed fifteen percent (15%) of the Total Disbursements budgeted during the Budget Period then in effect, and (y) actual expenditures of the Debtors for each line item in the Budget (other than the Total Disbursements) in an amount not to exceed fifteen percent (15%) of the budgeted amount for each such line item during the Budget Period (each of (x) and (y), a "Permitted Deviation"); *provided*, *however*, that with respect only to clause (y) of this paragraph, in the event that the forecasted amount of Total Disbursements in the Budget exceeds the amount actually paid in respect of Total Disbursements during such Budget Period (the difference between the budgeted amount and the amount actually paid, the "Carry Forward Amount"), the Debtors shall be authorized to use Cash Collateral in the Carry Forward Amount toward Total Disbursements during any Subsequent Budget Period (as defined herein).   The Prepetition Agent may, in its sole discretion, agree in writing to the use of the Cash Collateral (i) in a manner or amount which does not conform to the Budget (other than Permitted Deviations) (each such approved non-conforming use of Cash Collateral, a "Non-Conforming Use") or (ii) for the period following the extension of the Expiration Date pursuant to paragraph 9(i) of this Final Order (such period, the "Subsequent Budget Period").  If such written consent is given, the

Debtors shall be authorized pursuant to this Final Order to expend Cash Collateral for any such Non-Conforming Use or any such Subsequent Budget Period in accordance with a subsequent Budget (a "Subsequent Budget") without further Court approval, and the Prepetition Secured Parties shall be entitled to all of the protections specified in this Final Order for any such use of Cash Collateral. The Debtors shall provide prompt notice of any amendment to the Budget, Non-Conforming Use, Subsequent Budget Period and Subsequent Budget to the Ad Hoc Group, the Senior Notes Trustees, the Committee, if any, and the United States Trustee.

3. **Adequate Protection for the Prepetition Secured Parties**. In addition to all the existing security interests and liens granted to or for the benefit of the Prepetition Secured Parties in and with respect to the Prepetition Collateral, including the Cash Collateral, as adequate protection for, and to secure payment of an amount equal to any Collateral Diminution (as defined herein), and as an inducement to the Prepetition Secured Parties to permit the Debtors' use of the Cash Collateral as provided for in the Interim Order and this Final Order:

(a) **Adequate Protection Liens**. Effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Debtors hereby grant the following security interests and liens to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, (all property identified in clauses (i) and (ii) of this paragraph 3(a) being collectively referred to as the "Collateral") (all such liens and security interests, the "Adequate Protection Liens"):

i. **Liens Senior to Other Liens**. A valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in, and lien on, the Prepetition Collateral and all other of the Debtors' now owned and hereafter-acquired real and personal property, assets and rights of any kind or nature, wherever located, including, without limitation, all property of the Debtors' estates, and the proceeds, products, offspring, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy

Code or otherwise, including, without limitation, oil and gas properties (and as-extracted collateral, goods, fixtures and hydrocarbons relating thereto), accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, if any of the Debtor's interests, if any (residual or otherwise), in the Beta Trust (as defined in the Stillwell Declaration), claims and causes of action (including those arising under section 549 of the Bankruptcy Code) and all proceeds, products, offspring, rents and profits of the foregoing, other than causes of action arising under the Bankruptcy Code (including all Avoidance Actions), which Adequate Protection Liens shall have recourse to the proceeds or property recovered in respect of any Avoidance Actions. The Adequate Protection Liens shall be senior in priority to any other security interests or liens, subject only to (a) the Carve Out and (b) the Priority Liens (as defined below), if any.

ii. **Liens Junior to Existing Liens**. A valid, binding, continuing, enforceable, fully-perfected junior-priority lien on and security interest in all prepetition and postpetition property of the Debtors (other than the property described in clause (i) of this paragraph 3(a)), whether now existing or hereafter acquired, that is subject to (a) the Carve Out, (b) valid, perfected and unavoidable liens (if any) in existence immediately prior to the Petition Date which are senior to the Prepetition Secured Parties' liens or security interests, (c) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (d) valid and enforceable liens arising on or after the Petition Date under mechanics' and materialmen's statutes of any State or of the United States (the liens described in clauses (b), (c) and (d) are collectively referred to herein as the "Priority Liens").

(b) **Adequate Protection Claims**. The Debtors hereby grant to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, an allowed superpriority administrative expense claim against each of the Debtors on a joint and several basis with priority over any and all other administrative expense claims

- 14 -

against the Debtors now existing or hereafter arising in the Cases (subject only to the Carve Out), including all claims of the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"), which administrative expense claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors including, without limitation, the proceeds or property recovered in respect of any Avoidance Actions.

(c)     **Adequate Protection Payments**.  The Debtors are authorized and directed to pay to the Prepetition Agent, for the ratable benefit of the Prepetition Secured Lenders, adequate protection payments on the last business day of each calendar month after the entry of the Interim Order, in each case, in an amount equal to all accrued and unpaid prepetition and postpetition interest, fees and costs due and payable under the Prepetition Credit Agreement (including, without limitation, interest on loans, breakage costs and accrued fees owing to the Prepetition Agent), and, in each case, such payments shall (i) (A) from the Petition Date through April 16, 2017, be paid in cash at the LIBOR Market Index Rate (as defined in the Prepetition Credit Agreement) plus 3.25% (collectively, the "LIBOR Index Rate"), and (B) on April 17, 2017 and thereafter, be paid in cash at the Alternate Base Rate (as defined in the Prepetition Credit Agreement) plus 2.25% (collectively, the "ABR Rate"), and (ii) so long as the RBL Plan Support Agreement (as defined below) has not been terminated, the Prepetition Secured Lenders' claims for the difference between the ABR Rate and the interest paid in cash at the LIBOR Index Rate (the "Rate Differential") shall be waived on the Plan Effective Date (as defined in the RBL Plan Support Agreement); *provided, however*, that the Prepetition Agent and the other Prepetition Secured Parties reserve all rights to seek cash payment of the Rate Differential and/or additional interest from and after the Petition Date on the Prepetition Indebtedness at the post-default rate of two percent (2%) as provided in Section 3.02(c) of the Prepetition Credit Agreement in the event that the RBL Plan Support Agreement is terminated, and the Debtors reserve the right to object to such claims.

