## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § § § | **Chapter 11** |
| **MEMORIAL PRODUCTION PARTNERS LP,** *et al.*, | § § § § | **Case No. 17-30262** **(Jointly Administered)** |
| **Debtors.**1 | § § § | |

### NOTICE OF FILING OF AMENDMENT TO PLAN SUPPLEMENT

**PLEASE TAKE NOTICE** that, on January 16, 2017, Memorial Production Partners LP and its debtor affiliates in the above-captioned cases, as debtors and debtors in possession (collectively, the "**Debtors**"), commenced cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE** that, on January 17, 2017, the Debtors filed the *Joint Plan of Reorganization of Memorial Production Partners LP, et al. under Chapter 11 of the Bankruptcy Code* (ECF No. 18).

**PLEASE TAKE FURTHER NOTICE** that, on February 24, 2017, the Debtors filed the *Amended Joint Plan of Reorganization of Memorial Production Partners LP, et al. under Chapter 11 of the Bankruptcy Code* (the "**Amended Plan**") (ECF No. 228).

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Memorial Production Partners LP (6667); Memorial Production Partners GP LLC; MEMP Services LLC (1887); Memorial Production Operating LLC; Memorial Production Finance Corporation (3356); WHT Energy Partners LLC; WHT Carthage LLC; Memorial Midstream LLC; Beta Operating Company, LLC; Columbus Energy, LLC; Rise Energy Operating, LLC; Rise Energy Minerals, LLC; Rise Energy Beta, LLC; San Pedro Bay Pipeline Company (1234); and Memorial Energy Services LLC. The Debtors' mailing address is 500 Dallas Street, Suite 1600, Houston, Texas 77002.

**PLEASE TAKE FURTHER NOTICE** that, on March 24, 2017, pursuant to the *Order (I) Approving the Adequacy of Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* (Docket No. 245), the Debtors filed a plan supplement containing certain documents necessary to implement the terms of the Amended Plan (Docket No. 283) (the "**Plan Supplement**").

**PLEASE TAKE FURTHER NOTICE** that attached hereto is the Management Incentive Plan (Exhibit I to the Plan Supplement).

**PLEASE TAKE FURTHER NOTICE** that the documents contained in the Plan Supplement are integral to, and are considered part of, the Amended Plan.  If the Amended Plan is approved, the documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Amended Plan.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider confirmation of the Amended Plan is scheduled for **Tuesday, April 4, 2017 at 10:00 a.m. (Central Time)**, before the Honorable Marvin Isgur, United States Bankruptcy Judge (the "**Confirmation Hearing**").

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend that, upon the effective date of the Amended Plan, the parent company of the Reorganized Debtors will be named "Amplify Energy Corp."

WEIL:\96083430\1\62739.0004

**PLEASE TAKE FURTHER NOTICE** that copies of the exhibits contained in this Plan Supplement, and all documents filed in these chapter 11 cases are available free of charge by visiting http://www.omnimgt.com/memorialpp or by calling 877-773-8184.  You may also obtain copies of the pleadings by visiting the Bankruptcy Court's website at https://ecf.txsb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated:  March 31, 2017
      Houston, Texas

                 */s/ Alfredo R. Pérez*
                 WEIL, GOTSHAL & MANGES LLP
                 Alfredo R. Pérez (15776275)
                 700 Louisiana Street, Suite 1700
                 Houston, Texas  77002
                 Telephone: (713) 546-5000
                 Facsimile:  (713) 224-9511

                 -and-

                 WEIL, GOTSHAL & MANGES LLP
                 Gary T. Holtzer (admitted *pro hac vice*)
                 Joseph H. Smolinsky (admitted *pro hac vice*)
                 767 Fifth Avenue
                 New York, New York  10153
                 Telephone:  (212) 310-8000
                 Facsimile:  (212) 310-8007

                 *Attorneys for the Debtors and*
                 *Debtors in Possession*

WEIL:\96083430\1\62739.0004

<u>**Exhibit I to the Plan Supplement**</u>

**Management Incentive Plan**

**Execution Version**

**AMPLIFY ENERGY CORP.**
**MANAGEMENT INCENTIVE PLAN**

1.      Purpose.

The purpose of the Amplify Energy Corp. Management Incentive Plan is to further align the interests of eligible participants with those of the Company's stockholders by providing long-term incentive compensation opportunities tied to the performance of the Company and its Common Stock. The Plan is intended to advance the interests of the Company and increase stockholder value by attracting, retaining and motivating key personnel upon whose judgment, initiative and effort the successful conduct of the Company's business is largely dependent. The Plan will be effective on the date the Company emerges from the restructuring transaction contemplated in the Plan of Reorganization

2.      Definitions. Wherever the following capitalized terms are used in the Plan and/or an Award Agreement (as defined below), they shall have the meanings specified below:

"*Award*" means an award of a Stock Option, Stock Appreciation Right, Restricted Stock Award, Restricted Stock Unit or Other Stock-Based Award granted under the Plan.

"*Award Agreement*" means a notice or an agreement entered into between the Company and a Participant setting forth the terms and conditions of an Award granted to a Participant as provided in Section 14.1 hereof.

"*Board*" means the Board of Directors of the Company.

"*Cause*" shall mean, unless otherwise defined in the Award Agreement, (i) a Participant's commission of, conviction for, plea of guilty or nolo contendere to a felony or a crime involving moral turpitude; (ii) a Participant's engaging in conduct that constitutes fraud, gross negligence or willful misconduct in connection with his or her employment duties or responsibilities; (iii) a Participant's contravention, in any material respect, of specific lawful directions related to a material duty or responsibility which is directed to be undertaken from the person to whom such Participant reports; (iv) any acts by a Participant which constitute embezzlement, misappropriation or breach of fiduciary duty resulting or intending to result in such Participant's personal gain or enrichment at the expense of the Company or its affiliates; or (v) a Participant's continued failure to comply with a material policy of the Company or its affiliates after receiving notice of failure to comply from the person to whom such Participant reports.

"*Change of Control*" shall have the meaning set forth in Section 12.2 hereof.

"*Code*" means the Internal Revenue Code of 1986, as amended.

"*Committee*" means (i) the Compensation Committee of the Board, (ii) such other committee of the Board appointed by the Board to administer the Plan or (iii) the Board, as determined by the Board.

"*Common Stock*" means the Company's common stock, par value $0.0001 per share.

"*Company*" means Amplify Energy Corp., a Delaware corporation, or any successor thereto.

"*Date of Grant*" means the date on which an Award under the Plan is granted by the Committee or such later date as the Committee may specify to be the effective date of an Award.

"*Disability*" shall mean, unless otherwise defined in the Award Agreement, the Participant is unable to perform his or her duties for a period of 90 consecutive days as a result of physical or mental impairment or illness or injury at the time of a termination of employment.

"*Effective Date*" shall mean the effective date under the Plan of Reorganization.

"*Eligible Person*" means any person who is an employee of the Company or any of its Subsidiaries. An employee on leave of absence may be considered as still in the employ of the Company or any of its Subsidiaries for purposes of eligibility for participation in this Plan.

"*Exchange Act*" means the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder, as the same may be amended from time to time.

"*Fair Market Value*" means, with respect to a share of Common Stock as of a given date of determination hereunder, the closing price as quoted on any national stock exchange or over-the-counter market on which the Common Stock is then traded, or if the Common Stock was not traded on such date, then the immediately preceding date on which sales of shares of Common Stock have been so quoted or reported shall be used. If the Common Stock on such date is not so publicly traded, "Fair Market Value" shall be determined based upon a pre-established formula determined by the Committee or by an independent third-party valuation firm selected by the Committee, and shall be determined in a manner consistent with Section 409A of the Code and the regulations thereunder. In the event that the Common Stock is not publicly traded, Fair Market Value (as determined in accordance with the foregoing sentence) shall be communicated to Participants on a quarterly basis.

"*Incentive Stock Option*" means a Stock Option granted under Section 6 hereof that is intended to meet the requirements of Section 422 of the Code and the regulations thereunder.

"*Incumbent Directors*" shall have the meaning set forth in Section 12.2(b) hereof.

