# EXHIBIT A


**reliant**
an NRG company

## ELECTRICITY SALES AGREEMENT
### SHORT FORM COVER PAGE
### FIXED PRICE – UNBUNDLED

This Electricity Sales Agreement, including this Cover Page and the attached General Terms and Exhibit (collectively, this "Agreement"), is entered into as of this 9th day of May, 2014 (the "Effective Date") between Reliant Energy Retail Services, LLC ("Reliant") and MEMORIAL PRODUCTION OPERATING LLC ("Customer"). Reliant and Customer are individually referred to as a "Party" and collectively as the "Parties." Capitalized terms used and not defined in this Cover Page have the meanings stated in the General Terms.

**Delivery Term:** Start: For the **Group 1 Customer Location(s)**, the first Meter Read Date on or after 05/01/2014 or, if a Switch is required, the first Meter Read Date on or after the Switch Date, and for the **Group 2 Customer Location(s)**, the first Meter Read Date on or after 06/01/2014 or, if a Switch is required, the first Meter Read Date on or after the Switch Date, and for the **Group 3 Customer Location(s)**, the first Meter Read Date on or after 01/01/2015 or, if a Switch is required, the first Meter Read Date on or after the Switch Date, and for the **Group 4 Customer Location(s)**, the first Meter Read Date on or after 05/01/2017 or, if a Switch is required, the first Meter Read Date on or after the Switch Date, and for the **Group 5 Customer Location(s)**, the first Meter Read Date on or after 06/01/2017 or, if a Switch is required, the first Meter Read Date on or after the Switch Date

End: For the **Group 1 Customer Location(s), Group 2 Customer Location(s), Group 3 Customer Location(s), Group 4 Customer Location(s), and Group 5 Customer Location(s)**, the later of the first Meter Read Date after 12/31/2019 (collectively, the "Initial Term") and the last day of the Term

**Contract Charge:** The sum of (i) the product of the Contract Price multiplied by Actual Consumption; (ii) Discretionary Service Fees; (iii) Transmission and Distribution Charges; (iv) Nodal Congestion Charges, if applicable; (v) any applicable Taxes; and (vi) any additional charges that are expressly authorized in this Agreement, each of which will be billed as separate line items to Customer

**Contract Price:** $0.04978 per kilowatt-hour ("kWh") consumed at each Customer Location, including, subject to the terms of this Agreement, electricity charges, Ancillary Charges, ERCOT fees, applicable aggregator and broker fees collected from Customer and paid to Customer's aggregator or broker (if any).

This Agreement: (a) supersedes prior agreement(s) between the Parties for the supply of electricity to the Customer Location(s) (whether one or more, "Prior Agreement"), if any, effective as of the start of the Delivery Term; (b) constitutes the entire agreement between the Parties and there are no other agreements or representations affecting the subject matter of this Agreement, other than any Prior Agreement; (c) is executed by the Parties' duly authorized representatives in multiple counterparts to be construed as one as of the Effective Date; (d) will inure to the benefit of, and be binding upon, the Parties and their successors and permitted assigns; and (e) will not be binding until executed by Customer and Reliant. If Reliant elects not to execute this Agreement, Reliant will notify Customer, in which case this Agreement will have no effect.

**RELIANT ENERGY RETAIL SERVICES, LLC**

By: _Elizabeth Killinger_
Elizabeth Killinger
President

**MEMORIAL PRODUCTION OPERATING LLC** ELL

By: _____
Name: Kyle N. Roane
Title: VP

By: Memorial Production Partners LP, its sol member
By: Memorial Production Partners GPLLC, i: general partner.

## GENERAL TERMS

1. **Sales, Term.** Reliant will sell to Customer, and Customer will buy from Reliant, electricity ("Energy") to satisfy its Energy Requirements subject to this Agreement. Customer will provide Customer Information to Reliant and will assist Reliant in implementing this Agreement. Customer will notify Reliant of any circumstance likely to cause a change to the Energy Requirements at any Customer Location. If Customer has not Switched to a new REP effective when the Initial Term expires, then Reliant may: (i) continue to sell electricity in accordance with this Agreement subject to the Transition Charge or (ii) at any time after the end of the Initial Term, if allowed by Law, terminate this Agreement by Switching Customer to POLR service. If Reliant continues to sell electricity to Customer, this Agreement will continue for successive one month terms (collectively, the "**Transition Term**") until all Customer Location(s) are Switched to POLR or to a new REP. During the Transition Term, Customer is subject to the monthly Contract Charge, including a new Contract Price, and the product terms (collectively, the "**Transition Charge**") that Reliant publishes on the Site. This Agreement will continue in effect until final invoices are paid. All obligations regarding indemnity, payment of Taxes, limitations of liability, confidentiality, and waivers survive termination for the applicable statute of limitations period.

