# EXHIBIT E

2E SCH1072  10-3-16

Filed 9/23/2016 6:30:51 P
Mary Grim
County Clerk
Coke County, Texas

Kimberly Lewis

CAUSE NO. CV1604622

| | | |
|---|---|---|
| CARROLL L. LEE, INDIVIDUALLY; | § | IN THE DISTRICT COURT OF |
| PEGGY G. LEE, INDIVIDUALLY; | § | |
| CARROLL L. LEE AND PEGGY G. LEE, | § | |
| d/b/a CEDAR MOUNTAIN RANCH; LEE | § | |
| CONCHO VALLEY FAMILY, L.P.; | § | |
| LEECO PROPERTIES, INC.; SANDRA | § | |
| CAGLE, INDIVIDUALLY; JERRY D. LEE, | § | |
| INDIVIDUALLY; LARRY G. LEE, | § | |
| INDIVIDUALLY; AND MATTHEW LEE, | § | |
| INDIVIDUALLY, | § | |
| | § | |
| Plaintiffs, | § | COKE COUNTY, TEXAS |
| | § | |
| v. | § | |
| | § | |
| MEMORIAL PRODUCTION | § | |
| OPERATING, LLC; MEMORIAL | § | |
| RESOURCE DEVELOPMENT | § | |
| CORPORATION; CC FORBES | § | |
| COMPANY, L.P.; GRANDFIELD | § | |
| CONSULTING, INC.; CHARLES MARK | § | |
| WITT; BOAZ ENERGY, LLC;  BOAZ | § | |
| ENERGY II, LLC; IVORY ENERGY, LLC; | § | |
| and JOHN DOES 1 - 4 | § | |
| | § | 51ST JUDICIAL DISTRICT |
| Defendants. | § | |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Carroll L. Lee, Individually; Peggy G. Lee, Individually; Carroll L. Lee and

Peggy G. Lee, d/b/a Cedar Mountain Ranch; Lee Concho Valley Family, L.P.; Leeco Properties,

Inc.; Sandra Cagle, Individually; Jerry D. Lee, Individually; Larry G. Lee, Individually; and

Matthew Lee, Individually (collectively referred to herein as the "Lee Plaintiffs" or "Plaintiffs")

file this Original Petition against Defendants Memorial Production Operating, LLC, ("Memorial

Production"); Memorial Resource Development Corp. ("Memorial Resource"); CC Forbes

Company, L.P. ("Forbes"); Grandfield Consulting, Inc. ("Grandfield"); Charles Mark Witt

("Witt"); Boaz Energy, LLC ("Energy"); Boaz Energy II, LLC ("Energy II"); Ivory Energy,

LLC ("**Ivory**"); and John Does 1, 2, 3, and 4 (all defendants sometimes collectively referred to as "**Defendants**") and would respectfully show the Court as follows:

## I.    DISCOVERY

1.    Discovery is intended to be conducted under Level 3 as provided in Texas Rule of Civil Procedure 190.4. After service on Defendants, the Lee Plaintiffs shall move, or the parties shall provide the Court with a Scheduling Order compliant with Rule 190.4. The Lee Plaintiffs affirmatively plead this suit is not governed by the expedited-action provisions of Texas Rules of Civil Procedure 169 and 190.2, because they seek monetary relief in excess of $100,000.

## II.    RELIEF

2.    Pursuant to Texas Rule of Civil Procedure Rule 47(c)(5) and (d) the Lee Plaintiffs seek recovery for damages exceeding $1,000,000 and demand judgment for all other relief to which the Lee Plaintiffs prove themselves entitled.

## III.    PARTIES

3.    Plaintiff Carroll L. Lee is an individual owning real property in Coke County, Texas and has been married to Peggy G. Lee for over 62 years.

4.    Plaintiff Peggy G. Lee is an individual owning real property in Coke County, Texas and has been married to Carroll L. Lee for over 62 years.

5.    Lee Concho Valley Family, L.P.is a Texas limited partnership with its principal place of business in Odessa, Texas.

6.    Leeco Properties, Inc. is a Texas corporation with its principal place of business in Odessa, Texas.

7.    Sandra Cagle is an individual resident of Ector County, Texas.

8.    Jerry D. Lee is an individual resident of Ector County, Texas.

PLAINTIFFS' ORIGINAL PETITION – PAGE 2

9.      Larry G. Lee is an individual resident of Ector County, Texas.

10.     Matthew Lee is an individual resident of Midland County, Texas.

11.     Defendant Memorial Production Operating, LLC ("**Memorial Production**") is a Delaware limited liability company with its principal place of business located at 500 Dallas Street, Suite 1800, Houston, Texas 77002.  Memorial Production may be served through its registered agent, National Corporate Research, Ltd., at 1601 Elm St., Suite 4360, Dallas, Texas 75201, or wherever the agent may be found.

12.     Defendant Memorial Resource Development Corp. ("**Memorial Resource**") is a Delaware for-profit corporation with its principal place of business located at 500 Dallas Street, Suite 1800, Houston, Texas 77002.  Memorial Resource may be served through its registered agent, National Corporate Research, Ltd., at 1601 Elm St., Suite 4360, Dallas, Texas 75201, or wherever the agent may be found.

13.     Defendant CC Forbes Company, L.P., by merger "C.C. Forbes, LLC" ("**Forbes**") is a Delaware limited liability company with its principal place of business located at 4783 S. Business 281, Alice, Texas 78333. Forbes may be served through its registered agent, Charles C. Forbes Jr, at the foregoing address, or wherever he may be found.