(d)     **Other Covenants**.   The Debtors shall maintain their cash management arrangements in a manner consistent with the interim and final orders granting the *Emergency Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 345(b), 363(b)(1), 363(c)(1), and 364(a) and Fed. R. Bankr. P. 6003 and 6004 for (I) Interim and Final Authority to (a) Continue Existing Cash Management System, (b) Maintain Business Forms and Existing Bank Accounts, (c) Continue Intercompany Arrangements, and (d) Continue Using*

*Corporate Payment Cards; (ii) Extension of Time to Comply with, or Seek Waiver of, the Requirements of 11 U.S.C. § 345(b); and (iii) Related Relief.* The Debtors shall not use, sell or lease any assets valued in excess of $5,000,000 in the aggregate outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without prior consultation with the Prepetition Agent at least five (5) days prior to the date on which the Debtors seek the authority of this Court for such use, sale or lease. The Debtors shall comply with the covenants contained in Sections 8.06 and 8.07 of the Prepetition Credit Agreement regarding the maintenance and insurance of the Prepetition Collateral and the Collateral. The Debtors shall provide draft copies of all material motions, applications, and other documents any Debtor intends to file with the Bankruptcy Court to the Prepetition Agent's counsel, if reasonably practicable, at least two (2) calendar days before the date when the applicable Debtor intends to file any such motion, application or other document (and if not reasonably practicable, as soon as practicable before filing).

(e) **Fees and Expenses.** As additional adequate protection, the Debtors shall pay indefeasibly in cash: (i) to the extent not already paid as required by the Interim Order, the reasonable and documented professional fees, expenses and disbursements (including, but not limited to, the fees, expenses and disbursements of counsel and other consultants, including financial consultants and auditors) incurred by the Prepetition Agent under the Prepetition Credit Agreement and the other Prepetition Loan Documents arising prior to the Petition Date; (ii) the reasonable and documented professional fees, expenses and disbursements (including, but not limited to, the fees, expenses and disbursements of counsel and other consultants, including financial consultants and auditors) incurred by the Prepetition Agent under the Prepetition Credit Agreement and the other Prepetition Loan Documents arising subsequent to the Petition Date; and (iii) the documented legal fees, expenses and disbursements incurred by (A) the other Prepetition Secured Parties under the Prepetition Credit Agreement and the other Prepetition Loan Documents prior to the Petition Date and arising subsequent to the Petition Date and (B) the Consenting Lenders and the Continuing Hedging Lenders under the RBL Plan Support Agreement (as defined herein) incurred on or prior to the date of termination of the RBL Plan Support Agreement, in each case to the extent such legal fees, expenses and disbursements are reasonable in light of the circumstances and in comparison to other Prepetition Secured Parties, Consenting Lenders, or Continuing Hedging Lenders, as applicable (other than the Prepetition Agent). The payment of the fees, expenses and disbursements set forth in this paragraph 3(e) of

this Final Order (including, without limitation, the reasonable and documented professional fees and expenses of Linklaters LLP, Vinson & Elkins LLP, Opportune LLP, and any other professionals or advisors retained by or on behalf of the Prepetition Agent) shall be made within ten (10) business days after the receipt by the Debtors, counsel to the Committee, if any, and the United States Trustee (and the Prepetition Agent, in the case of the legal fees, expenses and disbursements of the other Prepetition Secured Parties as set forth in paragraph 3(e)(iii) above) (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; *provided, however*, that the Debtors, the Committee, if any, and the United States Trustee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, (i) the Debtors pay in full the Invoiced Fees, including the Disputed Invoiced Fees, and (ii) the Debtors or the United States Trustee file with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Prepetition Agent of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.

(f)     **Reporting**.  As additional adequate protection to the Prepetition Secured Parties, the Debtors shall comply with all reporting requirements set forth in the Prepetition Credit Agreement (including the timely provision of Engineering Reports pursuant to Section 2.07 of the Prepetition Credit Agreement and Reserve Reports pursuant to Section 8.12 thereof) and shall provide the following additional reporting to the Prepetition Agent:

i.      Weekly (or more or less frequently as may be agreed to between the Debtors and the Prepetition Agent) calls with the Prepetition Agent and its advisors;

ii.     Each update of the Debtors' business plan promptly following its presentation to the Debtors' board of directors together with a reconciliation to the prior business plan;

iii.    Presentations by the Debtors and/or their advisors to the Prepetition Secured Parties at times and places as the Prepetition Agent may reasonably request in writing (including via electronic mail) with reasonable prior notice;

iv.     Promptly, but in any event no later than the twentieth (20th) day of each calendar month, a report as of the last day of the preceding calendar month, in form and detail

acceptable to the Prepetition Agent, of (a) the Debtors' accounts payable and payments, and (b) all written demands or claims related to or asserting any liens in respect of property or assets of the Borrower or any Loan Party (including liens imposed by law, such as landlord's, vendors', suppliers', carriers', warehousemen's, repairmen's, construction contractors', workers' and mechanics' liens and other similar liens) if the amount demanded or claimed exceeds $2,500,000 in the aggregate at any one time and such amounts are not being paid in the ordinary course of the Debtors' business;

v.      (A) On or before the twentieth (20th) day of each calendar month, an updated rolling 13-week cash flow forecast of the Debtors and their subsidiaries substantially in the form of the Budget (each, a "Proposed Budget"), which Proposed Budget, upon written approval by the Prepetition Agent, shall become the Budget effective as of the first day of the following calendar month, and (B) on or before the Wednesday of each calendar week, (1) a weekly report of receipts, disbursements and a reconciliation of actual expenditures and disbursements with those set forth in the Budget for the prior week, on a line by line basis showing any variance to the proposed corresponding line item of the Budget, which report and reconciliation shall be in form and substance reasonably satisfactory to the Prepetition Agent, (2) an accounts payable aging and an accounts receivable aging through the Friday of the prior week, (3) a statement setting forth in reasonable detail the cash balance for each deposit account, securities account, and commodity account of the Debtors and their subsidiaries as of the previous Friday, and (4) an updated report of authorized expenditures versus actual expenditures through the Friday of the prior week;

vi.     Additional detail with respect to the Budget as requested by the Prepetition Agent consistent with the detail provided to the Prepetition Secured Parties prior to the Petition Date;

vii.    Promptly, and in any event no later than the thirtieth (30th) day of each month, beginning with the year to date period ended December 31, 2016, a monthly and year-to-date income statement, balance sheet and monthly and year-to-date detail of capital expenditures and workovers;

viii.   (A) A list of all Swap Agreements of the Debtors in place as of the first business day of the month, to be provided by