"*Nonqualified Stock Option*" means a Stock Option granted under Section 6 hereof that is not an Incentive Stock Option.

"*Other Stock-Based Awards*" shall have the meaning set forth in Section 11 hereof.

2

"*Outstanding Company Voting Securities*" shall have the meaning set forth in Section 12.2(a) hereof.

"*Participant*" means any Eligible Person who holds an outstanding Award under the Plan.

"*Performance Criteria*" shall have the meaning set forth in Section 10.1 hereof.

"*Performance Goals*" shall have the meaning set forth in Section 10.2 hereof.

"*Performance Stock Unit*" means a Restricted Stock Unit designated as a Performance Stock Unit under Section 9.1 hereof, to be paid or distributed based on or conditioned upon the attainment of pre-established business and/or individual Performance Goals over a specified performance period.

"*Permitted Holder*" means any holder who, directly or indirectly, owns more than 25% of the Outstanding Company Voting Securities as of the Effective Date.

"*Person*" shall have the meaning ascribed to such term in Section 3(a)(9) of the Exchange Act and used in Sections 13(d) and 14(d) thereof, including a "group" as defined in Section 13(d) thereof.

"*Plan*" means the Amplify Energy Corp. Management Incentive Plan as set forth herein, effective and as may be amended from time to time as provided herein.

"*Plan of Reorganization*" means that certain Plan of Reorganization filed in the bankruptcy court by Memorial Production Partners LP on January 17, 2017, as may be amended.

"*Restricted Stock Award*" means a grant of shares of Common Stock to an Eligible Person under Section 8 hereof that are issued subject to such vesting and transfer restrictions as the Committee shall determine, and such other conditions, as are set forth in the Plan and the applicable Award Agreement.

"*Restricted Stock Unit*" means a contractual right granted to an Eligible Person under Section 9 hereof representing notional unit interests equal in value to a share of Common Stock to be paid or distributed at such times, and subject to such conditions, as set forth in the Plan and the applicable Award Agreement.

"*Securities Act*" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder, as the same may be amended from time to time.

"*Service*" means a Participant's employment with the Company or any Subsidiary.

"*Stock Appreciation Right*" means a contractual right granted to an Eligible Person under Section 7 hereof entitling such Eligible Person to receive a payment representing the excess of the Fair Market Value of a share of Common Stock over the base price per share of

WEIL:\96059535\6\62739.0004
#89492662v2

the right, at such time, and subject to such conditions, as are set forth in the Plan and the applicable Award Agreement.

"*Stock Option*" means a contractual right granted to an Eligible Person under Section 6 hereof to purchase shares of Common Stock at such time and price, and subject to such conditions, as are set forth in the Plan and the applicable Award Agreement.

"*Subsidiary*" means an entity (whether or not a corporation) that is wholly or majority owned or controlled, directly or indirectly, by the Company or any other affiliate of the Company that is so designated, from time to time, by the Committee, during the period of such affiliated status; provided, however, that with respect to Incentive Stock Options, the term "Subsidiary" shall include only an entity that qualifies under Section 424(f) of the Code as a "subsidiary corporation" with respect to the Company.

3.    Administration.

3.1    *Committee Members*. The Plan shall be administered by the Committee.  To the extent required by, or intended to obtain an exemption or benefit under, applicable law or securities exchange rules, the Committee or subcommittee thereof shall be comprised of no fewer than two members of the Board who are appointed by the Board to administer the Plan and who satisfy the requirements for (i) an "independent director" under rules adopted by any national stock exchange on which the Common Stock is then traded, (ii) a "nonemployee director" within the meaning of Rule 16b-3 under the Exchange Act, and/or (iii) an "outside director" under Section 162(m) of the Code, as applicable. Notwithstanding the foregoing, the mere fact that an Award has been granted inconsistent with any of the foregoing provisions of this Section 3.1 shall not invalidate any Award which is otherwise validly made under the Plan. Neither the Company nor any member of the Committee shall be liable for any action or determination made in good faith by the Committee with respect to the Plan or any Award thereunder.

3.2    *Committee Authority*. The Committee shall have all powers and discretion necessary or appropriate to administer the Plan and to control its operation, including, but not limited to, the power to (i) determine the Eligible Persons to whom Awards shall be granted under the Plan, (ii) prescribe the restrictions, terms and conditions of all Awards, (iii) interpret the Plan and terms of the Awards, (iv) adopt rules for the administration, interpretation and application of the Plan as are consistent therewith, and interpret, amend or revoke any such rules, (v) make all determinations with respect to a Participant's Service and the termination of such Service for purposes of any Award, (vi) correct any defect(s) or omission(s) or reconcile any ambiguity(ies) or inconsistency(ies) in the Plan or any Award thereunder, (vii) make all determinations it deems advisable for the administration of the Plan, (viii) decide all disputes arising in connection with the Plan and to otherwise supervise the administration of the Plan, (ix) subject to the terms of the Plan, amend the terms of an Award in any manner that is not inconsistent with the Plan, (x) accelerate the vesting or, to the extent applicable, exercisability of any Award at any time (including, but not limited to, upon a Change of Control or upon termination of Service under certain circumstances, as set forth in the Award Agreement or otherwise), and (xi) adopt such procedures, modifications or subplans as are necessary or appropriate to permit participation in the Plan by Eligible Persons who are foreign nationals or

4

employed outside of the United States. The Committee's determinations under the Plan need not be uniform and may be made by the Committee selectively among Participants and Eligible Persons, whether or not such persons are similarly situated. The Committee shall, in its discretion, consider such factors as it deems relevant in making its interpretations, determinations and actions under the Plan including, without limitation, the recommendations or advice of any officer or employee of the Company or board of directors of a Subsidiary or such attorneys, consultants, accountants or other advisors as it may select. All interpretations, determinations, and actions by the Committee shall be final, conclusive, and binding upon all parties.

3.3     *Delegation of Authority*. The Committee shall have the right, from time to time, to delegate in writing to one or more officers of the Company the authority of the Committee to grant and determine the terms and conditions of Awards granted under the Plan, subject to the requirements of Section 157(c) of the Delaware General Corporation Law (or any successor provision) or such other limitations as the Committee shall determine. In no event shall any such delegation of authority be permitted with respect to Awards granted to any Eligible Person who is subject to Rule 16b-3 under the Exchange Act or is a covered employee under Section 162(m) of the Code. The Committee shall also be permitted to delegate, to any appropriate officer, employee or agent of the Company, responsibility for performing certain ministerial functions under the Plan. In the event that the Committee's authority is delegated to officers, employees or agents in accordance with the foregoing, all provisions of the Plan relating to the Committee shall be interpreted in a manner consistent with the foregoing by treating any such reference as a reference to such officer, employee or agent for such purpose. Any action undertaken in accordance with the Committee's delegation of authority hereunder shall have the same force and effect as if such action was undertaken directly by the Committee and shall be deemed for all purposes of the Plan to have been taken by the Committee.

4.     Shares Subject to the Plan

4.1     *Number of Shares Reserved*. Subject to adjustment as provided in Section 4.4 hereof, the total number of Shares of Common Stock that are reserved for issuance under the Plan shall equal [___][1] shares of Common Stock. Any shares of Common Stock delivered under the Plan shall consist of authorized and unissued shares or treasury shares.  Shares of Common Stock that are (i) tendered by a Participant or withheld by the Company in payment of the exercise, base or purchase price relating to an Award, (ii) tendered by the Participant or withheld by the Company to satisfy any taxes or tax withholding obligations with respect to an Award, or (iii) not issued or delivered as a result of the net settlement of an outstanding Stock Option or Stock Appreciation Right under the Plan, as applicable, will not be available for future Awards under the Plan.

---

[1] Insert the number of shares that equals 10% of the New Common Shares (including New Common Shares issuable under the Management Incentive Plan but excluding New Common Shares issuable under the Memorial Limited Partner Warrants). All defined terms used in the footnote shall have the meaning set forth in the Plan of Reorganization.