2. **Billing, Payment, Taxes.** For each Customer Location Reliant will send a monthly invoice for the Contract Charge. **Customer will notify Reliant in writing of the address to which Reliant may submit invoices within five business days after the Effective Date.** All electricity delivered to a Customer Location is measured pursuant to the TDSP's tariff by the TDSP at each Customer Location. Customer agrees that timely and accurate invoicing is dependent on the TDSP and ERCOT furnishing Reliant information, in the absence of which Reliant may invoice Customer on estimated data, subject to later adjustment. On or before the 20th day after the invoice date (the "**Due Date**"), Customer will pay the amount due to the address or by wire transfer to the account specified in the invoice. Reliant will assess a $25.00 processing fee for unprocessed payments due to insufficient funds. If an invoice is not paid by the Due Date, then Reliant will apply to Customer's account a late fee on the unpaid amount equal to the lesser of five percent or the maximum amount permitted by Law. If Customer disputes an invoice, Customer will pay Reliant the undisputed amount. Upon resolution, Customer will pay the amount owed with interest at the Interest Rate from the date the amount was originally due to, but excluding, the date the amount is paid. Customer is responsible and indemnifies Reliant for all Taxes arising from or measured by electricity sold or services provided or Reliant's receipts from the foregoing, whether the Law imposes the Taxes on Reliant or Customer. Reliant will collect Taxes from Customer by including them on the invoice. Reliant will recognize a lawful sales tax exemption on a prospective basis only after Reliant receives proper documentation. If Customer is due a sales tax refund because of Reliant's failure to timely recognize valid exemption documentation, Reliant will credit the overpaid sales tax to Customer's account. Customer is responsible for petitioning the taxing authority for all other sales tax refunds.

3. **Credit.** Reliant's obligation to sell electricity to Customer is conditioned upon Reliant's ongoing review and approval of Customer's creditworthiness. Customer will, on Reliant's request from time to time, (i) provide financial information and (ii) if Customer's creditworthiness declines, provide performance assurance, all reasonably satisfactory to Reliant.

4. **Consumption Change.** If for any two consecutive months, Customer incurs a change in its operations at any Customer Location resulting in a change in Customer's Actual Consumption that is less than 75% or greater than 125% of the Benchmark Quantity ("**Consumption Change**"), then Reliant may adjust the Contract Price, Benchmark Quantities, and other terms of this Agreement effective as of the next Meter Read Date. Customer will provide notice to Reliant 60 days prior to any proposed change in operations at any Customer Location that may result in a Consumption Change. Upon receipt, Reliant may notify Customer of any adjustment to the Contract Price, Benchmark Quantities, or other terms of this Agreement at least 45 days prior to the effective date of such adjustment (the "**Adjustment Effective Date**"). If Customer does not accept the adjustment, then on or before 30 days prior to the Adjustment Effective Date Customer may terminate this Agreement and pay Reliant a Cancellation Fee and remain liable to pay Reliant timely for all charges for electricity sold until each Customer Location is Switched. If Customer fails to timely terminate this Agreement as set forth above, then the adjustment will take effect on the Adjustment Effective Date. Any election by Reliant not to exercise its rights under this **Section 4** will not preclude Reliant's exercise of those rights at a later date.

5. **Default.** "**Non-Defaulting Party**" may establish a date (the "**Early Cancellation Date**") on which this Agreement will be cancelled upon the occurrence of any of the following defaults by "**Defaulting Party**," if the default is not cured within five business days after notice (except for an Insolvency Event or the failure to provide performance assurance which are immediate defaults):

    (i)   Failure to make, when due, any payment; or
    (ii)  Any representation or warranty proves to have been false or misleading in any material respect; or
    (iii) Failure to perform any covenant; or
    (iv)  An Insolvency Event occurs.

No waiver by a Party of a default will be construed as a waiver of any other default. If Non-Defaulting Party cancels this Agreement, (i) Customer, or if allowed by Law, Reliant, as Non-Defaulting Party, may Switch Customer's service to POLR or a new REP, and (ii) Defaulting Party will pay the Cancellation Fee to Non-Defaulting Party, and (iii) if allowed by Law, Reliant, as Non-Defaulting Party, may disconnect or cause to be disconnected, each Customer Location from electricity service. The Parties agree that if Customer causes a default by switching away one or more Customer Locations to another REP prior to the expiration of the Initial Term, the Early Cancellation Date will be the earliest date a Customer Location is Switched. Regardless of which Party is Defaulting Party, if this Agreement is cancelled, Customer will remain liable to pay Reliant timely for all charges for electricity sold until each Customer Location is Switched or disconnected. Defaulting Party will pay the Cancellation Fee within 15 business days of receipt of notice therefor and it will accrue interest at the Interest Rate from the Early Cancellation Date to, but excluding, the date paid. On the date due, each Party will pay to the other Party all additional amounts payable by it after all amounts have been netted and aggregated with the Cancellation Fee.