14.     Defendant Grandfield Consulting, Inc. ("**Grandfield**") on information and belief is a Texas corporation, with its principal place of business located at 910 Lamar St., Wichita Falls, Texas 76307.  Grandfield may be served through its registered agent, Charles Mark Witt, at 2001 Irving Place, Wichita Falls, Texas 76308.  To the extent Grandfield's corporate existence may have terminated, Grandfield is sued pursuant to Texas Rule of Civil Procedure 29—prior to the third anniversary following its termination, as required by Texas Business Organizations Code § 11.356(c).

PLAINTIFFS' ORIGINAL PETITION – PAGE 3

15.     Charles Mark Witt ("**Witt**") was a principal of Grandfield, as well as another, potentially interrelated entity known as CADA Operating, Inc., either or both of which were retained by various Defendants to perform work on the oil and gas interest and "injection well" at issue in the lawsuit.  In so doing, Mr. Witt, in his individual capacity, engaged in tortious and fraudulent conduct that has caused injuries at issue in this lawsuit.  Mr. Witt therefore is liable for, and is sued in his individual capacity regarding his tortious and fraudulent conduct.  Mr. Witt resides and may be served at 2001 Irving Place, Wichita Falls, Texas 76308, or wherever he may be located.

16.     Defendant Boaz Energy, LLC ("**Energy**") is a terminated Delaware limited liability company, which had its principal place of business located at 2501 Seaboard Avenue, Midland, Texas 79705.  Energy may be served as authorized by law to effect service on a terminated entity and is sued pursuant to Texas Rule of Civil Procedure 29—prior to the third anniversary following its termination, as required by Texas Business Organizations Code § 11.356(c).

17.     Defendant Boaz Energy II, LLC ("**Energy II**") is a Delaware limited liability company with its principal place of business located at 2608 Loma Dr., Midland, Texas 79705.  Energy II may be served through its registered agent, National Corporate Research, Ltd., at 1601 Elm Street, Suite 4360, Dallas, Texas 75201, or wherever it may be found.

18.     Defendant Ivory Energy, LLC ("**Ivory**") is a Texas limited liability company with its principal place of business located at 910 Lamar Street, Wichita Falls, Texas 76301.  Ivory may be served through its registered agent, Lee Beam, at that address, or wherever he may be found.

19.     On information and belief, the rights, duties, and liabilities for the oil and gas

PLAINTIFFS' ORIGINAL PETITION – PAGE 4

interest and injection well at issue in the lawsuit may have been transferred by way of direct or multi-tiered corporate mergers or asset transfer agreements with and including (but not necessarily limited to) the following entities:   Memorial Production Partners, GP, LLC; Memorial Production Partners, LP; and Range Resources Corp.  The entities consequentially are identified herein as John Does 1, 2 and 3, respectively, and shall be served with a copy of this Original Petition, for the express purpose of providing notice of potential liability prior to expiration of any limitations period(s) that may apply to claims or causes of action that could be asserted against Memorial Production Partners, GP, LLC; Memorial Production Partners, LP; or Range Resources Corp.  This Petition further shall serve as notice to any other person or entity not presently discernible (designated herein as John Doe 4) who may be liable for the matters at issue, receiving a copy of this Petition prior to expiration of any applicable limitations period.

## IV.   <u>JURISDICTION AND VENUE</u>

20.    The Court has jurisdiction over the subject matter of this action because the amount in controversy exceeds the Court's minimum jurisdictional requirements.

21.    Venue is mandatory in this Court because this is a suit for, *inter alia*, damages to real property located in this county, *see* TEX. CIV. PRAC. & REM. CODE § 15.011; and the Lee Plaintiffs otherwise suffered personal losses, damages, and injuries arising from events and omissions that occurred in this county.  *See* TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1). Venue in this county otherwise is appropriate, because the Lee Plaintiffs' breach of contract claim is premised on a contractual agreement performable in this county. *See* TEX. CIV. PRAC. & REM. CODE § 15.035.

## V.   <u>SUMMARY</u>

22.    Carroll L. and Peggy G. Lee, are owners of the Cedar Mountain Ranch, a

PLAINTIFFS' ORIGINAL PETITION – PAGE 5

working ranch encumbered by the "Bronte Capps Unit, Lease 02474."

23.     A "saltwater disposal well" associated with Lease 02474, known as SWD5, is located on Cedar Mountain Ranch.

24.     The Lee Plaintiffs file this suit to recover real property, as well as personal damages, losses, and other relief caused by the catastrophic failure and blow out of SWD5, which occurred on September 25, 2014.

## VI.     FACTS

### A.     Underground Injection Wells

25.     A "saltwater disposal well" falls under a class of wells known as Underground Injection Wells.

26.     Underground injection is the placement of fluids into the subsurface, through a well bore.

27.     The practice of underground injection is common in industries such as the petroleum industry, chemical industry, food and product manufacturing, and geothermal energy development.

28.     Underground injection is regulated at the federal level under the Safe Drinking Water Act of 1974.

29.     The federal program establishes minimum requirements to be implemented by State Underground Injection Control ("UIC") Programs.  The Texas UIC Program in turn is design to prevent contamination of underground sources of drinking water that may result from the operation of injection wells.

30.     Underground injection wells pertaining to the petroleum or oil and gas industry are regulated by the Texas Railroad Commission.

31.     Under this regulatory framework, the injection wells are known as Class II

PLAINTIFFS' ORIGINAL PETITION – PAGE 6

Injection Wells.

32.    Class II Wells generally are categorized into three subclasses: saltwater disposal wells, enhanced oil recovery, and hydrocarbon storage wells.