- 18 -

the tenth (10th) business day of such month, which list contains the material terms thereof (including type, term, effective date, termination date and notional amounts or volumes and volumes), the net mark-to-market value therefor and the counterparty to each such agreement, and (B) information on any Swap Agreement terminated or unwound within one (1) business day after such Swap Agreement is terminated or unwound;

ix.     Within two (2) business days of receipt, copies of any proposals, term sheets or any other indications of interest received by the Debtors for the purchase of any assets of the Debtors;

x.      All written reports provided to the Senior Notes Trustees, the Ad Hoc Group, the Committee, if any, the United States Trustee, or any other party in interest in the Cases promptly after providing the reports to such party;

xi.     Notice of any Noteholder Termination Event or Memorial Termination Event (as such terms are defined in the Noteholder Plan Support Agreement) with respect to the Noteholder Plan Support Agreement promptly after the Debtors provide or receive such notice, as applicable; and

xii.    Such other reports and information as the Prepetition Agent may reasonably request.

(g)     **Swap Agreements**.  The Debtors shall not (i) change the material terms of any Swap Agreement, (ii) terminate or unwind any Swap Agreement, or (iii) create any off-setting positions in respect of any hedge positions under any such Swap Agreement (whether evidenced by a floor, put or Swap Agreement), or seek authority of this Court to do any of the foregoing, without the prior written consent of the Prepetition Agent.  If any Debtor receives cash proceeds as a result of any change to the material terms of any Swap Agreement, any termination or unwinding of any Swap Agreement, or creation of any off-setting positions in respect of any hedge positions under any Swap Agreement (whether evidenced by a floor, put or Swap Agreement), then, the Debtors shall pay such cash proceeds within one (1) business day following receipt thereof to the Prepetition Agent, which cash proceeds shall be applied to reduce permanently the Prepetition Indebtedness; *provided, however*, that any monthly or other scheduled payments to the Debtors under any Swap Agreements that have not been terminated shall constitute Cash Collateral.

(h)     **Asset Sales; Application of Proceeds**.  Unless otherwise agreed to by the Prepetition Agent in writing, all sales, transfers, exchanges and other dispositions (including casualty and condemnation events) of Collateral shall be in exchange for 100% cash consideration, 100% of the net proceeds of which shall be deposited in an account of the Debtors held with the Prepetition Agent and shall be applied to reduce permanently the Prepetition Indebtedness; *provided, however*, that the Debtors shall use the net proceeds of any such sale, transfer, exchange or other disposition of Collateral subject to a senior lien described in paragraph 3(a)(ii) of this Final Order to repay the senior lienholder(s) before applying the remainder of the net proceeds to reduce permanently the Prepetition Indebtedness; *provided* further that, if the Debtors sell or dispose of any Collateral valued in excess of $5,000,000 in the aggregate outside of the ordinary course of business, in the sole discretion of the Prepetition Agent and consistent with the Prepetition Agent's normal and customary oil and gas lending criteria as it exists at the particular time, the Prepetition Agent may automatically reduce the borrowing base under the Exit Credit Facility in the amount determined to be the borrowing base value attributable to such sold or disposed Collateral.

4.      **Collateral Diminution**.  For purposes of the Interim Order and this Final Order, "Collateral Diminution" shall mean an amount equal to the decrease in the value of the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, resulting from the use, sale or lease of the Prepetition Collateral (including Cash Collateral), or the imposition of the automatic stay.

5.      **Priority of Adequate Protection Liens and Adequate Protection Claims**.  Except to the extent of the Carve Out, the Adequate Protection Liens and Adequate Protection Claims granted to the Prepetition Secured Parties pursuant to paragraph 3 of the Interim Order and this Final Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under section 364 of the Bankruptcy Code or otherwise; *provided* that the Debtors shall not create, incur or suffer to exist any postpetition liens or security interests

other than: (i) those granted pursuant to the Interim Order and this Final Order, (ii) those granted pursuant to the interim and final orders granting the *Emergency Motion of Debtors Pursuant to 11 U.S. C. §§ 105, 362, 363 and 364, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Bankruptcy Local Rule 4001-1, for Interim and Final Orders (I) Authorizing the Debtors to Enter into Amended and Restated Swap Agreements and Honor Obligations Thereunder, (II) Granting Liens and Superpriority Claims, and (III) Granting Related Relief* (such orders, the "Hedging Orders"), (iii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens having a value of less than $5,000,000 in the aggregate at any one time (excluding any such lien for which the underlying claim is paid in the ordinary course of the Debtors' business and does not have any past due amounts), and (iv) those granted pursuant to the *Order Pursuant to 11 U.S.C. §§ 105(a), 364(c), and 364(d) Authorizing the Debtors (I) To Enter Into a Postpetition Security Agreement With WEX Bank With Respect to the Debtors' Use of Fuel Cards and (II) To Post A Security Deposit in the Amount of $60,000 to Secure the Debtors' Postpetition Obligations to WEX Bank* (the "Fuel Card Order").