5

4.2     *Share Replenishment*. To the extent that an Award granted under this Plan is canceled, expired, forfeited, or otherwise terminated without delivery of the shares of Common Stock or payment of consideration to the Participant under the Plan (other than as contemplated by Section 4.1), the shares of Common Stock retained by or returned to the Company will not be deemed to have been delivered under the Plan, as applicable and will be available for future Awards under the Plan.

4.3     *Section 162(m) Limitations*. For purposes of complying with the requirements of Section 162(m) of the Code, the maximum number of shares of Common Stock that may be subject to (i) Stock Options, (ii) Stock Appreciation Rights, (iii) Restricted Stock Awards that vest in full or in part based on the attainment of Performance Goals, (iv) Restricted Stock Units that vest in full or in part based on the attainment of Performance Goals, and (v) Other Stock-Based Awards that vest in full or in part based on the attainment of Performance Goals, in each case that are granted to any single Eligible Person in any single calendar year during the term of the Plan shall be limited to [_____] shares of Common Stock for each such Award type individually (subject to adjustment as provided in Section 4.4 hereof).

4.4     *Adjustments*. If there shall occur any change with respect to the number of outstanding shares of Common Stock by reason of any capital restructuring, recapitalization, reclassification, stock dividend, extraordinary dividend, stock split, reverse stock split or other distribution with respect to the shares of Common Stock or any merger, reorganization, consolidation, combination, spin-off or other similar corporate change or any other change affecting the Common Stock (other than regular cash dividends to stockholders of the Company), the Committee shall, in the manner and to the extent it considers appropriate and equitable to the Participants and consistent with the terms of the Plan, cause an adjustment to be made to (i) the maximum number and kind of shares of Common Stock provided in Sections 4.1 and 4.3 hereof (including the maximum number of shares of Common Stock that may become payable to a Participant provided in Sections 4.3 hereof), (ii) the number and kind of shares of Common Stock, shares of other classes of the Company's common stock, securities, units or other rights or property subject to, or issuable in respect of, then outstanding Awards, (iii) the exercise or base price for each share or unit or other right subject to then outstanding Awards, (iv) other value determinations applicable to the Plan and/or outstanding Awards, (v) any dividend equivalent rights associated with outstanding Awards and (vi) any other terms of an Award that are affected by the event. Notwithstanding the foregoing, (a) any such adjustments shall, to the extent necessary, be made in a manner consistent with the requirements of Section 409A of the Code and (b) in the case of Incentive Stock Options, any such adjustments shall, to the extent practicable, be made in a manner consistent with the requirements of Section 424(a) of the Code. Without limitation, any adjustments made pursuant to this Section 4.4 may in the Committee's sole discretion be made through the granting of dividend equivalent rights to holders of outstanding Awards.

5.     Eligibility and Awards.

5.1     *Designation of Participants*. Any Eligible Person may be selected by the Committee to receive an Award and become a Participant.  The Committee has the authority to determine and designate from time to time those Eligible Persons who are to be granted Awards, the types of Awards to be granted, the number of shares of Common Stock or units subject to

6

Awards to be granted and the terms and conditions of such Awards consistent with the terms of the Plan. In selecting Eligible Persons to be Participants, and in determining the type and amount of Awards to be granted under the Plan, the Committee shall consider any and all factors that it deems relevant or appropriate. In making its determination under this Section 5.1, the Committee shall take into account the recommendations of the Company's Chief Executive Officer.

5.2    *Emergence Awards*.   Notwithstanding any provisions in this Section 5 or otherwise in the Plan to the contrary, the grant and terms and conditions of the Emergence Awards shall be consistent with the MIP Term Sheet. For purposes of the Plan, (i) "*MIP Term Sheet*" means that certain Management Incentive Term Sheet set forth as Annex 4 of Exhibit A of the Plan of Reorganization and (ii) "*Emergence Award*" means an Award under the Plan granted subject to the terms and conditions set forth in the MIP Term Sheet.

5.3    *Award Agreements*. Each Award granted to an Eligible Person shall be represented by an Award Agreement. The terms of all Awards under the Plan will be set forth in individual Award Agreements as described in Section 14.1 hereof.

6.    Stock Options.

6.1    *Grant of Stock Options*. A Stock Option may be granted to any Eligible Person selected by the Committee, except that an Incentive Stock Option may only be granted to an Eligible Person satisfying the conditions of Section 6.7(a) hereof. Each Stock Option shall be designated on the Date of Grant, in the discretion of the Committee, as an Incentive Stock Option or as a Nonqualified Stock Option. All Stock Options granted under the Plan to U.S. taxpayers are intended to comply with or be exempt from the requirements of Section 409A of the Code.

6.2    *Exercise Price*. The exercise price per share of a Stock Option shall not be less than 100% of the Fair Market Value of a share of Common Stock on the Date of Grant.

6.3    *Vesting of Stock Options*. The Committee shall, in its discretion, prescribe in an Award Agreement the time or times at which, or the conditions upon which, a Stock Option or portion thereof shall become vested and/or exercisable. The requirements for vesting and exercisability of a Stock Option may be based on the continued Service of the Participant with the Company or a Subsidiary for a specified time period (or periods), on the attainment of a specified Performance Goal(s) designed to meet the requirements for exemption under Section 162(m) of the Code and/or on such other terms and conditions as approved by the Committee in its discretion. Except as other determined by the Committee, if the vesting requirements of a Stock Option are not satisfied, the Award shall be forfeited.

6.4    *Term of Stock Options*. The Committee shall in its discretion prescribe in an Award Agreement the period during which a vested Stock Option may be exercised; provided, however, that the maximum term of a Stock Option shall be ten years from the Date of Grant. The Committee may provide that a Stock Option will cease to be exercisable upon or at the end of a specified time period following a termination of Service for any reason as set forth in the Award Agreement or otherwise. A Stock Option may be earlier terminated as specified by the Committee and set forth in an Award Agreement upon or following the termination of a Participant's Service with the Company or any Subsidiary, including by reason of voluntary

7

resignation (whether with or without Good Reason), death, Disability, termination for Cause or any other reason. Subject to Section 409A of the Code and the provisions of this Section 6, the Committee may extend at any time the period in which a Stock Option may be exercised.

6.5     *Stock Option Exercise; Tax Withholding*. Subject to such terms and conditions as specified in an Award Agreement, a Stock Option may be exercised in whole or in part at any time during the term thereof by notice in the form required by the Company, together with payment of the aggregate exercise price and applicable withholding tax. Payment of the exercise price may be made: (i) in cash or by cash equivalent acceptable to the Committee, or (ii) to the extent permitted by the Committee in its sole discretion in an Award Agreement or otherwise (A) in shares of Common Stock valued at the Fair Market Value of such shares on the date of exercise, (B) through an open-market, broker-assisted sales transaction pursuant to which the Company is promptly delivered the amount of proceeds necessary to satisfy the exercise price, (C) by reducing the number of shares of Common Stock otherwise deliverable upon the exercise of the Stock Option by the number of shares of Common Stock having a Fair Market Value on the date of exercise equal to the exercise price, (D) by a combination of the methods described above or (E) by such other method as may be approved by the Committee and set forth in the Award Agreement. In accordance with Section 14.10 hereof, and in addition to and at the time of payment of the exercise price, the Participant shall pay to the Company the full amount of any and all applicable income tax, employment tax and other amounts required to be withheld in connection with such exercise, payable under such of the methods described above for the payment of the exercise price as may be approved by the Committee and set forth in the Award Agreement.

6.6     *Limited Transferability of Nonqualified Stock Options*. All Stock Options shall be nontransferable except (i) upon the Participant's death, in accordance with Section 14.2 hereof or (ii) in the case of Nonqualified Stock Options only, for the transfer of all or part of the Stock Option to a Participant's "family member" (as defined for purposes of the Form S-8 registration statement under the Securities Act), or as otherwise permitted by the Committee, in each case as may be approved by the Committee in its discretion at the time of proposed transfer. The transfer of a Nonqualified Stock Option may be subject to such terms and conditions as the Committee may in its discretion impose from time to time. Subsequent transfers of a Nonqualified Stock Option shall be prohibited other than in accordance with Section 14.2 hereof.

6.7     *Additional Rules for Incentive Stock Options*.