6. **Limitation of Liabilities.** The Parties confirm that the express remedies and measures of damages provided in this Agreement satisfy its essential purposes. **If an express remedy is provided, that remedy is the sole and exclusive remedy. If no remedy is expressly provided, the obligor's liability is limited to direct actual damages as the sole and exclusive remedy. In each case all other remedies at law or in equity are waived. Neither Party is liable for consequential, incidental, punitive, exemplary, or indirect damages, or other business interruption damages, by statute, in tort or contract, under any indemnity provision, or otherwise. These limitations apply even if the damages result from a Party's negligence, whether sole, joint,**

concurrent, active, or passive. To the extent any damages required to be paid are liquidated, the Parties acknowledge that the damages are difficult or impossible to determine, otherwise obtaining an adequate remedy is inconvenient, and the liquidated damages constitute a reasonable approximation of the loss.

7. **Representations.** Customer represents that (i) it is a commercial user of electricity and has entered into this Agreement solely for related non-speculative purposes, (ii) it will not resell any of the electricity it buys from Reliant, (iii) it has experience in business matters that enable it to enter into and perform this Agreement, and (iv) no Customer Location will have generation that is synchronously connected to the TDSP (the Parties acknowledge that synchronously connected generation does not include emergency back-up power generation). **The Parties make no representations or warranties except those expressly stated in these terms, and disclaim all other warranties, express or implied, including merchantability, conformity to models or samples, and fitness for a particular purpose.**

8. **Force Majeure.** If a Party is unable because of Force Majeure to perform its obligations and it notifies the other Party as soon as practicable, then its obligations (other than payment for energy received, and performance of obligations incurred, before the Force Majeure event) will be suspended for the duration of the Force Majeure event. Customer agrees that under no circumstances will Reliant be required, because of a Force Majeure event, to supply electricity except to the Customer Locations.

9. **Law, Waivers, Confidentiality, Documentation.** Except as provided in Section 6, the Law of the State of Texas (without giving effect to principles of conflicts of laws) governs this Agreement. **Each Party waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect of any suit, action, claim or proceeding relating to this Agreement.** The Uniform Commercial Code of Texas applies to this Agreement and electricity is deemed a "good". If either Party or its activities related to this Agreement are affected by any Law enacted after the Effective Date ("Change in Law") that makes performance of this Agreement unenforceable or illegal, then either Party may terminate this Agreement on notice to the other Party, without any obligation or other liability (other than payment for energy received, and performance of obligations incurred, before the Change in Law becomes effective). If a Change in Law occurs relating to the wholesale or retail electricity market in ERCOT resulting in new or modified fees, costs of performance, or other charges being incurred by Reliant and/or other ERCOT market participants, including taxes, fees, charges, impositions, assessments, or restrictions or allowance requirement(s) related to carbon emissions from electric generation in ERCOT ("**Emissions Charges**"), then to the extent incurred by Reliant, all of the incremental amounts, including Emissions Charges, may be reasonably allocated and billed to Customer as an authorized charge or adjustment to the Contract Price. **To the extent permitted by Law, Customer agrees that the Customer Protection Rules adopted by the PUCT pursuant to the PURA do not apply to this Agreement and that this Agreement will govern any conflict between it and the Customer Protection Rules.** Neither Party will disclose these terms or any Site password to a third party (other than a Party's and its affiliates' employees, lenders, counsel, permitted assignees, consultants, accountants, or prospective purchasers who have agreed to confidentiality), except in order to comply with Law. If a provision becomes unlawful or unenforceable, the other provisions will remain in effect. Except as provided in Exhibit A, only a written amendment signed by the Parties is enforceable.

10. **Assignment.** Except as provided, neither Party may assign this Agreement without the other Party's prior written consent, which consent may not be unreasonably withheld. Reliant may, without Customer's consent, (i) as part of any financing or other financial arrangements, assign, sell or pledge this Agreement or its accounts, revenues, or proceeds, or (ii) assign this Agreement to an affiliate of Reliant or to any other person or entity succeeding to all or a substantial portion of the assets of Reliant whereby Reliant will have no further obligations for future performance other than payment of amounts owed.