33.    On a national average, approximately ten barrels of saltwater are produced with every barrel of crude oil.

34.    This "produced water" is a hazardous concoction of various hydrocarbon compounds, metals, salt and sometimes, radioactive substances. The chemical constituents commonly include benzene, chlorides, toluene, ethylbenzene, and xylene. Some of these substances, such as benzene, are carcinogens.

35.    Generally, the produced water is injected into geologic formations through disposal wells.

36.    In Texas, the wells *must* be located and constructed in such a way that the injected fluids can be controlled underground without contaminating or risking contamination to groundwater and surface water or other "media."

**B.    Cedar Mountain Ranch**

37.    Carroll L. and Peggy G. Lee are the patriarch and matriarch, respectively of the Lee Ranching Family. They own and oversee eight (8) ranches totaling approximately 26,000 acres of ranchland in Coke, Tom Green, and Runnels Counties, Texas. Simply put, they and their family are West Texas ranchers who have been in operation since 1982.

38.    The Lee Plaintiffs run an Angus Commercial Cow/Calf operation that uses Heifers that are kept for years as breeding cows. Prior to running cattle, the Lees for several years were the largest breeder of Bison in Texas.

39.    The Lee Plaintiffs' ranching operation relies on genetics to establish which Heifers to keep over time. Plaintiffs also own approximately sixty (60) bulls, all "registered"

PLAINTIFFS' ORIGINAL PETITION – PAGE 7

herd bulls, that are used for breeding.  At any given time, the Lee Plaintiffs run 3,000 to 4,000 head of cattle on their eight ranches.

40.     The nerve center for all the Lee Plaintiffs' ranching activities was Cedar Mountain Ranch, the ranch on which SWD5 was located.

41.     Prior to the blowout, Cedar Mountain Ranch was the headquarters for Plaintiffs' eight ranches.  Moreover, because of the water available at the Cedar Mountain Ranch, all weaning, pasturing, feeding, shipping, and selling took place there.  In addition, the ranch house of Carroll L. and Peggy G. Lee is located on Cedar Mountain Ranch, as well as the house of the Lee Plaintiffs' ranch foreman (for all ranches).

42.     Prior to the blowout of SWD5, groundwater at the Cedar Mountain Ranch was used to grow feed for the cattle and as water for the cattle.

43.     Cedar Mountain Ranch also had two (2) stock tanks, or ponds, that were used as a water source for all of the Lee Plaintiffs' cattle, both those run at Cedar Mountain Ranch and those run at the other seven (7) ranches owned by the Lee Plaintiffs.

44.     Soils and ranch land at Cedar Mountain Ranch were used to grow specific grasses and other feed used in connection with the Lee Plaintiffs' cattle operations.

C.     **The Lease**

45.     On June 1, 1944, James L. Burnson and his wife Margaret Burnson entered into an oil and gas mineral lease with O.B. Price ("the Lease" or "Lease 02474").  The Lease is attached hereto as Exhibit A.

46.     Since its signing on June 1, 1944, the Lease has been assigned to a series of operators, who have undertaken continuous production of oil, gas, or other minerals and used wells for purposes of saltwater injection.

47.     As set forth more specifically herein, various Defendants are in breach of the

Lease and its implied covenants—in addition to independent duties owed to the Lee Plaintiffs pursuant to common law or statutory mandates.

**D.     Specific Defendants**

48.     The chain of events giving rise to the catastrophic blowout of SWD5 on September 25, 2014, began in December 2010, although not discovered (and indeed fraudulently concealed) until the aftermath of the blowout.

49.     As of December 2010, Ivory was the operator under Lease 02474.

50.     In December 2010, Grandfield was retained as Ivory's consultant or contractor, and Forbes in turn was a subcontractor to Grandfield.

51.     On December 20, 2010, Forbes performed a mandated pressure test (described in further detail below) on SWD5, determined the injection well could not pass the test, and attempted to remedy the issue by illegally installing a device commonly known as a "packer" to jerry rig the well and control pressure in an unauthorized manner.

52.     One "packer" already was installed on SWD5, which made the second packer installed on December 20, 2010 improper under industry custom and practice, as well as prohibited and illegal pursuant to Texas Railroad Commission mandate.

53.     With knowledge of this wrongdoing, or at minimum without a sufficient factual basis to make representations regarding the nature of the work performed on and status of SWD5, Grandfield President Charles Mark Witt prepared and filed documentation with the Texas Railroad Commission falsely representing the condition of SWD5—and in particular, that a single "packer" was installed on the injection well.

54.     In 2011, Ivory transferred its interest in SWD5, amongst other assets, to Energy, which continued to operate SWD5 in its illegal and dangerous condition.

55.     In October 2013, Energy in turn transferred its interest in SWD5, amongst other

PLAINTIFFS' ORIGINAL PETITION – PAGE 9

assets, to Memorial Production and/or Memorial Resource.

56.     Documentation prepared by Memorial Production and/or Memorial Resource, including, but not necessarily limited to an October 28, 2014 letter to the Texas Railroad Commission, obscures the distinction, if any, between the two entities as related to ownership and responsibility for SWD5 at the time of the September 25, 2014 blowout.

57.     Memorial Production and/or Memorial Resource since have transferred interests in SWD5 (amongst other assets) to Energy II, under terms and conditions that on information and belief may have transferred pre-existing liabilities related to the well, including liabilities associated with the blowout in September 2014.

**E.     SWD5 Five-Year Test Required By Texas Railroad Commission**

58.     By Rule, the Texas Railroad Commission mandates testing on injection wells at various time intervals, including a comprehensive test every fifth year.

59.     This "Five Year Test" is a pressure test used to determine the mechanical integrity of a saltwater disposal well.  It is also known as the "H-5 Test," based on the form used to report results to the Railroad Commission.