6.      **Carve Out**. As used in this Final Order, "Carve Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the United States Trustee under section 1930(a) of title 28 of the United States Code plus statutory interest, if any, pursuant to 31 U.S.C. § 3717; plus (ii) fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; plus (iii) all allowed unpaid fees and expenses (whether allowed before or after the delivery of a Carve Out Notice (as defined herein), and whether allowed by interim order, procedural order, or otherwise) incurred by persons or firms retained by the Debtors or the Committee, if any, appointed in these Cases pursuant to sections 327, 328, 330, 331 or 363 of the Bankruptcy Code (any such persons or firms, collectively, the "Professionals")

at any time before the first business day following delivery by the Prepetition Agent (via electronic mail, overnight delivery or hand delivery) to MEMP's Chief Financial Officer, counsel to the Debtors, the United States Trustee, and counsel to the Ad Hoc Group of a written notice (the "Carve Out Notice"), which notice may be delivered at any time following the occurrence of the Termination Date stating that the Termination Date has occurred; and (iv) the allowed fees and expenses (whether allowed by interim order, procedural order, or otherwise) of the Professionals in an aggregate amount not to exceed $2,500,000 (the "Post-Carve Out Notice Cap") incurred after the first business day following delivery by the Prepetition Agent of the Carve Out Notice as set forth above; *provided* that (x) the Carve Out shall not be available to pay the fees or expenses of any Professional incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Prepetition Agent or the Prepetition Secured Parties; (y) the Carve Out shall not be reduced by the payment of fees and expenses of the Professionals incurred prior to the delivery of a Carve Out Notice and allowed at any time by this Court and payable under section 327, 328, 330, 331 or 363 of the Bankruptcy Code; and (z) without prejudice to the rights of the Professionals or the Debtors to contest any such objection, nothing in this Final Order shall be construed to impair the ability of any party to object to any fees, expenses, reimbursements or compensation sought by any Professional.

7.     **Postpetition Lien Perfection.**   Without the necessity of the filing of financing statements, security agreements, federal or state notices, pledge agreements, intellectual property filings, deeds of trust, recordings, mortgages or other documents or instruments or taking possession or control of any Collateral, the Interim Order and this Final Order shall be sufficient evidence of the Prepetition Secured Parties' perfected security interests

and liens granted in the Collateral pursuant to the Interim Order and this Final Order. Notwithstanding the foregoing, the Debtors are authorized to, and shall, upon request of the Prepetition Agent, execute such documents including, without limitation, mortgages, pledges and financing statements and to use Cash Collateral to pay such costs and expenses as may be reasonably requested by the Prepetition Agent to provide further evidence of the perfection of the Prepetition Secured Parties' security interests and liens in the Collateral as provided for herein. The Prepetition Agent is hereby authorized, but not required, to file or record such documents in any jurisdiction in order to validate the liens and security interests granted to the Prepetition Agent, for the benefit of the Prepetition Secured Parties under the Interim Order and this Final Order, and the automatic stay shall be modified to allow such filings.  A certified copy of this Final Order may, in the discretion of the Prepetition Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, security agreements, federal or state notices, pledge agreements, intellectual property filings, deeds of trust, recordings, mortgages, or other documents or instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording.  All such documents recorded and filed in accordance with this paragraph shall be deemed to have been recorded and filed as of the Petition Date notwithstanding the date of any such recording or filing.

       8.     **Inspection Rights**.  In addition to, and without limiting, whatever rights to access the Prepetition Secured Parties and any other professionals or advisors retained by or on behalf of the Prepetition Secured Parties have under their respective Prepetition Loan Documents, upon reasonable notice during normal business hours, the Debtors shall permit representatives, agents and employees of the Prepetition Secured Parties, including, without

limitation, any other professionals or advisors retained by or on behalf of any of the Prepetition Secured Parties, to (i) have access to and inspect and copy the Debtors' books and records, including all records and files of the Debtors pertaining to the Prepetition Collateral, (ii) have access to and inspect the Debtors' properties, and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

    9.  **Termination**.  The Debtors' right to use the Cash Collateral pursuant to this Final Order shall terminate (the date of any such termination, the "Termination Date") without further notice or court proceeding on the earliest to occur of:  (i) April 16, 2017 (the "Expiration Date"); *provided* that, with the consent of the Debtors and the Prepetition Agent, in the exercise of their respective sole discretion, the Expiration Date may be extended without further Court approval upon the filing of a notice on the docket of the Cases setting forth the new Expiration Date; (ii) the occurrence of any of the events set forth in clauses (a), (b), (c), (d), (i), (j), (k), (l), (m), or (o) below; and (iii) five (5) business days following the delivery of a written notice (any such notice, a "Default Notice") by the Prepetition Agent to the Debtors, counsel to the Debtors, the United States Trustee, counsel to the Committee, if any, counsel to the Senior Notes Trustees, and counsel to the Ad Hoc Group of a Default Notice (any such five-business-day period of time, the "Default Notice Period") of the occurrence and continuance of any of the events set forth in clauses (e), (f), (g), (h), or (n) below unless such occurrence and continuance is cured by the Debtors prior to the expiration of the Default Notice Period with respect to such clause or such occurrence and continuance is waived by the Prepetition Agent in its sole discretion; *provided* that, during the Default Notice Period, the Debtors shall be entitled to continue to use the Cash Collateral in accordance with the terms of this Final Order:

    (a)  The entry of an order or the filing of a motion by any of the Debtors seeking entry of an order dismissing these Cases or

converting these Cases to cases under chapter 7 of the Bankruptcy Code;

(b)    The entry of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Prepetition Agent or the Prepetition Secured Parties with respect to the Prepetition Collateral or the Collateral having an aggregate value in excess of $2,000,000 without the written consent of the Prepetition Agent, which consent may be withheld in its sole discretion;

(c)    The appointment or election of, or the filing of a motion by any of the Debtors seeking the appointment or election of, a trustee, examiner with expanded powers, or any other representative with expanded powers relating to the operation of the businesses in the Cases;

(d)    The occurrence of the effective date or consummation date of a chapter 11 plan for the Debtors;

(e)    The failure by the Debtors to make any payment required pursuant to this Final Order when due;

(f)    The failure by the Debtors to deliver to the Prepetition Agent any of the documents or other information required to be delivered pursuant to this Final Order when due or any such documents or other information shall contain a material misrepresentation;