(a)     *Eligibility*. An Incentive Stock Option may only be granted to an Eligible Person who is considered an employee for purposes of Treasury Regulation Section 1.421-1(h) with respect to the Company or any Subsidiary that qualifies as a "subsidiary corporation" with respect to the Company for purposes of Section 424(f) of the Code.

(b)     *Annual Limits*. No Incentive Stock Option shall be granted to a Participant as a result of which the aggregate Fair Market Value (determined as of the Date of Grant) of the Common Stock with respect to which incentive stock options under Section 422 of the Code are exercisable for the first time in any calendar year under the Plan and any other stock option plans of the Company or any Subsidiary or parent corporation, would exceed $100,000, determined in accordance with Section 422(d) of the Code. This limitation shall be applied by taking Stock

WEIL:\96059535\6\62739.0004
#89492662v2

Options into account in the order in which granted. Any Stock Option grant that exceeds such limit shall be treated as a non-qualified stock option.

(c)     *Additional Limitations*. In the case of any Incentive Stock Option granted to an Eligible Person who owns, either directly or indirectly (taking into account the attribution rules contained in Section 424(d) of the Code), stock possessing more than 10% of the total combined voting power of all classes of stock of the Company or any Subsidiary, the exercise price shall not be less than 110% of the Fair Market Value of a share of Common Stock on the Date of Grant and the maximum term shall be five years.

(d)     *Termination of Service*. An Award of an Incentive Stock Option may provide that such Stock Option may be exercised not later than (i) three months following termination of Service of the Participant with the Company and all Subsidiaries (other than as set forth in clause (ii) of this Section 6.7(d)) or (ii) one year following termination of Service of the Participant with the Company and all Subsidiaries due to death or permanent and total disability within the meaning of Section 22(e)(3) of the Code, in each case as and to the extent determined by the Committee to comply with the requirements of Section 422 of the Code.

(e)     *Other Terms and Conditions; Nontransferability*. Any Incentive Stock Option granted hereunder shall contain such additional terms and conditions, not inconsistent with the terms of the Plan, as are deemed necessary or desirable by the Committee, which terms, together with the terms of the Plan, shall be intended and interpreted to cause such Incentive Stock Option to qualify as an "incentive stock option" under Section 422 of the Code. A Stock Option that is granted as an Incentive Stock Option shall, to the extent it fails to qualify as an "incentive stock option" under the Code, be treated as a Nonqualified Stock Option. An Incentive Stock Option shall by its terms be nontransferable other than in accordance with Section 14.2 hereof, and shall be exercisable during the lifetime of a Participant only by such Participant.

(f)     *Disqualifying Dispositions*. If shares of Common Stock acquired by exercise of an Incentive Stock Option are disposed of within two years following the Date of Grant or one year following the transfer of such shares to the Participant upon exercise, the Participant shall, promptly following such disposition, notify the Company in writing of the date and terms of such disposition and provide such other information regarding the disposition as the Company may reasonably require.

6.8     *Repricing Prohibited.* Subject to the anti-dilution adjustment provisions contained in Section 4.4 hereof, without the prior approval of the Company's stockholders, neither the Committee nor the Board shall (i) cancel a Stock Option when the exercise price per share exceeds the Fair Market Value of one share of Common Stock in exchange for cash or another Award (other than in connection with a Change of Control) or cause the cancellation, substitution or amendment of a Stock Option that would have the effect of reducing the exercise price of such a Stock Option previously granted under the Plan, or (ii) approve any modification to such a Stock Option that would be treated as a "repricing" under the then applicable rules, regulations or listing requirements adopted by any national stock exchange on which the Common Stock is then traded.

WEIL:\96059535\6\62739.0004
#89492662v2

6.9     *Dividend Equivalent Rights*. Dividends shall not be paid with respect to Stock Options. Dividend equivalent rights shall be granted with respect to the shares of Common Stock subject to Stock Options to the extent permitted by the Committee and set forth in the Award Agreement.

6.10    *No Rights as Stockholder*. The Participant shall not have any rights as a stockholder with respect to the shares underlying a Stock Option until such time as shares or Common Stock are delivered to the Participant pursuant to the terms of the Award Agreement.

7.      Stock Appreciation Rights.

7.1     *Grant of Stock Appreciation Rights*. Stock Appreciation Rights may be granted to any Eligible Person selected by the Committee. Stock Appreciation Rights may be granted on a basis that allows for the exercise of the right by the Participant or that provides for the automatic payment of the right upon a specified date or event. Stock Appreciation Rights shall be non-transferable, except as provided in Section 14.2 hereof. All Stock Appreciation Rights granted under the Plan to U.S. taxpayers are intended to comply with or otherwise be exempt from the requirements of Section 409A of the Code.

7.2     *Stand-Alone and Tandem Stock Appreciation Rights*. A Stock Appreciation Right may be granted without any related Stock Option, or may be granted in tandem with a Stock Option, either on the Date of Grant or at any time thereafter during the term of the Stock Option. The Committee shall in its discretion provide in an Award Agreement the time or times at which or the conditions upon which, a Stock Appreciation Right or portion thereof shall become vested and/or exercisable. The requirements for vesting and exercisability of a Stock Appreciation Right may be based on the continued Service of a Participant with the Company or a Subsidiary for a specified time period (or periods), on the attainment of a specified Performance Goal(s) designed to meet the requirements for exemption under Section 162(m) of the Code and/or on such other terms and conditions as approved by the Committee in its discretion. Except as other determined by the Committee, if the vesting requirements of a Stock Appreciation Right are not satisfied, the Award shall be forfeited. A Stock Appreciation Right will be exercisable or payable at such time or times as determined by the Committee; provided, however, that the maximum term of a Stock Appreciation Right shall be ten years from the Date of Grant. The Committee may provide that a Stock Appreciation Right will cease to be exercisable upon or at the end of a period following a termination of Service for any reason. The base price of a Stock Appreciation Right granted without any related Stock Option shall be determined by the Committee in its discretion; provided, however, that the base price per share of any such stand-alone Stock Appreciation Right shall not be less than 100% of the Fair Market Value of a share of Common Stock on the Date of Grant.

7.3     *Payment of Stock Appreciation Rights*. A Stock Appreciation Right will entitle the holder, upon exercise or other payment of the Stock Appreciation Right, as applicable, to receive an amount determined by multiplying: (i) the excess of the Fair Market Value of a share of Common Stock on the date of exercise or payment of the Stock Appreciation Right over the base price of such Stock Appreciation Right, by (ii) the number of shares as to which such Stock Appreciation Right is exercised or paid. Payment of the amount determined under the foregoing may be made, as approved by the Committee and set forth in the Award Agreement, in shares of

10

Common Stock valued at their Fair Market Value on the date of exercise or payment, in cash or in a combination of shares of Common Stock and cash, subject to applicable tax withholding requirements.

7.4     *Repricing Prohibited*. Subject to the anti-dilution adjustment provisions contained in Section 4.4 hereof, without the prior approval of the Company's stockholders, neither the Committee nor the Board shall (i) cancel a Stock Appreciation Right when the base price per share exceeds the Fair Market Value of one share of Common Stock in exchange for cash or another Award (other than in connection with a Change of Control) or cause the cancellation, substitution or amendment of a Stock Appreciation Right that would have the effect of reducing the base price of such a Stock Appreciation Right previously granted under the Plan, or (ii) approve any modification to such Stock Appreciation Right that would be treated as a "repricing" under the then applicable rules, regulations or listing requirements adopted by any national stock exchange on which the Common Stock is then traded.

7.5     *Dividend Equivalent Rights.* Dividends shall not be paid with respect to Stock Appreciation Rights. Dividend equivalent rights shall be granted with respect to the shares of Common Stock subject to Stock Appreciation Rights to the extent permitted by the Committee and set forth in the Award Agreement.

8.      <u>Restricted Stock Awards</u>.

8.1     *Grant of Restricted Stock Awards*. A Restricted Stock Award may be granted to any Eligible Person selected by the Committee. The Committee may require the payment by the Participant of a specified purchase price in connection with any Restricted Stock Award.