11. **Customer Acknowledgement.** Customer acknowledges that Energy prices may be subject to substantial volatility based on economic conditions fuel prices and other factors, and that past results regarding electricity products are not necessarily an indication of future results. Further, Customer acknowledges that Reliant and its affiliates are in the business of buying and selling power within the ERCOT market for each of their own accounts and that this participation may affect the calculation of Real-Time Settlement Point Prices. Notwithstanding the foregoing, Customer agrees to pay the amounts provided for in this Agreement that may be based upon Real-Time Settlement Point Prices, as promulgated by ERCOT. Subject to the right of Customer to dispute a Reliant Invoice as set forth in the Agreement, Customer will not withhold payment for any reason, including, investigatory activities undertaken by ERCOT or PUCT, based on Reliant's participation in the market and its effect on Real-Time Settlement Point Prices. Nothing in this Agreement restricts Reliant or any of Reliant's affiliates from participating in the ERCOT market activities that may affect Real-Time Settlement Point Prices.

12. **Partial Termination.** Customer may delete one or more, but not all, Customer Locations (and associated Benchmark Quantities as determined by Reliant in its sole discretion) from the Agreement ("Partial Termination"), only if Customer (a) closes those Customer Locations (a) for the remainder of the Term, or (b) sells those Customer Locations(s) and the buyer of the locations does not assume obligations to purchase Energy under this Agreement. Customer must provide Reliant with at least 30 days prior written notice of its intent to delete Customer Location(s) from the Agreement on these conditions. Customer must pay Reliant a partial Termination Payment for the deleted Customer Location(s), unless Customer sells the deleted Customer Location(s) to a purchaser who, (a) first executes a new contract with Reliant upon the same terms as Customer's contract, and (b) satisfies Reliant's collateral and credit requirements. Reliant will calculate the partial Termination Payment in the same manner as the Cancellation Fee, using only the Benchmark Quantities for the deleted Customer Locations, and bill the amount of the partial Termination Payment on a subsequent Retail invoice.

13. **Definitions.** The term "**including**" means including, without limitation. All internal references are to this Agreement unless stated otherwise.

"*Actual Consumption*" means the electricity measured or reported by the TDSP or estimated by Reliant for each Customer Location.

"*Ancillary Charges*" means, for each Customer Location, all charges assessed by ERCOT for services necessary to maintain reliable operation of the transmission system to support transmission of electricity from the source of generation to the points of demand.

"*Benchmark Quantity*" means Customer's expected monthly kWh electricity consumption for the Term. Customer's expected consumption may be set out on Exhibit A. If Customer's expected consumption is not set out on Exhibit A, Benchmark Quantity will be determined by reference to Customer Information and the 12 months of electricity consumption by Customer before the Effective Date, or for new facilities, Customer Information and electricity consumption of comparable facilities, each as may be adjusted in accordance with this Agreement.

"*Cancellation Fee*" means (i) where Customer is Non-Defaulting Party, the positive difference, if any, obtained by subtracting (a) the present value of this Agreement had it not been terminated using the Benchmark Quantity applicable to the Customer Locations for the remaining period of the Term from (b) the present value of a replacement contract using the Benchmark Quantity applicable to the Customer Locations and market prices that are reasonably expected to

be available in the market for the remaining period of the Term; and (ii) where Reliant is Non-Defaulting Party, the positive difference, if any, obtained by subtracting (a) the present value of a replacement contract from (b) the present value of this Agreement had it not been terminated, calculated in the same manner as provided in item (i), in each case plus Non-Defaulting Party's reasonable costs associated with the valuation and replacement contract.

*"Competition Charges"* means, for each Customer Location, the following: competition transition charges; transition charges defined in PURA; excess mitigation credits; and substantially similar charges related to the opening of the Texas electric market to REPs, including the recovery of stranded costs as defined by PURA and increases in Transmission and Distribution Charges related to the redirection of depreciation expenses.

*"Customer Information"* means information that accurately substantiates Customer's Energy Requirements forming a basis for the Contract Price and Benchmark Quantity.

*"Customer Location(s)"* means Customer's facilities described in **Exhibit A**.

*"Discretionary Service Fees"* means all non-routine deposits, connection fees, metering charges, installation costs for equipment to maintain a Power Factor of at least 95% lagging at each Customer Location meter, assessments by the TDSP in respect of any Power Factor at any Customer Location meter, or any similar amounts assessed by and payable to the TDSP related to the TDSP's purchase and installation of meters and associated equipment and Customer's use of that equipment to establish or maintain electric service at a Customer Location or to maintain the TDSP system requirements, or other charges for equipment or services requested by Customer or required by the TDSP.

*"Energy Requirements"* means electricity equal to 100% of the actual electricity requirements of Customer Location(s) for the Delivery Term, not to exceed the TDSP's facilities' capabilities or contravene Law.

*"ERCOT"* means the Electric Reliability Council of Texas.