60.     In December 2010, Ivory contracted with Grandfield to perform the Five Year Test, as well as certain maintenance on SWD5.

61.     As averred above, Grandfield in turn hired Forbes to perform the Test.

62.     In connection with the Five Year Test, on December 20, 2010, Ivory, Grandfield, and Forbes installed a double element cup type packer at approximately 250 feet down SWD5.

63.     On December 29, 2010, Defendant Witt submitted a Disposal/Injection Well Pressure Test Report to the Railroad Commission (the "**Report**").

64.     The Report (attached hereto as Exhibit B) detailed the H-5 Test was required by Rule and that *only* a Backer Loc Set packer was set at 4,499 feet down SWD5.

PLAINTIFFS' ORIGINAL PETITION – PAGE 10

65.     In this Report, Mr. Witt certified:

"under penalties prescribed in Sec. 91.143, Texas Natural Resources Code, [he was] authorized to make this report, that this report was prepared by [him] or under [his] supervision and direction, and that the data and facts stated herein [were] true, correct and complete, to the best of [his] knowledge"

66.     The Five Year Test was not witnessed by anyone from the Railroad Commission, as is required and customary.

67.     Neither Ivory, Grandfield, Forbes, nor Mr. Witt reported installation of the second packer to the Railroad Commission; to the contrary, they concealed this conduct.

68.     They should not have.

69.     Following the September 25, 2014 blowout, the Railroad Commission commenced enforcement actions against various Defendants now named in this lawsuit.

70.     Without exclusion of other Defendants who have been cited by the Railroad Commission, on November 17, 2015, the Commission entered a Final Order related to Grandfield (and Mr. Witt), in Oil and Gas Docket No. 7C-0294462. The Final Order is attached as Exhibit C. In the Final Order, the Commission made a number of material fact findings, including, but not limited to:

> 9.     Well No. 5 of the Bronte Capps Unit (02474) Lease is a permitted injection well. On September 25, 2014, the subject well broke out at the surface causing a major discharge of produced water that affected an estimated ten to twenty acres. On September 27, 2014, while working on the well, it was discovered that a double ended packer had been set in the well at 250'. A field ticket dated December 20, 2010, shows that C.C. Forbes Company ("C.C. Forbes") did work on the Bronte Capps Unit (02474) Lease, Well No. 5, on behalf of Respondent [Grandfield]. The ticket shows that C.C. Forbes ran two mechanical integrity tests on the whole string of casing in the well, however, pressure did not hold. A Packer was then inserted at approximately 250' feet and a test was run with eight joints, testing only the top end in order to circumvent testing the entire string of casing, knowing the casing wouldn't hold.

> 10.    On January 31, 2011, Respondent [Grandfield] filed a Commission Form H-5 for the Bronte Capps Unit (02474) Lease, Well No. 5, showing a test

PLAINTIFFS' ORIGINAL PETITION – PAGE 11

date of December 27, 2010. The test, which passed, was not witnessed by the Commission. By failing to conduct a pressure test on the whole string of casing of Well No. 5 of the Bronte Capps Unit (02474) Lease, Respondent [Grandfield] failed to determine whether the well tubing, packer or casing have sufficient mechanical integrity to meet the performance standards of Rule 46.

11.      On January 3, 2011, Respondent [Grandfield] filed a Commission Form H-5 for the Bronte Capps Unit (02474) Lease, Well No. 5, showing that during the test the packer was set at a depth of 4499 feet when, in reality, it was set at a depth of only 250 feet. The Form H-5 was signed and certified by Mark Witt, president of Grandfield Consulting, Inc., as being made under his supervision or direction and containing true, correct and complete facts to the best of his knowledge.

12.      By filing a Commission Form H-5 (Disposal/Injection Well Pressure Test Report) for the Bronte Capps Unit (02474) Lease, Well No. 5, showing the packer was set at a depth of 4499 feet, Respondent [Grandfield] *knowingly* submitted a form to the Commission containing information which was *false or untrue* in a material fact in violation of TEX. NAT. RES. CODE ANN. §91.143(a)(1). (emphasis added).

13.      Usable quality groundwater in the area is likely to be contaminated by migrations or discharges of saltwater and other oil and gas wastes from the subject well. Unplugged wellbores constitute a cognizable threat to the public health and safety because of the probability of pollution.

71.      The Railroad Commission also issued Conclusions of Law, including, but not limited to:

6.      The documented violations committed by the respondent constitute acts deemed serious, a hazard to the public health, and demonstrate a lack of good faith pursuant to TEX. NAT. RES. CODE ANN. §81.0531.

**F.    The September 25, 2014 Blowout at SWD5**

72.      On September 25, 2014, SWD5 suffered a catastrophic failure; a blowout that caused a major discharge of produced water to subsurface and surface waters and otherwise damaged surface and sub-surface soils, spread over many acres at Cedar Mountain. SWD5 is situated on a hill, so the Spill ran down the hill away from SWD5 in multiple directions.

73.      A "Memorial" entity notified the Railroad Commission of the well failure and

discharge once discovered on September 25, 2014—but only after being convinced by the Lee Plaintiffs that something more serious than rain was causing a flood-like condition around SWD5.

74.    In subsequent communications with the Railroad Commission, Memorial Production and Memorial Resources discussed their respective ownership interests or responsibility for the well as if the entities were interchangeable.  For all further purposes, the Lee Plaintiffs collectively will refer to "Memorial," to account for the entities' election to treat their connection to SWD5 as interchangeable.

75.    According to a Railroad Commission investigation and a subsequent report documenting investigative findings made on September 25, 2014 (attached hereto as Exhibit D), massive volumes of water escaped through Memorial's SWD5.