(g)    The failure by the Debtors to adhere to the Budget or Subsequent Budget, as applicable, except, in each instance, with respect to Permitted Deviations or Non-Conforming Uses;

(h)    The failure by the Debtors to observe or perform any of the material terms or material provisions contained herein;

(i)    The Debtors shall create, incur or suffer to exist any postpetition liens or security interests other than: (i) those granted pursuant to the Interim Order and this Final Order, (ii) those granted pursuant to the Hedging Orders, (iii) carriers', mechanics', operator's, warehousemen's, repairmen's or other similar liens having a value of less than $5,000,000 in the aggregate at any one time (excluding any such lien for which the underlying claim is paid in the ordinary course of the Debtors' business and does not have any past due amounts), and (iv) those granted pursuant to the Fuel Card Order;

(j)    The Debtors shall create, incur or suffer any other claim which is *pari passu* with or senior to the Adequate Protection Claims (other than the claims granted pursuant to the Hedging Orders);

(k)   The filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Indebtedness or asserting any other cause of action against and/or with respect to the Prepetition Indebtedness, the Prepetition Collateral securing the Prepetition Indebtedness or any of the Prepetition Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

(l)   The sale or transfer of any assets of any Debtor, or the filing of a motion by any of the Debtors seeking approval of the sale or transfer, of any Collateral other than in accordance paragraphs 3(d) and 3(h) of this Final Order;

(m)   The termination of that certain Plan Support Agreement, dated as of January 13, 2017, among the Debtors and the Prepetition Secured Lenders (the "RBL Plan Support Agreement");

(n)   The termination of that certain Plan Support Agreement, dated as of December 22, 2016, among the Debtors and the Ad Hoc Group (the "Noteholder Plan Support Agreement"); or

(o)   The entry of an order or the filing of a motion by any of the Debtors seeking entry of an order reversing, staying, vacating or otherwise modifying in any material respect the terms of this Final Order, without the consent of the Prepetition Agent.

Each of subparagraph (a) through (o) is referred to herein as a "Termination Event." On and after the Termination Date, the Debtors shall immediately cease using Cash Collateral and the Prepetition Agent may, upon further order of the Court (following an emergency hearing that will be promptly scheduled by the Court), exercise the rights and remedies available under the Prepetition Loan Documents, this Final Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Collateral in order to collect any amounts payable to the Prepetition Secured Parties pursuant to this Final Order and apply the same to such obligations. The automatic stay under section 362 of the Bankruptcy Code shall be deemed modified and vacated to the extent necessary to permit such actions if so ordered by the further order of the Court. In any hearing regarding any exercise of rights or

remedies, the only issues that may be raised by any of the Debtors in opposition thereto shall be (x) whether, in fact, the Termination Date shall have occurred and (y) what is the quantum of the Collateral Diminution. Nothing in this Final Order shall prohibit any party from seeking non-consensual use of Cash Collateral on a hearing on shortened notice following the Termination Date or during the Default Notice Period; *provided* that the Prepetition Agent and the other Prepetition Secured Parties reserve all rights to oppose such relief on any and all grounds. Any delay or failure of any of the Prepetition Secured Parties to exercise rights under any Prepetition Loan Document or this Final Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under the Interim Order and this Final Order shall survive the Termination Date.

10. **Limitation on Charging Expenses Against Collateral**. All rights to surcharge any Prepetition Collateral or Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle of equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Cases.

11. **Payments Free and Clear**. All payments or proceeds remitted to the Prepetition Agent for itself or on behalf of any other Prepetition Secured Party pursuant to the provisions of the Interim Order, this Final Order, or any subsequent order of the Court shall be irrevocable and indefeasible, received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

12.     **Reservation of Rights of the Prepetition Secured Parties**.  This Final Order and the transactions contemplated hereby shall be without prejudice to (i) the rights of the Prepetition Secured Parties to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert these Cases, or to take any other action in these Cases and to appear and be heard in any matter raised in these Cases, and (ii) any and all rights, remedies, claims and causes of action which the Prepetition Agent or the Prepetition Secured Parties may have against any non-Debtor party liable for the Prepetition Indebtedness.  For all purposes throughout the Cases, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date.  For the avoidance of doubt, such request shall survive termination of this Final Order.

13.     **Modification of Automatic Stay**.  The Debtors are authorized to, and upon request of the Prepetition Agent, shall perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Final Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtors and each of the Prepetition Secured Parties to perform the transactions and actions contemplated or permitted by this Final Order.

14.     **Binding Effect**.  The terms and provisions of this Final Order shall be valid and binding upon, and inure to the benefit of the Prepetition Secured Parties to the extent and as set forth herein, the Debtors, all creditors of the Debtors, all other parties in interest, and all of their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estate of any of the Debtors, any examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal

representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) from and after the entry of this Final Order. The terms and provisions of this Final Order, as well as the priorities in payments, liens, and security interests granted pursuant to this Final Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in these Cases or in the event of conversion of any of the Cases to a liquidation under chapter 7 of the Bankruptcy Code and shall survive any such conversion, confirmation or consummation of any plan(s) of reorganization or liquidation, or dismissal of the Cases under section 1112 of the Bankruptcy Code or otherwise. Such binding effect is an integral part of this Final Order. Notwithstanding any reversal, stay, modification or vacatur of this Final Order, any indebtedness, obligation or liability incurred by the Debtors pursuant to this Final Order arising prior to the Prepetition Agent's receipt of notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Final Order and shall remain subject to the protections afforded under the Bankruptcy Code.

15.     **Adequate Protection Payments**.   The adequate protection payments made pursuant to the Interim Order or this Final Order to the Prepetition Secured Parties, including, without limitation, payments of interest and fees, shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made); *provided*, *however*, that all parties in interest other than the Debtors reserve the right to seek recharacterization of such adequate protection payments as payments of principal, and the Prepetition Agent and the other Prepetition Secured Parties reserve all rights to oppose any such request.