8.2     *Vesting Requirements*. The restrictions imposed on shares granted under a Restricted Stock Award shall lapse in accordance with the vesting requirements specified by the Committee in the Award Agreement. The requirements for vesting of a Restricted Stock Award may be based on the continued Service of the Participant with the Company or a Subsidiary for a specified time period (or periods), on the attainment of a specified Performance Goal(s) designed to meet the requirements for exemption under Section 162(m) of the Code and/or on such other terms and conditions as approved by the Committee in its discretion. Except as other determined by the Committee, if the vesting requirements of a Restricted Stock Award shall not be satisfied or, if applicable, the Performance Goal(s) with respect to such Restricted Stock Award are not attained, the Award shall be forfeited and the shares of Common Stock subject to the Award shall be returned to the Company.

8.3     *Transfer Restrictions*. Shares granted under any Restricted Stock Award may not be transferred, assigned or made subject to any encumbrance, pledge or charge until all applicable restrictions are removed or have expired, except as provided in Section 14.2 hereof. Failure to satisfy any applicable restrictions shall result in the subject shares of the Restricted Stock Award being forfeited and returned to the Company. The Committee may require in an Award Agreement that certificates (if any) representing the shares granted under a Restricted Stock Award bear a legend making appropriate reference to the restrictions imposed, and that certificates (if any) representing the shares granted or sold under a Restricted Stock Award will

WEIL:\96059535\6\62739.0004
#89492662v2

remain in the physical custody of an escrow holder until all restrictions are removed or have expired.

8.4     *Rights as Stockholder*. Subject to the foregoing provisions of this Section 8 and the applicable Award Agreement, the Participant shall have all rights of a stockholder with respect to the shares granted to the Participant under a Restricted Stock Award, including the right to vote the shares and receive all dividends and other distributions paid or made with respect thereto. The Committee may provide in an Award Agreement for the payment of dividends and distributions to the Participant at such times as paid to stockholders generally, at the times of vesting or other payment of the Restricted Stock Award or otherwise. Notwithstanding anything in this Section 8.4 to the contrary, dividends and other distributions made with respect to a Restricted Stock Award that is subject to performance-based vesting shall not be paid until, and only to the extent that, the Award vests.

8.5     *Section 83(b) Election*. If a Participant makes an election pursuant to Section 83(b) of the Code with respect to a Restricted Stock Award, the Participant shall file, within 30 days following the Date of Grant, a copy of such election with the Company and with the Internal Revenue Service, in accordance with the regulations under Section 83 of the Code. The Committee may provide in an Award Agreement that the Restricted Stock Award is conditioned upon the Participant's making or refraining from making an election with respect to the Award under Section 83(b) of the Code.

9.     Restricted Stock Units.

9.1     *Grant of Restricted Stock Units*. A Restricted Stock Unit may be granted to any Eligible Person selected by the Committee. The value of each Restricted Stock Unit is equal to the Fair Market Value of a share of Common Stock on the applicable date or time period of determination, as specified by the Committee. Restricted Stock Units shall be subject to such restrictions and conditions as the Committee shall determine. In addition, a Restricted Stock Unit may be designated as a "Performance Stock Unit," the vesting requirements of which may be based, in whole or in part, on the attainment of pre-established business and/or individual Performance Goal(s) over a specified performance period designed to meet the requirements for exemption under Section 162(m) of the Code, or otherwise, as approved by the Committee in its discretion. Restricted Stock Units shall be non-transferable, except as provided in Section 14.2 hereof.

9.2     *Vesting of Restricted Stock Units*. The Committee shall, in its discretion, determine any vesting requirements with respect to Restricted Stock Units, which shall be set forth in the Award Agreement. The requirements for vesting of a Restricted Stock Unit may be based on the continued Service of the Participant with the Company or a Subsidiary for a specified time period (or periods) and/or on such other terms and conditions as approved by the Committee (including Performance Goal(s)) designed to meet the requirements for exemption under Section 162(m) of the Code and/or on such other terms and conditions as approved by the Committee in its discretion. Except as other determined by the Committee, if the vesting requirements of a Restricted Stock Unit Award are not satisfied, the Award shall be forfeited.

WEIL:\96059535\6\62739.0004
#89492662v2

9.3     *Payment of Restricted Stock Units*. Restricted Stock Units shall become payable to a Participant at the time or times determined by the Committee and set forth in the Award Agreement, which may be upon or following the vesting of the Award. Payment of a Restricted Stock Unit may be made, as approved by the Committee and set forth in the Award Agreement, in cash or in shares of Common Stock or in a combination thereof, subject to applicable tax withholding requirements. Any cash payment of a Restricted Stock Unit shall be made based upon the Fair Market Value of a share of Common Stock, determined on such date or over such time period as determined by the Committee.

9.4     *Dividend Equivalent Rights*. Restricted Stock Units may be granted together with dividend equivalent rights with respect to the shares of Common Stock subject to the Award, which dividend equivalent rights may be accumulated and may be deemed reinvested in additional Restricted Stock Units or may be accumulated in cash, as set forth in the Award Agreement or as determined by the Committee in its discretion. Any payments made pursuant to dividend equivalent rights will be paid at such times as determined by the Committee in its discretion (including, without limitation, at the times paid to stockholders generally or at the times of vesting or payment of the Restricted Stock Units).  Notwithstanding anything in this Section 9.4 to the contrary, dividends and other distributions made with respect to a Restricted Stock Unit that is subject to performance-based vesting shall not be paid until, and only to the extent that, the Award vests. Dividend equivalent rights may be subject to forfeiture under the same conditions as apply to the underlying Restricted Stock Units.

9.5     *No Rights as Stockholder*. The Participant shall not have any rights as a stockholder with respect to the shares subject to a Restricted Stock Unit until such time as shares of Common Stock are delivered to the Participant pursuant to the terms of the Award Agreement.

10.     <u>Section 162(m) Awards</u>.

10.1     *Performance Criteria*. For purposes of Awards that are granted or become vested or payable based upon the Performance Criteria that are intended to satisfy the requirements for "performance-based compensation" under Section 162(m) of the Code, the Performance Criteria shall be one or any combination of the following, for the Company or any identified Subsidiary or business unit, as reasonably determined by the Committee at the time of the Award: (i) net earnings; (ii) earnings per share; (iii) net debt; (iv) net revenue; (v) revenue growth, sales growth or product revenue growth; (vi) net income (before or after taxes); (vii) pre- or after-tax income (before or after allocation of corporate overhead and bonus); (viii) net operating profit; (ix) return measures (including, but not limited to, return on assets or net assets, capital, equity or sales); (x) cash flow (including, but not limited to, operating cash flow, distributable cash flow, cash flow per share and free cash flow); (xi) earnings before or after interest, taxes, depreciation, amortization and/or rent; (xii) appreciation in and/or maintenance of share price (including, but not limited to, growth measures and total stockholder return); (xiv) cost reduction, expense control or loss management; (xv) market share; (xvi) economic value added; (xvii) working capital; (xviii) adjusted operating margins, gross margins or cash margin; (xix) year-end cash; (xx) debt reductions; (xxi) the completion of corporate transactions; (xxii) gross or net profit margins; (xxiii) revenue mix; (xxiv) operating efficiency; (xxv) product diversification; (xxvi) market penetration; (xxvii) measurable achievement in quality, operation or development initiatives or production volume levels; (xxviii) quarterly dividends or distributions; (xxix)

13

employee retention or turnover; (xxxi) operating income before depreciation, amortization and/or taxes; (xxxii) financial ratios; (xxxiii) other non-GAAP financial measures; (xxxiv) operational metrics, including, without limitation, safety and environmental metrics; (xxxv) lease operating expenses; (xxxvi) production and reserve targets; (xxxvii) finding and development costs; (xxxviii) asset rationalization; (xxxix) acquisitions; and/or (xxxx) any combination of or a specified increase or decrease, as applicable, in any of the foregoing. Each of the Performance Criteria shall be applied and interpreted in accordance with an objective formula or standard established by the Committee at the time the applicable Award is granted including, without limitation, GAAP (or adjusted GAAP, as applicable), consistently applied on a business unit, divisional, subsidiary or consolidated basis or any combination thereof. The Performance Goals may be described in terms of objectives that are related to the individual Participant or objectives that are Company-wide or related to a Subsidiary, division, department, region, function or business unit and may be measured on an absolute or cumulative basis or on the basis of percentage of improvement over time, and may be measured in terms of Company performance (or performance of the applicable Subsidiary, division, department, region, function or business unit) or measured relative to a selected peer company or group of peer companies (including particular business segments or divisions of such company or companies) or a market or other index, as specified by the Committee.