*"Force Majeure"* means an event not within the reasonable control of the Party claiming suspension, not caused by the negligence of that Party, and which, by the exercise of due diligence, that Party is unable to overcome or obtain a commercially reasonable substitute therefor. Force Majeure includes a Force Majeure occurring with respect to the TDSP, a suspension, curtailment, or service interruption by the TDSP, or acts of terrorism, civil insurrection, war, or acts of God.

*"Insolvency Event"* means making an assignment or arrangement for the benefit of creditors, filing a petition, or authorizing or acquiescing in the commencement of a proceeding under Law for protection of creditors, or having a similar petition filed against it, or otherwise becoming insolvent or unable to pay debts as due.

*"Interest Rate"* means an annual rate equal to 2% over the per annum prime lending rate published in *The Wall Street Journal* under "Money Rates" in effect on the first day of the month during which the charge or fee is assessed. The Interest Rate will never exceed the maximum rate permitted by Law.

*"Law"* means any law, statute, regulation, rule, protocol, exchange rule, decision, writ, order, decree or judgment, or any interpretation of any of them by any court, agency, or instrumentality having jurisdiction, including ERCOT.

"Meter Read Date" means the actual meter read date that corresponds to the TDSP's regularly scheduled meter read date, as ascertained from the meter reading schedule published on the TDSP's website.

"Nodal Congestion Charges" means the difference(s) between the Day-Ahead Settlement Point Price(s) determined by ERCOT for the Hub(s) and the Day-Ahead Settlement Point Price(s) determined by ERCOT for the Load Zones associated with the Customer Location(s) for Actual Consumption not priced at Settlement Point Price(s) at the Load Zone(s); provided that if the Day-Ahead Settlement Point Price(s) are not published by ERCOT or are otherwise unavailable, then for the period(s) for which Day-Ahead Settlement Point Price(s) are not available, this charge will be based on difference(s) between the Real Time Settlement Point Price(s) determined by ERCOT for the Hub(s) and the Real Time Settlement Point Price(s) determined by ERCOT for the Load Zones associated with the Customer Location(s) for Actual Consumption not priced at Settlement Point Price(s) at the Load Zone(s). As used herein, the terms "Hub", "Day-Ahead", "Real Time", "Settlement Point Price" and "Load Zone" have the meaning set forth in the Texas Nodal Protocols approved by PUCT, as of October 1, 2006, as amended.

"POLR" means the REP designated by the PUCT required to offer electricity to any requesting customer in a specified territory.

*"Power Factor"* means the ratio of kilowatt ("kW") to kilovolt amperes ("kVa") expressed as a percentage, calculated by dividing kW by kVa.

*"PUCT"* means the Public Utility Commission of Texas.

*"PURA"* means the Public Utility Regulatory Act.

*"REP"* means a retail electric provider under PURA.

*"Site"* means Reliant's AccountConnect℠ web site at www.reliant.com.

*"Switch"* means an authorized change in Customer's electricity supplier.

*"Switch Date"* means for each Customer Location the date that all actions have been taken by the TDSP and ERCOT (i) for Reliant to sell electricity to Customer and for Customer to receive same, or (ii) for another REP or POLR to sell electricity to Customer and for Customer to receive same, as the context requires.

*"Taxes"* means all federal, state, and local taxes, fees, governmental charges, and assessments, imposed now or later on Customer as purchaser or on Reliant as seller of electricity under this Agreement, or on this transaction, including Texas state and local sales and use taxes, the Texas gross receipts tax on utility companies, the PUCT gross receipts tax assessment, municipal fees, and generation, utility, regulatory, Btu, or electricity taxes, excluding taxes on net income.

*"TDSP"* means the entities that have custody of the electricity sold and purchased and own or control electric transmission or distribution equipment for transmitting or distributing electricity to a Customer Location.

*"Term"* means the Initial Term and the Transition Term.

*"Transmission and Distribution Charges"* means, for each Customer Location, all charges and fees in the TDSP's tariff (except Competition Charges) and billed to Reliant for TDSP's services to deliver electricity to the Customer Location.