76.    Injection fluids and produced water were observed to be surfacing around SWD5, flowing from the ground at numerous locations as far as 200 feet from the well and flowing to freshwater stock ponds located approximately 400 feet north and 760 feet southeast of SWD5.

77.    On September 26, 2014, a Railroad Commission representative returned to SDW5 to evaluate and document the ongoing effects of the blowout.  According to the report that corresponds with findings made that day, the injection fluids and produced water still were leaching from the ground at SWD5 and continued to leach "from holes and cracks in the ground at about the same rate as the date before . . . ."  *See* Exhibit E.

78.    Due to the size of the blowout, and the potential for widespread soil, surface water, and groundwater contamination, the Railroad Commission recommended Memorial continue to perform emergency activities to remove the impacted water from the surface, and pump fluid from the subsurface in an effort to reduce contamination of the ground water.

PLAINTIFFS' ORIGINAL PETITION – PAGE 13

79.     The Railroad Commission also requested Memorial create a site investigation work plan to address all impacted media and constituents of concern, including Total Petroleum Hydrocarbons ("TPH"); the constituents benzene, toluene, ethylbenzene, and xylene (collectively referred to as "BTEX"); and chloride.

80.     In response, Memorial retained eTech Environmental & Safety Solutions, Inc., ("**eTech**") to manage the response to the blowout of SWD5.

81.     To date, eTech's environmental response at the Site has been as inadequate as it has been slow.

82.     Without sufficient urgency, and only performing a response to satisfy minimum regulatory requirements, in the almost two years since the blowout, eTech has not made meaningful progress on determining the horizontal and vertical extent of the full scope of contamination caused by the blowout, the scope and severity of ground and surface water contamination, or excessive salinity levels in surface (0-3 ft. below ground surface) and subsurface (below 3 feet) soils.

83.     To date, Memorial (through eTech) has not even addressed soils deeper than 3 ½ feet below ground surface.  And even in those areas that have been addressed by Memorial, soil salinity is too high to either grow the appropriate crops as cattle feed or to permit grazing.

84.     The eTech environmental response at Cedar Mountain Ranch otherwise has failed to address the direct, indirect, incidental, and consequential damages suffered by the Lee Plaintiffs and their interests as a result of the environmental impacts at Cedar Mountain Ranch.

G.     **Currently Known Damages**

85.     _Permanent Damage to Real Property_: The blowout has permanently damaged the Cedar Mountain Ranch and required the Ranch to be taken out of use.  The permanent damages implicate all "media" at the ranch, including surface water, surface soils, subsurface water, and

subsurface soils (e.g. The two stock tanks/ponds used by the Lee Plaintiffs as water for cattle as well as crops have each been contaminated and are permanently out of use, and without usable groundwater and uncontaminated surface water, the Lee Plaintiffs no longer have fresh usable water for ranching operations).

86.     Chlorides and other hazardous substances (in most areas above the limits allowed by the State) are the principal—though not exclusive—contaminants impacting the media, and even assuming *arguendo* remedial action can reduce the concentrations of the impacts, the property cannot be fully restored to pre-blowout conditions and adverse effects cannot be wholly eliminated.

87.     The Lee Plaintiffs therefore are entitled to recover the diminished value of the property under principles that apply to permanent damage to real property.

88.     <u>*Alternative Characterization of Real Property Damage*</u>: In the event the nature of damages to the Cedar Mountain Ranch are not deemed permanent, the Lee Plaintiffs nonetheless should be entitled to full recovery to ensure they are made whole under "flexible" standards that apply to real property damages deemed "temporary." That recovery should include, but not be limited to, the balance of cost to adequately investigate, then remediate the full extent of contamination affecting all media at the property. The damages further should include all costs associated with the Lee Plaintiffs "loss of use" of the Cedar Mountain Ranch during past and further investigation and remediation of the property.

89.     Beyond these conventional measures to quantify temporary real property damages, the Lee Plaintiffs further are entitled to recover all other incidental, consequential, or outstanding losses to the real property until made whole.

90.     _Personal and Personal Property Damages and Losses_:   Other damages and impacts have been suffered by the Lee Plaintiffs because of the blowout. The Lee Plaintiffs have incurred, for instance, significant replacement costs, increased operational costs, and business interruption costs, which have caused them personal harm.  These cost have included, but are not necessarily limited to, sale of cattle prematurely at depressed prices and the purchase of additional ranch property to conduct operations, because the Cedar Mountain Ranch has not been useable for such purposes since the September 25, 2014 blowout.  For instance, to continue operations and mitigate their damages, Plaintiff Lee Concho Valley Family L.P. purchased a replacement Ranch of approximately 5,000 acres located in Coke, Runnels, and Tom Green Counties.

91.     The Lee Plaintiffs otherwise pastured newly weaned yearlings in the areas around SWD5 and Memorial's Saltwater Injection Well #309 (API# 08131763) ("**SWD309**").   On Thursday, December 10, 2015, three of these yearlings became blind.  On Friday, December 11, 2015, two more yearlings became blind and on Monday, December 14, 2015, two more yearlings became blind.

92.     There is no history of cattle blindness at the Cedar Mountain Ranch.

93.     Based on information and belief, the likely cause of this cattle blindness appear to be certain chemicals Memorial or prior operator Defendants used on the well heads and related lines of SWD5 and SWD309, and perhaps other wells.

94.     One of the chemicals Memorial stored was Rockwater Energy Solutions SC-512F (a corrosive liquid).

95.     The warning label on this product stated:

INGESTION: Poison-may be fatal if swallowed. A small amount can cause mental sluggishness, and may produce adverse effects on vision with possible blindness or death if treatment is not received.
CHRONIC EFFECTS: ...toxic effects, including vision effects and death.