16. **No Liability to Third Parties**. None of the Prepetition Agent or the Prepetition Secured Parties shall: (i) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates, (ii) be deemed to be in "control" of the operations of the Debtors, or (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

17. **Reservation of Certain Third Party Rights and Bar of Challenge and Claims**. (a) The Debtors' admissions and releases contained in paragraphs C, D, E, and F of this Final Order: (i) shall be binding upon the Debtors for all purposes; and (ii) shall be binding upon all other parties in interest for all purposes unless (1) a party (subject in all respects to any agreement or applicable law which may limit or affect such entities' right or ability to do so) has properly filed an adversary proceeding or contested matter by no later than the date that is (i) in the case of any party in interest other than members of the Ad Hoc Group, the earlier of (a) the last day for filing objections to confirmation of a chapter 11 plan in any of the Cases and (b) March 18, 2017 (the earlier of such date, the "Challenge Deadline"); or (ii) in the case of the members of the Ad Hoc Group, only if the Noteholder Plan Support Agreement is terminated in accordance with its terms, the earlier of (a) the last day for filing objections to confirmation of a chapter 11 plan in any of the Cases and (b) ten (10) days following termination of the Noteholder Plan Support Agreement, (x) challenging the amount, validity, enforceability, priority or extent of the Prepetition Indebtedness or the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral, or (y) otherwise asserting any claims or causes of action against the Prepetition Secured Parties on behalf of the Debtors' estates, and (2) the Court rules in favor

of the plaintiff in any such timely and properly filed adversary proceeding or contested matter.  If no such adversary proceeding or contested matter is properly filed as of such date or the Court does not rule in favor of the plaintiff in any such proceeding (which ruling on standing, if appealed, shall not stay or otherwise delay the Cases or confirmation of any plan of reorganization), then: (a) the Debtors' admissions and releases contained in paragraphs C, D, E, and F of this Final Order shall be binding on all parties in interest; (b) the obligations of the Debtors under the Prepetition Loan Documents shall constitute allowed claims for all purposes in the Cases, and any subsequent chapter 7 cases; (c) the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected first priority security interests and liens, not subject to recharacterization, subordination or otherwise avoidable; and (d) the Prepetition Indebtedness and the Prepetition Secured Parties' security interests in and liens upon the Prepetition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto.  If any such adversary proceeding or contested matter is properly filed as of such dates, the Debtors' admissions and releases contained in paragraphs C, D, E, and F of this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such admissions and releases were expressly challenged in such adversary proceeding or contested matter.  Nothing contained in this Final Order shall be deemed to grant standing to any party to commence any such adversary proceeding or contested matter; provided, if the Committee is established, it will have standing if it can establish that the claims it seeks to assert are colorable.

(b)    **Limitation on Use of Cash Collateral**.  The Debtors shall use Cash Collateral on a consensual basis solely as provided in this Final Order.  Notwithstanding anything herein or in any other order of the Court to the contrary, no Cash Collateral may be used to: (a) initiate, litigate, object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of the Prepetition Indebtedness, or the liens or claims granted under the Interim Order, this Final Order or the Prepetition Loan Documents, (b) initiate, litigate, assert any claims, defenses or causes of action against the Prepetition Agent or the other Prepetition Secured Parties or their respective agents, affiliates, representatives, attorneys, or advisors, (c) seek to modify any of the rights granted to the Prepetition Agent or other Prepetition Secured Parties in the Interim Order, this Final Order or the Prepetition Loan Documents without the Prepetition Agent's consent, (d) prevent, hinder or otherwise delay the Prepetition Agent's assertion, enforcement, or realization on the Cash Collateral or the Collateral in accordance with the Prepetition Loan Documents, the Interim Order or this Final Order, or (e) pay any amount on account of claims arising prior to the Petition Date unless such payments are approved by an order of this Court and are in accordance with the Budget or such payments are made to the Prepetition Agent or the Prepetition Secured Parties in accordance with the terms of the Interim Order, this Final Order, or the Hedging Orders.  Notwithstanding the foregoing, no more than $50,000 of the Prepetition Collateral, Collateral, Cash Collateral, or the Carve Out, in the aggregate, may be used by the Committee, if any, to investigate, prior to the Challenge Deadline, the claims and liens of the Prepetition Secured Parties on the Prepetition Collateral.

18.    **Enforceability;  Waiver of Any Applicable Stay**.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding

Bankruptcy Rules 6004, 7062 or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

19.     **No Impact on Certain Contracts or Transactions.**  No rights of any entity in connection with a contract or transaction of the kind listed in sections 555, 556, 559, 560 and 561 of the Bankruptcy Code, whatever they might or might not be, are affected by the provisions of this Final Order.

20.     **Proofs of Claim**.  Neither the Prepetition Agent nor any of the Prepetition Secured Parties will be required to file proofs of claim in any of the Cases or successor cases, and the Debtors' stipulations in paragraphs C, D, E, and F herein shall be deemed to constitute a timely filed proof of claim against the applicable Debtors.  Notwithstanding the foregoing, the Prepetition Agent (on behalf of itself and the other Prepetition Secured Parties) is hereby authorized and entitled, but not required, in its sole discretion, to file (and amend and/or supplement) a master proof of claim for any claims of the Prepetition Secured Parties arising from the applicable Prepetition Loan Documents; *provided* that nothing herein shall waive the right of any Prepetition Secured Party to file its own proofs of claim against the Debtors.

21.     **Section 552(b) of the Bankruptcy Code**.  The Prepetition Agent and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agent and the Prepetition Secured Parties with respect to proceeds, products, offspring, rents and profits of any of the Prepetition Collateral or the Collateral.

22.     **BANA Building Carve Out**.   Notwithstanding any provision in the Interim Order or this Final Order to the contrary, in no event shall Bank of America, N.A. ("BANA") obtain the benefit of any Adequate Protection Liens on Collateral that constitutes a building or manufactured (mobile) home (each a "Building"), in each case until such time as BANA notifies the Prepetition Agent and the applicable Debtors that it has elected to obtain the benefit of Adequate Protection Liens on Collateral that constitutes a Building following confirmation by the Prepetition Agent, the applicable Debtors or BANA's determination that all applicable flood insurance regulation requirements have been satisfied.   Upon such notice, BANA shall automatically obtain the benefit of any Adequate Protection Liens on Collateral that constitutes a Building without the need for further action by any party.