10.2    *Performance Goals*. For purposes of Performance Stock Units and other Awards intended to qualify as "performance-based compensation" under Section 162(m) of the Code, the "Performance Goals" shall be the levels of achievement relating to the Performance Criteria selected by the Committee for the Award. The Performance Goals shall be written and shall be expressed as an objective formula or standard that precludes discretion to increase the amount of compensation payable that would otherwise be due upon attainment of the goal. The Performance Goals need not be the same for all Participants.

10.3    *Adjustments*. At the time that an Award is granted, the Committee may provide for the Performance Goals or the manner in which performance will be measured against the Performance Goals to be adjusted in such objective manner as it deems appropriate, including, without limitation, adjustments to reflect charges for restructurings, non-operating income, commodity pricing, the impact of corporate transactions or discontinued operations (including acquisitions and divestitures), events that are unusual in nature or infrequent in occurrence and other non-recurring items, currency fluctuations, litigation or claim judgements, settlements and the cumulative effects of accounting or tax law changes. In addition, to the extent not inconsistent with Section 162(m) of the Code, with respect to a Participant hired or promoted following the beginning of a performance period, the Committee may determine to prorate the Performance Goals for the partial performance period.

10.4    *Negative Discretion*. Notwithstanding anything else contained in the Plan to the contrary, in accordance with Section 162(m) of the Code, the Committee shall, to the extent provided in an Award Agreement, have the right, in its discretion, (i) to reduce or eliminate the amount otherwise payable to any Participant under an Award granted under this Section 10 and (ii) to establish rules or procedures that have the effect of limiting the amount payable to any Participant to an amount that is less than the amount that otherwise would be payable under an Award granted under this Section 10. The Committee may exercise such discretion in a non-uniform manner among Participants. The Committee shall not have discretion to increase the

14

amount that otherwise would be payable to any Participant with respect to an Award granted under this Section 10.

10.5    *Certification*. As soon as practicable following the conclusion of the performance period of an Award granted under this Section 10 that is intended to qualify as "performance-based compensation" under Section 162(m) of the Code, the Committee shall certify in writing whether the Performance Goals for that performance period have been achieved, or certify the degree of achievement, if applicable.

10.6    *Payment*. Upon certification of an Award granted under this Section 10 that is intended to qualify as "performance-based compensation" under Section 162(m) of the Code, the Committee shall determine the level of vesting or amount of payment to the Participant pursuant to the Award, if any.

11.    Other Stock-Based Awards.

11.1    *General*.   The Committee, in its sole discretion, may grant Awards that are valued, in or whole or in part, by reference to, or are otherwise based on the Fair Market Value of shares of Common Stock ("*Other Stock-Based Awards*"), including, without limitation, unrestricted shares, deferred shares, phantom shares or units, and dividend equivalent rights. Such Other Stock-Based Awards shall be in such form, and dependent on such conditions, as the Committee shall determine, including, without limitation, the right to receive one or more shares of Common Stock (or the equivalent cash value thereof) upon the completion of a specified period of service, the occurrence of an event and/or the attainment of performance objectives. Other Stock-Based Awards may be granted alone or in addition to any other Awards granted under the Plan.   Subject to the provisions of the Plan, the Committee shall determine to whom and when Other Stock-Based awards will be made, the number of shares to be awarded under (or otherwise related to) such Other Stock-Based Awards, whether such Other Stock-Based Awards shall be settled in cash, shares or a combination of cash and shares, and all other terms and conditions of such Awards not inconsistent with the terms of the Plan.

12.    Change of Control.

12.1    *Effect on Awards*. Upon the occurrence of a Change of Control, unless otherwise provided in the Award Agreement, the Committee is authorized (but not obligated) to make adjustments in the terms and conditions of outstanding Awards, including, without limitation, the following (or any combination thereof): (a) continuation or assumption of such outstanding Awards under the Plan by the Company (if it is the surviving company or corporation) or by the surviving company or corporation or its parent; (b) substitution by the surviving company or corporation or its parent of awards with substantially the same terms for outstanding Awards (with appropriate adjustments to the type of consideration payable upon settlement of the Awards); (c) acceleration of exercisability, vesting and/or payment under outstanding Awards immediately prior to the occurrence of such event or upon a termination of Service following such event; and (d) if all or substantially all of the Company's outstanding shares of Common Stock are transferred in exchange for cash, shares or other property or consideration in connection with such Change of Control: (i) upon written notice, provide that any outstanding Stock Options and Stock Appreciation Rights are exercisable during a reasonable period of time

WEIL:\96059535\6\62739.0004
#89492662v2

immediately prior to the scheduled consummation of the event or such other reasonable period as determined by the Committee (contingent upon the consummation of the event), and at the end of such period, such Stock Options and Stock Appreciation Rights shall terminate to the extent not so exercised within the relevant period; and (ii) cancel all or any portion of outstanding Awards for fair value (in the form of cash, shares of Common Stock, other property or any combination thereof) as determined in the sole discretion of the Committee; provided, however, that, in the case of Stock Options and Stock Appreciation Rights, the fair value may equal the excess, if any, of the value or amount of the consideration to be paid in the Change of Control transaction to holders of shares of Common Stock (or, if no such consideration is paid, Fair Market Value of the shares of Common Stock) over the aggregate exercise or base price, as applicable, with respect to such Awards or portion thereof being canceled, or if no such excess, zero; provided, further, that if any payments or other consideration are deferred and/or contingent as a result of escrows, earnouts, holdbacks or any other contingencies, payments under this provision may be made on substantially the same terms and conditions applicable to, and only to the extent actually paid to, the holders of Shares in connection with the Change of Control.

12.2   *Definition of Change of Control.* Unless otherwise defined in an Award Agreement, "*Change of Control*" shall mean the occurrence of one or more of the following events:

(a)     Any Person becomes the Beneficial Owner (as ascribed to such term in Rule 13d-3 under the Exchange Act), directly or indirectly, of more than 50 % of the combined voting power of the then outstanding voting securities of the Company entitled to vote generally in the election of its directors (the "*Outstanding Company Voting Securities*"), including by way of merger, consolidation or otherwise; provided, however, that for purposes of this definition, the following acquisitions shall not be taken into account in determining whether a Change of Control has occurred: (i) any acquisition of voting securities of the Company directly from the Company; (ii) any acquisition by the Company or any of its Subsidiaries of Outstanding Company Voting Securities, including an acquisition by any employee benefit plan or related trust sponsored or maintained by the Company or any of its Subsidiaries; or (iii) any acquisition of Outstanding Company Voting Securities by a Permitted Holder.

(b)     The following individuals (the "*Incumbent Directors*") cease for any reason to constitute a majority of the number of directors then serving on the Board: individuals who, on the Effective Date, constitute the Board and any new director (other than a director whose initial assumption of office is in connection with an actual or threatened election contest, including, but not limited to, a consent or proxy solicitation, relating to the election of directors of the Company by or on behalf of a Person other than the Board) whose appointment or election by the Board or nomination for election by the Company's stockholders was approved or recommended by a vote of at least a majority of the directors then still in office who either were directors on the Effective Date or whose appointment, election or nomination for election was previously so approved or recommended.