## EXHIBIT A

### Benchmark Quantity (kWh)

| Date | BMQ | |
|---|---|---|
| 05/01/2014-05/31/2014 | 229,119 | kWh |
| 06/01/2014-06/30/2014 | 1,035,036 | kWh |
| 07/01/2014-07/31/2014 | 2,237,025 | kWh |
| 08/01/2014-08/31/2014 | 2,136,716 | kWh |
| 09/01/2014-09/30/2014 | 2,154,201 | kWh |
| 10/01/2014-10/31/2014 | 2,379,880 | kWh |
| 11/01/2014-11/30/2014 | 2,271,684 | kWh |
| 12/01/2014-12/31/2014 | 2,334,736 | kWh |
| 01/01/2015-01/31/2015 | 2,244,026 | kWh |
| 02/01/2015-02/28/2015 | 2,472,786 | kWh |
| 03/01/2015-03/31/2015 | 2,626,522 | kWh |
| 04/01/2015-04/30/2015 | 2,551,091 | kWh |
| 05/01/2015-05/31/2015 | 2,342,784 | kWh |
| 06/01/2015-06/30/2015 | 2,265,588 | kWh |
| 07/01/2015-07/31/2015 | 2,556,159 | kWh |
| 08/01/2015-08/31/2015 | 2,455,776 | kWh |
| 09/01/2015-09/30/2015 | 2,460,990 | kWh |
| 10/01/2015-10/31/2015 | 2,693,805 | kWh |
| 11/01/2015-11/30/2015 | 2,555,216 | kWh |
| 12/01/2015-12/31/2015 | 2,607,612 | kWh |
| 01/01/2016-01/31/2016 | 2,449,736 | kWh |
| 02/01/2016-02/29/2016 | 2,560,841 | kWh |
| 03/01/2016-03/31/2016 | 2,623,004 | kWh |
| 04/01/2016-04/30/2016 | 2,551,288 | kWh |
| 05/01/2016-05/31/2016 | 2,343,297 | kWh |
| 06/01/2016-06/30/2016 | 2,265,588 | kWh |
| 07/01/2016-07/31/2016 | 2,558,302 | kWh |
| 08/01/2016-08/31/2016 | 2,456,138 | kWh |
| 09/01/2016-09/30/2016 | 2,460,990 | kWh |
| 10/01/2016-10/31/2016 | 2,695,652 | kWh |
| 11/01/2016-11/30/2016 | 2,554,965 | kWh |
| 12/01/2016-12/31/2016 | 2,608,017 | kWh |
| 01/01/2017-01/31/2017 | 2,455,642 | kWh |
| 02/01/2017-02/28/2017 | 2,472,786 | kWh |

| Date | BMQ | |
|---|---|---|
| 03/01/2017-03/31/2017 | 2,623,004 | kWh |
| 04/01/2017-04/30/2017 | 2,551,485 | kWh |
| 05/01/2017-05/31/2017 | 2,359,931 | kWh |
| 06/01/2017-06/30/2017 | 2,290,565 | kWh |
| 07/01/2017-07/31/2017 | 2,701,061 | kWh |
| 08/01/2017-08/31/2017 | 2,599,066 | kWh |
| 09/01/2017-09/30/2017 | 2,601,631 | kWh |
| 10/01/2017-10/31/2017 | 2,837,703 | kWh |
| 11/01/2017-11/30/2017 | 2,691,389 | kWh |
| 12/01/2017-12/31/2017 | 2,741,268 | kWh |
| 01/01/2018-01/31/2018 | 2,592,921 | kWh |
| 02/01/2018-02/28/2018 | 2,595,429 | kWh |
| 03/01/2018-03/31/2018 | 2,768,533 | kWh |
| 04/01/2018-04/30/2018 | 2,690,593 | kWh |
| 05/01/2018-05/31/2018 | 2,487,294 | kWh |
| 06/01/2018-06/30/2018 | 2,408,808 | kWh |
| 07/01/2018-07/31/2018 | 2,699,990 | kWh |
| 08/01/2018-08/31/2018 | 2,599,066 | kWh |
| 09/01/2018-09/30/2018 | 2,603,285 | kWh |
| 10/01/2018-10/31/2018 | 2,835,855 | kWh |
| 11/01/2018-11/30/2018 | 2,691,389 | kWh |
| 12/01/2018-12/31/2018 | 2,741,268 | kWh |
| 01/01/2019-01/31/2019 | 2,592,921 | kWh |
| 02/01/2019-02/28/2019 | 2,595,429 | kWh |
| 03/01/2019-03/31/2019 | 2,772,051 | kWh |
| 04/01/2019-04/30/2019 | 2,690,396 | kWh |
| 05/01/2019-05/31/2019 | 2,487,294 | kWh |
| 06/01/2019-06/30/2019 | 2,413,950 | kWh |
| 07/01/2019-07/31/2019 | 2,696,918 | kWh |
| 08/01/2019-08/31/2019 | 2,598,885 | kWh |
| 09/01/2019-09/30/2019 | 2,601,631 | kWh |
| 10/01/2019-10/31/2019 | 2,835,855 | kWh |
| 11/01/2019-11/30/2019 | 2,691,640 | kWh |
| 12/01/2019-12/31/2019 | 2,740,863 | kWh |
| 01/01/2020-01/31/2020 | 1,708,170 | kWh |

Group 1 – Customer Locations with a Start Date of 05/01/2014

| # | Customer Location Name | Customer Location | City | State | Zip Code | ESI |
|---|---|---|---|---|---|---|
| 1 | Memorial Resource Development LLC | 171 HUMBLE RD | BRONTE | TX | 76933-5302 | 10204049765763161 |