96.     _Additional Losses and Damages_:     Defendants' conduct within applicable limitations periods has caused and is causing other damages to the Lee Plaintiffs in addition to that suffered because of the blowout of SWD5.

97.     For years up to the time of the blowout, and since, various Defendants have conducted, directed, and participated in various oil and gas exploration and production activities as operators or otherwise at the Cedar Mountain Ranch. These activities include the construction and operation of various oil and gas facilities included but not limited to pits, sums, pipelines, flow lines, tank batteries, well heads, measuring facilities, and down hole operations.

98.     During this time, the Lee Plaintiffs real property has been damaged by certain Defendants' oil and gas exploration and production activities and by the spillage and/or disposal of toxic oil field wastes on and in the Lee Plaintiffs' property.

99.     This spillage and/or disposal continues, and has never been removed, has occurred without Plaintiffs' consent, and is reflective of the responsible Defendants' lack of care in connection with its operations.

100.     In addition to disposal and spillage, Defendants either have failed, or continue to fail, to maintain premises at the Cedar Mountain Ranch in a condition that would allow safe ranching of cattle.

101.     Despite repeated requests, Defendants have failed and refused to construct appropriate fencing or other protection around hazardous activities or activities involving hazardous substances; failed and refused to segregate toxic and hazardous chemicals from areas where cattle would be located; and have failed and refused to cleanup pipelines, tubing, casing,

PLAINTIFFS' ORIGINAL PETITION – PAGE 17

and other oil field equipment, which instead, Defendants have elected to leave on the Lee Plaintiffs' property.

102.   *Special Damages*:  To the extent not previously pleaded herein, and to which any category of damages the Lee Plaintiffs seek may be deemed "special", such damages include, but are not limited to:  loss of use and costs to repair and to restore fencing, land, and improvements; lost profits; damage to vegetation and oil and gas wells; loss of value to the land and improvements; loss of manufactured value for items such as timber; loss of production or reproduction value for oil and gas wells, in situ minerals, in situ groundwater, enhanced value minerals, and enhanced value groundwater; contractual damages for lost profits, cost of delay in performance, cost of mitigation, cost of substitute performance, reliance, and restitution; and business expectancy and reliance damages.

103.   *Summary of Damages*:  For the foregoing reasons, the Lee Plaintiffs seek to recover actual, direct, and compensatory damages; consequential, indirect, reliance, and special damages; permanent damage to real property; diminution in value of real property; other appropriate damage to real property; and damages to the Lee Plaintiffs ongoing concerns and businesses; personal losses and personal property damages; and mental anguish damages.

104.   The Lee Plaintiffs also seek punitive and exemplary damages based on Defendants' concealment, malicious, grossly negligent, and intentional conduct.

## VII.   STATUTES OF LIMITATIONS

105.   The Lee Plaintiffs' legal "injury" occurred no earlier than September 25, 2014, as of the date SWD5 blew out, or otherwise occurred within any applicable limitations periods.

106.   But the statute of limitations on any such claims in any event would be tolled until at least September 25, 2014, by virtue of fraudulent concealment and the discovery rule.

PLAINTIFFS' ORIGINAL PETITION – PAGE 18

## A.    Fraudulent Concealment

107.    As averred herein, at minimum Defendants Grandfield, Witt, and Forbes fraudulently concealed the prohibited installation of the double packer on SWD5, which later caused the blow out, in ways including (but not limited to) the following:

> By filing a Commission Form H-5 (Disposal/Injection Well Pressure Test Report) for the Bronte Capps Unit (02474) Lease, Well No. 5, showing the packer was set at a depth of 4499 feet, Respondent [Grandfield] *knowingly* submitted a form to the Commission containing information which was *false or untrue* in a material fact in violation of TEX. NAT. RES. CODE ANN. §91.143(a)(1).  (emphasis added).

108.    Falsification of public records in this manner precluded, negated, or nullified any exercise of diligence, which even theoretically may have enabled Plaintiffs to earlier discover the subsurface (and concealed) installation of a second packer.

109.    The concealed packer therefore was permitted to remain in SWD5, during the operations of Ivory, Energy, and Memorial (who in their own rights failed to appropriately assess and test the condition of SWD5), until discovered because of the blowout.

110.    Under such circumstances, fraudulent concealment tolls any applicable statutes of limitation.

## B.    Discovery Rule

111.    The installation of the second packer was verified during the post-blowout investigation of SWD5, because remnants of the packer were extracted (or "fished out") from the injection well.

112.    Prior to such time, the second packer was inherently undiscoverable as a matter of law, by virtue of its subsurface installation in a well to which the Lee Plaintiffs had no legal right of access—coupled with the falsified public record that precluded any basis for even inquiry notice regarding the condition of SWD5.

113.    Under such circumstances, the discovery rule tolls any applicable statutes of

PLAINTIFFS' ORIGINAL PETITION – PAGE 19

limitation.

## VIII. <u>CAUSES OF ACTION</u>

**A.      Count 1: Breach of Contract**

114.     The Lee Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

115.     The Oil and Gas Lease executed June 4, 1944 is a valid, continuing contract based on continuous oil and gas production since the execution date of the Lease.

116.     Under the Oil and Gas Lease, Defendants Ivory, Energy, and Memorial have had, and other Defendants may be liable for, expressed and implied obligations and covenants to comply with all applicable laws, prevent damage to the leasehold estate, and to manage and administer the Oil and Gas Lease.