23.     **No Marshaling**.   Neither the Prepetition Agent nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Collateral, as applicable.

24.     **Payment of Fees to the Ad Hoc Group**.   So long as (i) the Noteholder Plan Support Agreement has not been terminated and (ii) the Termination Date has not occurred, the Debtors are authorized to pay the reasonable and documented fees and out of pocket expenses of Davis Polk & Wardwell LLP, Norton Rose Fulbright US LLP, and Miller Buckfire & Co., LLC, as advisors to the Ad Hoc Group, whether such fees were incurred prior to or after the Petition Date.   The payment of the fees and expenses set forth in this paragraph 24 of this Final Order shall be made within ten (10) business days after the receipt by the Debtors, counsel to the Committee, if any, the Prepetition Agent, the Senior Notes Trustees, and the United States Trustee (the "Ad Hoc Group Review Period") of invoices thereof (the "Ad Hoc Group Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines) and without the

necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; *provided*, *however*, that the Debtors, the Committee, if any, the Prepetition Agent, the Senior Notes Trustees, or the United States Trustee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Ad Hoc Group Disputed Invoiced Fees") if, within the Ad Hoc Group Review Period, (i) the Debtors pay in full the Ad Hoc Group Invoiced Fees, including the Ad Hoc Group Disputed Invoiced Fees, and (ii) such objecting party files with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Ad Hoc Group of any hearing on such motion or other pleading, setting forth the specific objections to the Ad Hoc Group Disputed Invoiced Fees.  Provided, such fees shall be subject to disgorgement to the extent that the fees would not have been payable by the estate if the Ad Hoc Group was an official committee for the noteholders established under 11 U,S.C. § 1102(a)(2). The preceding sentence does not impose the duties of an official committee on the Ad Hoc Group,

25.    **Reporting to the Ad Hoc Group**.  So long as (i) the Noteholder Plan Support Agreement has not been terminated and (ii) the Termination Date has not occurred, the Debtors shall provide the Ad Hoc Group with all reporting materials and other rights provided by the Debtors to the Prepetition Agent under the second sentence of paragraph 3(d) and paragraph 3(f) of this Final Order (subject to any applicable confidentiality restrictions).

26.    **Headings**.  The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

27.    **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce this Final Order.