(c)     Consummation of a reorganization, recapitalization, merger or consolidation involving the Company, unless, following such transaction: (i) any individuals and entities that were the Beneficial Owners of Outstanding Company Voting Securities immediately

16

prior to such transaction are the Beneficial Owners, directly or indirectly, of more than 50% of the combined voting power of the outstanding voting securities entitled to vote generally in the election of directors (or election of members of a comparable governing body) of the entity resulting from the transaction ("*successor entity*") in substantially the same relative proportions as their ownership immediately prior to such transaction; (ii) no Person (excluding any successor entity or any employee benefit plan or related trust of the Company, such successor entity or any of their Subsidiaries) is the Beneficial Owner, directly or indirectly, of more than 30% of the combined voting power of the then outstanding voting securities entitled to vote generally in the election of directors (or comparable governing body) of the successor entity, except to the extent that such ownership existed prior to any such transaction; and (iii) at least a majority of the members of the board of directors (or comparable governing body) of the successor entity were Incumbent Directors (including persons deemed to be Incumbent Directors) at the time of the execution of the initial agreement or of the action of the Board providing for such transaction.

(d)     The sale or disposition, in one or a series of related transactions, of all or substantially all of the assets of the Company and its Subsidiaries, taken as a whole, to any Person.

Notwithstanding the foregoing, to the extent necessary to comply with Section 409A of the Code with respect to the payment of "nonqualified deferred compensation," "Change of Control" shall be limited to a "change in control event" as defined under Section 409A of the Code.  For clarity, the consummation of the transactions contemplated by the Plan of Reorganization shall not constitute a Change of Control.

13.     Forfeiture Events.

13.1     *General*. The Committee may specify in an Award Agreement at the time of the Award that the Participant's rights, payments and benefits with respect to an Award are subject to reduction, cancellation, forfeiture or recoupment upon the occurrence of certain specified events, in addition to any otherwise applicable vesting or performance conditions of an Award. Such events may include, without limitation, termination of Service for Cause; violation of Company policies; breach of noncompetition, non-solicitation, confidentiality or other restrictive covenants that may apply to the Participant; or other conduct by the Participant that is detrimental to the business or reputation of the Company.

13.2     *Termination for Cause*.

(a)     *Treatment of Awards*. Unless otherwise provided by the Committee and set forth in an Award Agreement, if (i) a Participant's Service with the Company or any Subsidiary shall be terminated for Cause or (ii) after termination of Service for any other reason, the Committee determines in its reasonable discretion that after termination, the Participant engaged in conduct that violated any continuing obligation or duty of the Participant in respect of the Company or any Subsidiary, such Participant's rights, payments and benefits with respect to an Award shall be subject to cancellation, forfeiture and/or recoupment. The Company shall have the power to determine whether the Participant has been terminated for Cause, the date upon which such termination for Cause occurs and whether the Participant engaged in conduct that violated any continuing obligation or duty of the Participant in respect of the Company or any

17

Subsidiary. Any such determination shall be final, conclusive and binding upon all Persons. In addition, if the Company shall reasonably determine that a Participant has committed or may have committed any act which could constitute the basis for a termination of such Participant's Service for Cause or violates any continuing obligation or duty of the Participant in respect of the Company or any Subsidiary, the Company may suspend the Participant's rights to exercise any Stock Option or Stock Appreciation Right, receive any payment or vest in any right with respect to any Award pending a determination by the Company of whether an act or omission could constitute the basis for a termination for Cause as provided in this Section 13.2.

14.     General Provisions.

14.1     *Award Agreement*. An Award under the Plan shall be evidenced by an Award Agreement in a written or electronic form approved by the Committee setting forth the number of shares of Common Stock subject to the Award, the exercise price, base price or purchase price of the Award, the time or times at which an Award will become vested, exercisable or payable and the term of the Award. The Award Agreement also may set forth the effect on an Award of (i) a Change of Control and/or (ii) a termination of Service under certain circumstances. The Award Agreement shall be subject to and incorporate, by reference or otherwise, all of the applicable terms and conditions of the Plan, and also may set forth other terms and conditions applicable to the Award as determined by the Committee consistent with the limitations of the Plan. The grant of an Award under the Plan shall not confer any rights upon the Participant holding such Award other than such terms, and subject to such conditions, as are specified in the Plan as being applicable to such type of Award (or to all Awards) or as are expressly set forth in the Award Agreement. The Committee need not require the execution of an Award Agreement by a Participant, in which case, acceptance of the Award by the Participant shall constitute agreement by the Participant to the terms, conditions, restrictions and limitations set forth in the Plan and the Award Agreement as well as the administrative guidelines of the Company in effect from time to time. In the event of any conflict between the provisions of the Plan and any Award Agreement, the provisions of the Plan shall supersede and control.

14.2     *No Assignment or Transfer; Beneficiaries*. Except as provided in Section 6.6 hereof or as otherwise determined by the Committee, Awards under the Plan shall not be assignable or transferable by the Participant, and shall not be subject in any manner to assignment, alienation, pledge, encumbrance or charge. Notwithstanding the foregoing, in the event of the death of a Participant, except as otherwise provided by the Committee in an Award Agreement, an outstanding Award may be exercised by or shall become payable to the legatee or legatees of such Award designated under the Participant's last will or by such Participant's executors, personal representatives or distributees of such Award in accordance with the Participant's will or the laws of descent and distribution. The Committee may provide in the terms of an Award Agreement or in any other manner prescribed by the Committee that the Participant shall have the right to designate a beneficiary or beneficiaries who shall be entitled to any rights, payments or other benefits specified under an Award following the Participant's death.

14.3     *Deferrals of Payment*. The Committee may in its discretion permit a Participant to defer the receipt of payment of cash or delivery of shares of Common Stock that would otherwise be due to the Participant by virtue of the exercise of a right or the satisfaction of

18

vesting or other conditions with respect to an Award; provided, however, that such discretion shall not apply in the case of a Stock Option or Stock Appreciation Right. In this regard, the Committee's determination under the Plan need not be uniform and may be made by the Committee selectively among the Participants and Eligible Persons.  If any such deferral is to be permitted by the Committee, the Committee shall establish rules and procedures relating to such deferral in a manner intended to comply with the requirements of Section 409A of the Code, including, without limitation, the time when an election to defer may be made, the time period of the deferral and the events that would result in payment of the deferred amount, the interest or other earnings attributable to the deferral and the method of funding, if any, attributable to the deferred amount.

14.4    *No Right to Employment or Continued Service*. Nothing in the Plan, in the grant of any Award or in any Award Agreement shall confer upon any Eligible Person or any Participant any right to continue in the Service of the Company or any of its Subsidiaries or interfere in any way with the right of the Company or any of its Subsidiaries to terminate the Service of an Eligible Person or a Participant for any reason or no reason at any time.

14.5    *Conditions and Restrictions on Shares of Common Stock*. Upon delivery of shares of Common Stock pursuant to the Plan, if the shares of Common Stock are not listed on any national stock exchange, then the Committee may impose such other conditions or restrictions on any shares of Common Stock received in connection with an Award as it may deem advisable or desirable.  These restrictions may include, but shall not be limited to, requirements that the Participant:  (a) become a signatory to the Company's then-existing stockholders' agreement, if applicable; (b) hold the shares received for a specified period of time; or (c) represent and warrant in writing that the Participant is acquiring the shares for investment and without any present intention to sell or distribute such shares.  The certificates for shares of Common Stock may include any legend which the Committee deems appropriate to reflect any conditions and restrictions applicable to such shares.

14.6    *Rights as Stockholder*. A Participant shall have no rights as a holder of shares of Common Stock with respect to any unissued securities covered by an Award until the date the Participant becomes the holder of record of such securities. Except as provided in Section 4.4 hereof, no adjustment or other provision shall be made for dividends or other stockholder rights, except to the extent that the Award Agreement provides for dividend payments or dividend equivalent rights. The Committee may determine in its discretion the manner of delivery of Common Stock to be issued under the Plan, which may be by delivery of stock certificates, electronic account entry into new or existing accounts or any other means as the Committee, in its discretion, deems appropriate. The Committee may require that the stock certificates (if any) be held in escrow by the Company for any shares of Common Stock or cause the shares to be legended in order to comply with the securities laws or other applicable restrictions, or, should the shares of Common Stock be represented by book or electronic account entry rather than a certificate, the Committee may take such steps to restrict transfer of the shares of Common Stock as the Committee considers necessary or advisable.

14.7    *Section 409A Compliance*.