### Group 2 – Customer Locations with a Start Date of 06/01/2014

| # | Customer Location Name | Customer Location | City | State | Zip Code | ESI |
|---|---|---|---|---|---|---|
| 1 | Memorial Resource Development LLC | UNIVERSITY | PYOTE | TX | 79772-0000 | 10400513431500001 |
| 2 | Memorial Resource Development LLC | BLK 45 SEC 1 SE 1/4 | ODESSA | TX | 79764 | 10443720000204211 |
| 3 | Memorial Resource Development LLC | @BLK A SW/C NW/4 SEC 6 ECT | ODESSA | TX | 79763 | 10443720002555312 |
| 4 | Memorial Resource Development LLC | BLK 26 SEC 33 WINKLER | MONAHANS | TX | 79789 | 10443720004406197 |
| 5 | Memorial Resource Development LLC | BLK A 41 SE4 SEC 3 WELL | ANDREWS | TX | 79714 | 10443720001309019 |
| 6 | Memorial Resource Development LLC | SECTION 10 BLOCK A | ODESSA | TX | 79761-0000 | 10443720006911060 |
| 7 | Memorial Resource Development LLC | HIGHWAY 190 MIDWAY LANE SUBSTHSDE | OZONA | TX | 76943 | 10204049733787790 |
| 8 | Memorial Resource Development LLC | SEC 9 BLK 38 A | LAMESA | TX | 79331 | 10443720009475317 |
| 9 | Memorial Resource Development LLC | BLK 45 T 2 N SEC 12 WELL | ANDREWS | TX | 79714 | 10443720006397049 |
| 10 | Memorial Resource Development LLC | @BLK 45 1N SW/4 SEC 3 ECT | ODESSA | TX | 79763 | 10443720002680676 |
| 11 | Memorial Resource Development LLC | SEC 9 BLK 38 B | LAMESA | TX | 79331 | 10443720009475348 |
| 12 | Memorial Resource Development LLC | @SW/4 SEC9 BLKC-38 | LAMESA | TX | 79331-0000 | 10443720001137000 |
| 13 | Memorial Resource Development LLC | N UNIVERSITY LEASE | PYOTE | TX | 79777 | 10400513291530001 |
| 14 | Memorial Resource Development LLC | BLK 45 T 1 N SEC 1 WELL | ANDREWS | TX | 79714 | 10443720006426189 |
| 15 | Memorial Resource Development LLC | @BLK 45 1N W/2 NW/4 SEC 9 | ODESSA | TX | 79763 | 10443720002679870 |
| 16 | Memorial Resource Development LLC | BLK 45 SEC 1 T1N ECT WELL | ANDREWS | TX | 79714 | 10443720006944137 |

### Group 3 – Customer Locations with a Start Date of 01/01/2015

| # | Customer Location Name | Customer Location | City | State | Zip Code | ESI |
|---|---|---|---|---|---|---|
| 1 | Memorial Resource Development LLC | BLK 53 T 2 SEC 27 LOVI | MONAHANS | TX | 79756-0000 | 10443720006377177 |
| 2 | Memorial Resource Development LLC | BLK 76 SEC 47 LOVING C | WINK | TX | 79789 | 10443720006004216 |
| 3 | Memorial Resource Development LLC | @ABS A-12393 SF 15470 | MONAHANS | TX | 79756-0000 | 10443720004353156 |
| 4 | Memorial Resource Development LLC | BLK 53T 2 SEC 11 LOVIN | MONAHANS | TX | 79756 | 10443720007732094 |
| 5 | Memorial Resource Development LLC | SEC 37 BLOCK 76 PSL PERM | MONAHANS | TX | 79756 | 10443720008379281 |
| 6 | Memorial Resource Development LLC | BLK 76 SEC 47 LOVING C WLS # 1 | WINK | TX | 79789 | 10443720007400704 |
| 7 | Memorial Resource Development LLC | BLK 76 SEC 47 LOVING C WLS # 2 | WINK | TX | 79789 | 10443720007400673 |
| 8 | Memorial Resource Development LLC | BLK 53 SEC 2 LOVING CO | MONAHANS | TX | 79756 | 10443720006022134 |
| 9 | Memorial Resource Development LLC | BLK 53 T2 SEC 41 LOVIN | MONAHANS | TX | 79756 | 10443720004352567 |
| 10 | Memorial Resource Development LLC | BLK 76 SEC 48 LOVING C | WINK | TX | 79789 | 10443720006186837 |