117.     The Lee Plaintiffs fully performed their contractual obligations.

118.     Defendants Ivory, Energy, and Memorial breached the Contract by failing to conduct all operations at the Cedar Mountain Ranch in compliance with all applicable laws, rules, and regulations.

119.     These Defendants also have breached the Agreement by failing to abide by express and implied covenants to prevent damage to the leasehold estate, and restore the Lee Plaintiffs' property to its original condition.

120.     As a result, the Lee Plaintiffs suffered and seek damages, as pleaded herein, in an amount within the jurisdictional limits of this Court.

**B.      Count 2: Negligence**

121.     The Lee Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

122.     All Defendants owed or may be liable for a legal duty to the Lee Plaintiffs based

PLAINTIFFS' ORIGINAL PETITION – PAGE 20

on obligations to conduct oil and gas operations, injection operations, testing on the Lee Plaintiffs' property, construction on the Lee Plaintiffs' property, modification or installation of improvements on the Lee Plaintiffs' property, and any other activity pertinent to SWD5—in a reasonable and prudent manner, and in accordance with applicable laws and according to industry standards.

123.    Defendants breached or are liable for such duties owed the Lee Plaintiffs.

124.    Those breaches of duties proximately caused injuries to the Lee Plaintiffs, which resulted in damages pleaded herein, in an amount within the jurisdictional limits of this Court.

**C.    Count 3: Negligence Per Se—Violation of Texas Administrative Code Title 16, Section 3.46**

125.    The Lee Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

126.    Defendants are liable for violation of Texas Administrative Code Title 16, Section 3.46 regarding Fluid Injection into Productive Reservoirs. 16 TEX. ADMIN. CODE § 3.46 (Statewide Rule 46). Specifically, according to the Railroad Commission, the blowout was caused by a second double element packer being placed, run, and remaining illegally in SWD5 in violation of Section 3.46. *See* October 27, 2014 request for penalty regarding Statewide Rule 46, attached hereto as Exhibit F.

127.    Section 3.46 is designed to protect a class of persons to which the Lee Plaintiffs belong, against the type of injury suffered by the Lee Plaintiffs.

128.    Section 3.46 also is a regulation of the type that imposes liability.

129.    Defendants' violation of Section 3.46 was without legal excuse.

130.    Defendants' liability for or breaches of the duties imposed by Section 3.46 moreover proximately caused injury to the Lee Plaintiffs as pleaded herein, in excess of the

PLAINTIFFS' ORIGINAL PETITION – PAGE 21

jurisdictional amount of this Court.

**D.      Count 4: Negligence Per Se—Violation of Texas Administrative Code Title 16, Section 3.8**

131.    The Lee Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

132.    Defendants are liable for violation of Texas Administrative Code title 16, Section 3.8. 16 TEX. ADMIN. CODE § 3.8 (Statewide Rule 8).  Specifically, according the Railroad Commission: "[SWD5] was found to be leaking produced water from 60-200 feet away from [SWD5]. The saltwater was coming from an unknown depth and flowing from several cracks and a hillside.  The produced water filled 2 stock tanks and covered from 10-20 acres." *See* October 27, 2014 violation notice regarding Statewide Rules 8 and 46, attached hereto as Exhibit G.

133.    Section 3.8 is designed to protect a class of persons to which the Lee Plaintiffs belong, against the type of injury suffered by the Lee Plaintiffs.

134.    Section 3.8 also is a regulation of the type that imposes liability.

135.    Defendants violation of Section 3.8 was without legal excuse.

136.    Defendants' liability for or breaches of duties imposed by Section 3.8 proximately caused injury to the Lee Plaintiffs, which resulted in the damages as pleaded herein,  in excess of the jurisdictional limits of this Court.

**E.      Count 5: Gross Negligence and Malice**

137.    The Lee Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

**Gross Negligence**

138.    In addition to the allegations set forth concerning negligence above, the Lee

Plaintiffs' injuries also resulted from Defendants' gross negligence, which entitles the Plaintiffs to punitive and exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a)(3).

139. Defendants' conduct or liability, as set forth above, when viewed objectively from responsible Defendants' standpoint, involved activities creating an extreme degree of risk when one considers the probability and magnitude of potential harm. *See* TEX. CIV. PRAC. & REM. CODE § 41.001(11)(A).

140. Moreover, by virtue of the responsible Defendants' experience and relative sophistication as operators, oil-field service companies, or oil-field service professionals, the Defendants had actual, subjective awareness of the risks associated with their conduct, but proceeded with conscious indifference as to the rights, safety, and welfare of the Lee Plaintiffs. *See* TEX. CIV. PRAC. & REM. CODE § 41.001(11)(B).

141. Conduct of the kind qualifies as grossly negligent.

**Malice**

142. As set forth above, the Lee Plaintiffs' injuries resulted not only from the responsible Defendants' negligence and gross negligence, but as to Grandfield, Witt, and Forbes, also from their malice.

143. These Defendants acted with specific intent that caused substantial injury to the Lee Plaintiffs. Forbes, acting on behalf of Grandfield intentionally placed the second packer in SWD5, which caused the well to blow out.

144. And as further reflection of malice, Defendant Witt, as the President of Grandfield, filed false documentation with the Railroad Commission to conceal the illegal and prohibited conduct.

145. Conduct of the kind qualifies as malicious.

PLAINTIFFS' ORIGINAL PETITION – PAGE 23

**F.      Count 6: Civil Conspiracy**

146.   The Lee Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

147.   Defendant Grandfield, at minimum in combination with Defendants Witt, and Forbes, agreed to engage in, and did engage in a conspiracy for the unlawful purpose of illegally placing a second packer in SWD5 and then concealed this act.