2 - 8 -17

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

⊡ Memorial

| Line No. | Week of Forecast / Week Ending | 0 1/13/2017 Pre-Petition | 1 1/20/2017 Budget Fcst | 2 1/27/2017 Budget Fcst | 3 2/3/2017 Budget Fcst | 4 2/10/2017 Budget Fcst | 5 2/17/2017 Budget Fcst | 6 2/24/2017 Budget Fcst | 7 3/3/2017 Budget Fcst | 8 3/10/2017 Budget Fcst | 9 3/17/2017 Budget Fcst | 10 3/24/2017 Budget Fcst | 11 3/31/2017 Budget Fcst | 12 4/7/2017 Budget Fcst | 13 4/14/2017 Budget Fcst | Budget Period Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Beginning Cash Balance | $31,211,951 | $31,303,037 | $46,311,391 | $37,829,561 | $35,485,770 | $32,849,606 | $48,776,521 | $46,308,678 | $44,957,700 | $41,544,054 | $55,557,695 | $53,763,968 | $52,997,624 | $31,303,037 |
| | Oil & Gas Revenues (1/11/17 Pricing) | | | | | | | | | | | | | | |
| 2 | South TX Revenue (30 day lag) | 0 | 0 | 500,000 | 0 | 0 | 1,334,388 | 1,000,000 | 0 | 0 | 1,053,965 | 1,000,000 | 0 | 0 | 6,440,622 |
| 3 | East TX / North LA Revenue (30 day lag) | 0 | 3,352,269 | 2,900,000 | 0 | 0 | 11,212,585 | 7,000,000 | 0 | 0 | 8,361,327 | 7,000,000 | 0 | 0 | 50,762,452 |
| 4 | Barnett Revenue (30 day lag) | 5,392,218 | 14,046,239 | 0 | 0 | 0 | 5,565,945 | 0 | 0 | 0 | 5,628,580 | 0 | 0 | 0 | 16,985,463 |
| 5 | Barnett Revenue (30 day lag) | 1,935,947 | 6,821,269 | 0 | 0 | 1,338,318 | 6,951,062 | 0 | 0 | 1,666,225 | 7,691,705 | 0 | 0 | 0 | 20,906,606 |
| 6 | Eagle Ford Revenue (60 day lag) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,482,496 |
| | Divesture Settlements | | | | | | | | | | | | | | |
| 7 | - Permian Sale Settlements | 0 | 0 | 0 | 0 | 1,328,620 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1,328,620 |
| 8 | - Rockies Sale Settlements | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | Hedge Settlements (1/11/17 Pricing) | | | | | | | | | | | | | | |
| 9 | - Natural Gas | 73,433,107 | 0 | 761,490 | 0 | 0 | 777,459 | 0 | 0 | 0 | 0 | 0 | 790,150 | 0 | 2,328,990 |
| 10 | - Crude | 1,725,680 | 0 | 0 | 2,239,840 | 0 | 0 | 2,152,270 | 0 | 0 | 0 | 2,111,910 | 0 | 0 | 6,504,020 |
| 11 | - Natural Gas Liquids | 800,254 | 0 | 0 | 365,967 | 0 | 0 | 328,432 | 0 | 0 | 0 | 338,551 | 0 | 0 | 1,032,980 |
| 12 | Bill Receipts | 63,311 | 249,139 | 249,139 | 249,139 | 249,139 | 249,139 | 249,139 | 249,139 | 249,139 | 249,139 | 249,139 | 249,139 | 188,890 | 3,178,556 |
| 13 | Other Receipts | 20,652,980 | 0 | 1,450,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7,189,945 | 8,639,945 |
| | Subtotal - Operating Revenue | 96,735,352 | 7,000,304 | 33,310,936 | 4,960,629 | 2,854,386 | 3,106,077 | 25,371,739 | 9,026,589 | 2,729,841 | 1,855,364 | 22,866,776 | 3,489,630 | 7,378,834 | 122,190,784 |
| 14 | Prior Week Checks O/S | (5,549,459) | (1,200,000) | (3,100,000) | (5,000,000) | (3,100,000) | (3,100,000) | (3,000,000) | (3,000,000) | (3,000,000) | (3,000,000) | (3,000,000) | (3,000,000) | (3,000,000) | (8,714,204) |
| 15 | Operated Royalties Paid | (19,992) | (4,790,280) | (4,750,280) | (1,935,645) | (1,950,000) | (5,840,517) | (5,248,895) | (3,040,000) | (3,040,000) | (6,391,742) | (1,291,789) | 0 | (3,040,000) | (3,030) |
| 16 | Production Taxes | 0 | (70,925) | (350,228) | (280,102) | (61,154) | (109,731) | (134,417) | (640,690) | (640,690) | (65,684) | (142,755) | 0 | 0 | (121,195,629) |
| 17 | LOE | (5,680,147) | (3,200,000) | (2,228,705) | (2,210,203) | (2,216,201) | (2,210,203) | (2,216,201) | (1,460,135) | (1,410,684) | (2,219,844) | (2,219,844) | (507,283) | (1,419,484) | (1,668,978) |
| 18 | GP&T | 0 | (350,000) | (100,000) | (350,000) | (100,000) | (350,000) | (100,000) | (1,410,684) | (100,000) | (350,000) | (350,000) | 0 | 0 | (62,505,960) |
| 19 | Capex | (134,203) | 880,000 | (811,236) | (811,236) | (811,236) | (811,236) | (811,236) | (854,207) | (854,207) | (854,207) | (854,207) | (854,207) | (854,207) | (1,700,000) |
| 20 | Insurance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (10,985,699) |
| 21 | Ad Valorem Taxes | 0 | 0 | 0 | (750,000) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 22 | Transaction Costs | (6,593,815) | (898,235) | (3,580,000) | (800,000) | (1,300,000) | (800,000) | (2,415,600) | 1,300,000 | 1,300,000 | 11,000,000 | (750,000) | (875,000) | (15,768,756) | (1,688,235) |
| 23 | Miscellaneous | (130,060) | (550,000) | (1,450,000) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (2,340,000) | (28,648,756) |
| 24 | G&A | (2,720,308) | (250,000) | (707,283) | (509,635) | (1,009,635) | (1,009,635) | (307,283) | (307,283) | (1,009,635) | (1,009,635) | (307,283) | (507,283) | (1,009,635) | (7,250,000) |
| 25 | Checks Remaining O/S | 1,693,055 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 3,000,000 | 45,000,000 |
| | Subtotal - Operating Payments | (19,188,959) | (7,368,261) | (18,536,606) | (11,722,835) | (13,508,756) | (15,732,242) | (9,444,824) | (10,077,838) | (4,080,819) | (5,269,040) | (8,833,135) | (4,462,820) | (23,352,576) | (112,134,205) |
| 26 | Borrowing Interest | 0 | 0 | 0 | (1,716,594) | 0 | 0 | (1,422,594) | 0 | 0 | 0 | (1,575,616) | 0 | 0 | (4,714,204) |
| 27 | Commitment Fees | 0 | 0 | 0 | (3,030) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (3,030) |
| 28 | Acquisitions / Divestitures | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 29 | Expert/Debt but Receipts | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (24,600,000) | (24,600,000) |
| 30 | Subtotal | 88,758,144 | 31,537,080 | 46,311,391 | 37,829,561 | 35,485,770 | 32,849,606 | 48,776,521 | 46,308,678 | 44,957,700 | 41,544,054 | 55,557,695 | 53,763,968 | 52,997,624 | 12,424,382 |
| 31 | Revolver Activity | (56,454,107) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (2,000,000) |
| 32 | Ending Cash | $31,303,037 | $31,537,080 | $46,311,391 | $37,829,561 | $35,485,770 | $32,849,606 | $48,776,521 | $46,308,678 | $44,957,700 | $41,544,054 | $55,557,695 | $53,763,968 | $52,997,624 | $10,424,382 |
| | Outstanding Loans | 454,798,614 | 454,798,614 | 454,798,614 | 454,798,614 | 454,798,614 | 454,798,614 | 454,798,614 | 454,798,614 | 454,798,614 | 454,798,614 | 454,798,614 | 454,798,614 | 452,798,614 | 452,798,614 |
| | Outstanding LCs | 2,375,000 | 2,375,000 | 2,375,000 | 2,375,000 | 2,375,000 | 2,375,000 | 2,375,000 | 2,375,000 | 2,375,000 | 2,375,000 | 2,375,000 | 2,375,000 | 2,375,000 | 2,375,000 |
| | Revolving Credit Exposure | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 455,173,614 | 455,173,614 |
| | Borrowing Base Assumption | 457,199,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 457,173,614 | 402,500,000 | 402,500,000 |
| | RCF Availability | 26,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 37,326,386 | 37,326,386 |
| | Cash on Hand | 32,587,984 | 31,537,080 | 46,311,391 | 37,829,561 | 35,485,770 | 32,849,606 | 48,776,521 | 46,308,678 | 44,957,700 | 41,544,054 | 55,557,695 | 53,763,968 | 10,424,382 | 10,424,382 |
| | Total Liquidity | $32,613,984 | $31,537,080 | $46,311,391 | $37,829,561 | $35,485,770 | $32,849,606 | $48,776,521 | $46,308,678 | $44,957,700 | $41,544,054 | $55,557,695 | $53,763,968 | $47,750,768 | $47,750,768 |

Privileged and Confidential    MEMP 13 Week Cash Flow Forecast    2/7/2017