19

(a)     To the extent applicable, it is intended that the Plan and all Awards hereunder comply with, or be exempt from, the requirements of Section 409A of the Code and the Treasury Regulations and other guidance issued thereunder, and that the Plan and all Award Agreements shall be interpreted and applied by the Committee in a manner consistent with this intent in order to avoid the imposition of any additional tax under Section 409A of the Code. In the event that any (i) provision of the Plan or an Award Agreement, (ii) Award, payment, transaction or (iii) other action or arrangement contemplated by the provisions of the Plan is determined by the Committee to not comply with the applicable requirements of Section 409A of the Code and the Treasury Regulations and other guidance issued thereunder, the Committee shall have the authority to take such actions and to make such changes to the Plan or an Award Agreement as the Committee deems necessary to comply with such requirements.

(b)     No payment that constitutes deferred compensation under Section 409A of the Code that would otherwise be made under the Plan or an Award Agreement upon a termination of Service will be made or provided unless and until such termination is also a "separation from service," as determined in accordance with Section 409A of the Code. Notwithstanding the foregoing or anything elsewhere in the Plan or an Award Agreement to the contrary, if a Participant is a "specified employee" as defined in Section 409A of the Code at the time of termination of Service with respect to an Award, then solely to the extent necessary to avoid the imposition of any additional tax under Section 409A of the Code, the commencement of any payments or benefits under the Award shall be deferred until the date that is six months plus one day following the date of the Participant's termination of Service or, if earlier, the Participant's death (or such other period as required to comply with Section 409A). In no event whatsoever shall the Company be liable for any additional tax, interest or penalties that may be imposed on a Participant by Section 409A of the Code or any damages for failing to comply with Section 409A of the Code.

14.8     *Securities Law Compliance*. No shares of Common Stock will be issued or transferred pursuant to an Award unless and until all then applicable requirements imposed by Federal and state securities and other laws, rules and regulations and by any regulatory agencies having jurisdiction, and by any exchanges upon which the shares of Common Stock may be listed, have been fully met. As a condition precedent to the issuance of shares of Common Stock pursuant to the grant or exercise of an Award, the Company may require the Participant to take any reasonable action that the Company determines is necessary or advisable to meet such requirements. The Committee may impose such conditions on any shares of Common Stock issuable under the Plan as it may deem advisable, including, without limitation, restrictions under the Securities Act under the requirements of any exchange upon which such shares of the same class are then listed, and under any blue-sky or other securities laws applicable to such shares. The Committee may also require the Participant to represent and warrant at the time of issuance or transfer that the shares of Common Stock are being acquired solely for investment purposes and without any current intention to sell or distribute such shares.

14.9     *Substitute Awards in Corporate Transactions*. Nothing contained in the Plan shall be construed to limit the right of the Committee to grant Awards under the Plan in connection with the acquisition, whether by purchase, merger, consolidation or other corporate transaction, of the business or assets of any corporation or other entity. Without limiting the foregoing, the Committee may grant Awards under the Plan to an employee or director of another corporation

20

who becomes an Eligible Person by reason of any such corporate transaction in substitution for awards previously granted by such corporation or entity to such person. The terms and conditions of the substitute Awards may vary from the terms and conditions that would otherwise be required by the Plan solely to the extent the Committee deems necessary for such purpose. Any such substitute awards shall not reduce the share reserve except as may otherwise be required under applicable law or the listing requirements of any national stock exchange on which the Common Stock is traded.

14.10    *Tax Withholding*. The Participant shall be responsible for payment of any taxes or similar charges required by law to be paid or withheld from an Award or an amount paid in satisfaction of an Award. Any required withholdings shall be paid by the Participant on or prior to the payment or other event that results in taxable income in respect of an Award. The Award Agreement may specify the manner in which the withholding obligation shall be satisfied with respect to the particular type of Award, which may include permitting the Participant to elect to satisfy the withholding obligation by tendering shares of Common Stock to the Company or having the Company withhold a number of shares of Common Stock having a value that does not exceed the maximum statutory tax or as otherwise specified in an Award Agreement, or similar charge required to be paid or withheld.

14.11    *Unfunded Plan*. The adoption of the Plan and any reservation of shares of Common Stock or cash amounts by the Company to discharge its obligations hereunder shall not be deemed to create a trust or other funded arrangement. Except upon the issuance of shares of Common Stock pursuant to an Award, any rights of a Participant under the Plan shall be those of a general unsecured creditor of the Company, and neither a Participant nor the Participant's permitted transferees or estate shall have any other interest in any assets of the Company by virtue of the Plan. Notwithstanding the foregoing, the Company shall have the right to implement or set aside funds in a grantor trust, subject to the claims of the Company's creditors or otherwise, to discharge its obligations under the Plan.

14.12    *Other Compensation and Benefit Plans*. The adoption of the Plan shall not affect any other share incentive or other compensation plans in effect for the Company or any Subsidiary, nor shall the Plan preclude the Company from establishing any other forms of share incentive or other compensation or benefit program for employees of the Company or any Subsidiary. The amount of any compensation deemed to be received by a Participant pursuant to an Award shall not constitute includable compensation for purposes of determining the amount of benefits to which a Participant is entitled under any other compensation or benefit plan or program of the Company or a Subsidiary, including, without limitation, under any pension or severance benefits plan, except to the extent specifically provided by the terms of any such plan.

14.13    *Plan Binding on Transferees*. The Plan shall be binding upon the Company and its transferees and assigns, and the Participant and the Participant's executor, administrator and permitted transferees and beneficiaries.

14.14    *Severability*. If any provision of the Plan or any Award Agreement shall be determined to be illegal or unenforceable by any court of law in any jurisdiction, the remaining provisions hereof and thereof shall be severable and enforceable in accordance with their terms, and all provisions shall remain enforceable in any other jurisdiction.

21

14.15  *Governing Law*. The Plan and all rights hereunder shall be subject to and interpreted in accordance with the laws of the State of Delaware, without reference to the principles of conflicts of laws, and to applicable Federal or other securities laws.

14.16  *No Fractional Shares*. No fractional shares of Common Stock shall be issued or delivered pursuant to the Plan or any Award, and the Committee shall determine whether cash, other securities or other property shall be paid or transferred in lieu of any fractional shares of Common Stock or whether such fractional shares or any rights thereto shall be canceled, terminated or otherwise eliminated.

14.17  *No Guarantees Regarding Tax Treatment*. Neither the Company nor the Committee make any guarantees to any person regarding the tax treatment of Awards or payments made under the Plan. Neither the Company nor the Committee has any obligation to take any action to prevent the assessment of any tax on any person with respect to any Award under Section 409A of the Code, Section 4999 of the Code or otherwise, and neither the Company nor the Committee shall have any liability to a person with respect thereto.

14.18  *Data Protection*. By participating in the Plan, each Participant consents to the collection, processing, transmission and storage by the Company, its Subsidiaries and any third-party administrators of any data of a professional or personal nature for the purpose of administering the Plan.

15.  Term; Amendment and Termination; Stockholder Approval; Arbitration.

15.1  *Term*. The Plan shall be effective on the Effective Date.  Subject to Section 15.2 hereof, the Plan shall terminate on the tenth anniversary of the Effective Date.

15.2  *Amendment and Termination*. The Board may from time to time and in any respect, amend, modify, suspend or terminate the Plan; provided, however, that no amendment, modification, suspension or termination of the Plan shall materially and adversely affect any Award theretofore granted without the consent of the Participant or the permitted transferee of the Award. The Board may seek the approval of any amendment, modification, suspension or termination by the Company's stockholders to the extent it deems necessary in its discretion for purposes of compliance with Section 162(m) or Section 422 of the Code or for any other purpose, and shall seek such approval to the extent it deems necessary in its discretion to comply with applicable law or listing requirements of any national stock exchange on which the Common Stock is traded. Notwithstanding the foregoing, the Board shall have broad authority to amend the Plan or any Award under the Plan without the consent of a Participant to the extent it deems necessary or desirable in its discretion to comply with or to take into account changes in, or interpretations of, applicable tax laws, securities laws, employment laws, accounting rules and other applicable laws, rules and regulations.

22

WEIL:\96059535\6\62739.0004
#89492662v2