### Group 4 – Customer Locations with a Start Date of 05/01/2017

| # | Customer Location Name | Customer Location | City | State | Zip Code | ESI |
|---|---|---|---|---|---|---|
| 1 | Memorial Resource Development LLC | 1300 MCCAMEY UNIT 94STATE 94 STATE GROVE 2 | MC CAMEY OIL FIELD | TX | 79752 | 10204049702239210 |
| 2 | Memorial Resource Development LLC | 1490 MCCAMEY UNIT 94DKGLE 94 DK GLENN A 1 | MC CAMEY OIL FIELD | TX | 79752 | 10204049766654270 |
| 3 | Memorial Resource Development LLC | @BLK 45 1S S/2 SEC 30 ECT | ODESSA | TX | 79763 | 10443720002683993 |
| 4 | Memorial Resource Development LLC | BLKA 44 SW4 SEC 25 WELL | ANDREWS | TX | 79714 | 10443720001415318 |
| 5 | Memorial Resource Development LLC | 15450 MCCAMEY | MC CAMEY OIL FIELD | TX | 79752 | 10204049780819810 |
| 6 | Memorial Resource Development LLC | 15390 MCCAMEY | MC CAMEY OIL FIELD | TX | 79752 | 10204049789988040 |

### Group 5 – Customer Locations with a Start Date of 06/01/2017

| # | Customer Location Name | Customer Location | City | State | Zip Code | ESI |
|---|---|---|---|---|---|---|
| 1 | Memorial Resource Development LLC | US HIGHWAY 83 UNIT BLDG | LAREDO | TX | 78040 | 10032789499172036 |
| 2 | Memorial Resource Development LLC | 1611 DON CAMILO BLVD | LAREDO | TX | 78040 | 10032789450778409 |

| 3 | Memorial Resource Development LLC | 3190 FM 2359 | SEVEN SISTERS | TX | 78357 | 10032789420837712 |
| 4 | Memorial Resource Development LLC | R HOLBEIN OSPREY UNIT WW # 1 | MIRANDO CITY | TX | 78369 | 10032789417337225 |
| 5 | Memorial Resource Development LLC | 3310 1/2 S ZAPATA HWY | LAREDO | TX | 78046-8843 | 10032789419467290 |
| 6 | Memorial Resource Development LLC | 2042 HIGHWAY 59 | SEVEN SISTERS | TX | 78357 | 10032789404177142 |
| 7 | Memorial Resource Development LLC | 2 R HOLBEIN OSPREY | MIRANDO CITY | TX | 78369 | 10032789436433120 |

Customer may add and delete Customer Locations at Reliant's sole discretion. Amendments to Exhibit A to add and delete Customer Locations may be formed and implemented as follows:

(i) Customer emails Reliant requesting that a Customer Location be added or deleted, together with any resulting changes to the Benchmark Quantity, and attaching the addition/deletion form to be provided by Reliant (the "**Email Request**"); and

(ii) Reliant accepts the Email Request in a responsive email transmission attaching an amended Exhibit A showing the addition or deletion of the Customer Location (the "**Email Confirmation**").

The Parties are legally bound by each amended **Exhibit A** from the time Reliant transmits it to Customer, and if Reliant does not transmit it, no amendment by email transmission is binding upon the Parties. The Parties adopt the Email Request and Email Confirmation as a means by which the Parties' amendment of **Exhibit A** may be reduced to writing. The Parties agree not to contest or assert a defense to the validity or enforceability of each amendment entered into. Each Party represents that each of its representatives charged with implementing the foregoing has authority to effectuate the foregoing amendment type by email transmission.

All notices, requests, and invoices must be furnished in writing and delivered by regular mail (including registered or certified mail, return receipt requested), Internet (confirmed receipt), overnight carrier, facsimile, or hand delivery.

## RELIANT
### NOTICES & CORRESPONDENCE:

Reliant

1201 Fannin
Houston, Texas 77002
P.O. Box 3412
Houston, Texas 77253-3412

Attn: Retail Contract Management
Facsimile No.: (832) 584-2010

With copy to: Robert Gaudette, Vice President

Reliant Customer Care Number: Please see your invoice

### BILLING & ACCOUNTING MATTERS:

Please see your invoice or your Reliant representative

## CUSTOMER
### NOTICES & CORRESPONDENCE & PASSWORD

MEMORIAL PRODUCTION OPERATING LLC
1301 MCKINNEY ST STE 2100
HOUSTON TX 77010-3042
Attention:         Chris Sowyrda
Telephone No.:     (713) 490-8995
Facsimile No.:
E-Mail Address:    csowyrda@memorialrd.com

AFTER EXECUTION OF THIS AGREEMENT, PLEASE RETURN THE ENTIRE AGREEMENT TO RELIANT BY FACSIMILE TO 832-584-2018.

INVOICES: Customer will provide its billing address in accordance with the General Terms.