148.   These Defendants also conspired to misrepresent SWD5 was safe to operate, had passed the Five Year Test, and had sufficient mechanical integrity for normal operations.

149.   As a part of the conspiracy, Defendants Grandfield, Witt, and Forbes acted with the intent to harm the Lee Plaintiffs, and did harm the Lee Plaintiffs by their unauthorized and illegal conduct.

150.   To accomplish the objective of their illegal conspiracy, these Defendants not only concealed their unlawful conduct, but co-conspirators Grandfield and Mr. Witt filed a false report and information with the Railroad Commission, in order to conceal their actions.

151.   This conduct proximately has caused damage to the Lee Plaintiffs pleaded herein.

152.   Defendants Grandfield, Witt, and Forbes moreover are jointly and severally liable for all such damages arising from their conduct.

**G.      County 10: Fraud by Nondisclosure**

153.   The Lee Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

154.   Defendants failed to disclose material facts related to their operations at the Cedar Mountain Ranch, including but not limited to, material facts concerning the construction, operation, maintenance and testing of SWD5.

155.   Defendants had a duty to disclose the information to the Lee Plaintiffs.

PLAINTIFFS' ORIGINAL PETITION – PAGE 24

156.    The information was material because of its importance to ensure safe oil and gas operations at Cedar Mountain Ranch.

157.    Defendants knew the Lee Plaintiffs were unaware of the information and did not have an equal opportunity to discovery the truth.

158.    Defendants deliberately remained silent and did not disclose to, but rather concealed the information from the Lee Plaintiffs.

159.    By deliberately remaining silent, Defendants intended for the Lee Plaintiffs to act without benefit of accurate information and otherwise maybe liable for such conduct.

160.    The Lee Plaintiffs justifiably relied on the responsible Defendants' deliberate silence.

161.    This proximately caused injury to the Lee Plaintiffs as pleaded herein, which resulted in the damages in excess of the jurisdictional limits of this Court.

## H.    Count 11: Nuisance

162.    The Lee Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

163.    For reasons previously pleaded, Defendants intentionally or at minimum negligently interfered (or are liable for the interference) with the Lee Plaintiffs' use and enjoyment of the Cedar Mountain Ranch.

164.    The contamination caused by the blowout has substantially, if not entirely, interfered with the Lee Plaintiffs' rights and interests in the property.

165.    That interference by no metric can be deemed reasonable by the standards of an objectively reasonable person subject to harm of the kind, and the interference has caused the Lee Plaintiffs considerable "discomfort" and "annoyance"—because of their inability to continue their multi-decade cattle operations without significant, unwarranted burden and expense.

PLAINTIFFS' ORIGINAL PETITION – PAGE 25

166.    The nuisance is the proximate cause of the Lee Plaintiffs' damages as pleaded herein, which exceed the jurisdictional limits of this Court.

**I.      Count 12: Trespass**

167.    The Lee Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

168.    The Lee Plaintiffs did not authorize Defendants to release injection well contaminants in surface water, subsurface water, surface soils, or subsurface soils at the property.

169.    The scope of permissible injection activities was limited to subsurface formations regulated by the Railroad Commission.

170.    Defendants therefore engaged in, or otherwise are liable for, intrusions on and into media at the Lee Plaintiffs' property, which has not been authorized.

171.    The trespasses proximately have caused injuries and damages as pleaded herein, which exceed the jurisdictional minimum of this Court.

**IX.      ATTORNEYS' FEES**

172.    The Lee Plaintiffs are entitled to recover reasonable and necessary attorneys' fees under Texas Civil Practice & Remedies Code chapter 38, because the Lee Plaintiffs' causes of action include a suit for breach of contract—or otherwise are allowed by law.  *See* TEX. CIV. PRAC. & REM. CODE § 38.001(8).

**X.      CONDITIONS PRECEDENT**

173.    All conditions precedent have been performed or have occurred.

**XI.      JURY DEMAND**

174.    The Lee Plaintiffs demand a jury trial and tender the appropriate fee with this Petition.

PLAINTIFFS' ORIGINAL PETITION – PAGE 26

## XII.   <u>REQUEST FOR DISCLOSURE</u>

175.   Under Texas Rule of Civil Procedure 194, The Lee Plaintiffs request Defendants disclose, within 50 days of the service of this request, the information and material described in Rule 194.2.

## XIII.   <u>PRAYER</u>

WHEREFORE, The Lee Plaintiffs request the following:

a.   actual, compensatory, special, reliance, indirect, and consequential damages as proven during the trial of this cause;

b.   damages to compensate for permanent injury to real property, or other appropriate measures of damage to such property;

c.   damages for personal property and to the Lee Plaintiffs individually;

d.    Punitive and exemplary damages;

e.   an award of costs and attorneys' fees in favor of the Lee Plaintiffs;

f.   pre-judgment and post-judgment interest as allowed by law; and

g.   such other and further relief, both general and special, at law or in equity, to which the Lee Plaintiffs may show themselves justly entitled.

PLAINTIFFS' ORIGINAL PETITION – PAGE 27

Respectfully submitted,

MUNSCH HARDT KOPF & HARR, P.C.


By: */s/ Frederick W. Addison, III*
    Frederick W. Addison, III
    Bar No. 00903350
    Nolan C. Knight
    Bar No. 24027125
    Jacqueline M. Wheeler
    Bar No. 24098606
    500 North Akard Street
    Suite 3800
    Dallas, Texas 75201-6659
    Telephone:  (214) 855-7500
    Facsimile:   (214) 855-7584
    raddison@munsch.com
    nknight@munsch.com
    jwheeler@munsch.com

**ATTORNEYS FOR PLAINTIFFS**